# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

```
-----------------------------------------------x
In Re:                                          :    Case No. 2:03-MD-1565-JLG-MRA
National Century Financial Enterprises, Inc.    :
                                                :
                                                :
                                                :    Judge Graham
                                                :    Magistrate Judge Abel
-----------------------------------------------x
```

UNITED STATES DISTRICT COURT - DISTRICT OF ARIZONA

| | | |
|---|---|---|
| City of Chandler, *et al.*, | ) | No.: CV03-1220-PHX |
| | ) | |
| vs. | ) | |
| | ) | |
| Bank One, N.A., *et al.*, | ) | |
| ———————————————— | ) | |
| State of Arizona , *et al.* | ) | No. CIV 03-1618-PHX |
| | ) | |
| vs. | ) | |
| | ) | |
| Credit Suisse First Boston Corp., *et al.*, | ) | |
| ———————————————— | ) | |
| Crown Cork & Seal Company, Inc. | ) | No. CV-03-2084-PHX |
| Master Retirement Trust, *et al.*, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Credit Suisse First Boston Corp., *et al.* | ) | |

## ARIZONA NOTEHOLDER PLAINTIFFS' RESPONSE TO THE FOUNDER DEFENDANTS' MOTIONS TO DISMISS[1]

---

[1] This Response is filed in opposition to the following two motions to dismiss: (i) Consolidated Motion of Kuld Corporation, Lance K. Poulsen, and Barbara L. Poulsen to Dismiss The Three Arizona Noteholder Cases For Failure To Plead Fraud With Particularity And For Failure To State A Claim Upon Which Relief Can Be Granted (the "Poulsen Motion"); and (ii) Defendants Donald H. Ayers, E&D Investments, and Elise Ayers's Motion to Dismiss the Arizona Complaints, Or, In The Alternative, Motion For A More Definite Statement (the "Ayers Motion").

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 2

ARGUMENT ..................................................................................................................... 4

I.      PLAINTIFFS' COMPLAINTS COMPLY WITH FEDRERAL RULES 8 AND 9(b) .................................................................................................... 4

      A.     The Ayers Motion's Rule 8 Arguments Are Without Merit...................... 4

      B.     Plaintiffs' Claims Against the Poulsens and Ayers Satisfy Rule 9(b) ........ 6

      C.     Plaintiffs' State Law Claims Are Viable ................................................. 11

      D.     Plaintiffs' Claims Based On State Blue Sky Laws Do Not Violate The Commerce Clause ................................................................................... 11

      E.     Plaintiffs Have Adequately Alleged a Breach Of Fiduciary Duty Claim Against the Poulsens .................................................................... 13

      F.     Plaintiffs Have Adequately Alleged a Conspiracy Claim Against the Poulsens ................................................................................................. 15

      G.     Plaintiffs State a Claim for Unjust Enrichment ....................................... 15

      H.     Plaintiffs Have Adequately Alleged an Aiding and Abetting Claim Against the Poulsens ............................................................................... 16

      I.     Plaintiffs Have Likewise Stated a Claim for Negligence and Gross Negligence .............................................................................................. 17

      J.     Plaintiffs' Exemplary Damages Claim is Not Subject to Dismissal......... 18

      K.     Kuld Corporation Is Liable as the Alter Ego of The Poulsens ................. 18

CONCLUSION................................................................................................................. 19

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

-------------------------------------------------------------x

In Re:                                              :          Case No. 2:03-MD-1565-JLG-MRA
National Century Financial Enterprises, Inc.        :
                                                    :
                                                    :
                                                    :          Judge Graham
                                                    :          Magistrate Judge Abel
-------------------------------------------------------------x

UNITED STATES DISTRICT COURT - DISTRICT OF ARIZONA

City of Chandler, *et al.*,                         )          No.: CV03-1220-PHX
                                                    )
vs.                                                 )
                                                    )
Bank One, N.A., *et al.*,                           )
_____                     )
State of Arizona , *et al.*                         )          No. CIV 03-1618-PHX
                                                    )
vs.                                                 )
                                                    )
Credit Suisse First Boston Corp., *et al.*,         )
_____                     )

Crown Cork & Seal Company, Inc.                     )          No. CV-03-2084-PHX
Master Retirement Trust, *et al.*,                  )
                                                    )
vs.                                                 )
                                                    )
Credit Suisse First Boston Corp., *et al.*          )


## ARIZONA NOTEHOLDER PLAINTIFFS' RESPONSE TO THE FOUNDER DEFENDANTS' MOTIONS TO DISMISS[2]

---

[2] Plaintiffs have collectively filed three separate Complaints (City of Chandler; Crown Cork; and State of Arizona). For ease of reference, this brief refers primarily to the City of Chandler Complaint, which is cited herein as "FAC" (First Amended Complaint). Because the City of Chandler Complaint is substantially identical to the Crown Cork and State of Arizona Complaints, citation to it alone is intended to reference all three Complaints for purposes of responding to Defendants' motion to dismiss.

Plaintiffs have also filed a Motion for Leave to Amend Complaints, which attaches as Exhibit A the proposed amendment by paragraph number. Those amendments are cited herein as "Proposed Amendments." In addition, attached as Exhibit B to the Motion for Leave to Amend is a chart which cross-references the corresponding paragraphs among the FAC, Crown Cork Complaint, and State of Arizona Complaint (*i.e.*, it identifies the matching paragraphs).

Plaintiffs have filed a consolidated Master Brief responding to numerous common or similar arguments made by all or most Defendants, including this/these Defendant/s. That consolidated brief is incorporated herein by reference and will be cited as "Master Brief."

Plaintiffs in the above referenced actions (the "Arizona Plaintiffs" or "Arizona Noteholders") file this Response in opposition to the motions to dismiss filed by Lance K. Poulsen, Barbara L. Poulsen, Donald H. Ayers, Kuld Corporation, and E&D Investments, Inc. (collectively, the "Founder Defendants"). The Poulsens and Ayers founded NCFE, were directors of NCFE at all times relevant to Arizona Plaintiffs' lawsuits, and were actively involved in the day-to-day management of NCFE as well as in the note offerings that are the subject of these lawsuits. FAC ¶ 132.[3] Kuld Corporation and E&D Investments, LLC, in turn, are alter egos of the Poulsens and Ayers, respectively. *Id.* ¶ 62. Ayers and the Poulsens played similar roles in the NCFE fraud, and they make similar erroneous arguments in their motions to dismiss the claims asserted against them. For that reason, Plaintiffs file this consolidated response to both motions.

## INTRODUCTION

Unlike other Defendants, neither the Poulsens nor Ayers acknowledges that NCFE was a massive fraud. Their reluctance to do so is unsurprising, since they were the individuals who founded, managed, and ran NCFE on a day-to-day basis. Instead, the majority of their motions to dismiss are devoted to arguing that the Arizona Noteholders' Complaints violate Rule 8 and Rule 9(b) to such a degree that they are unable to discern why they have been sued.

The Poulsens and Ayers cannot credibly feign ignorance concerning why they have been sued, however, and the Arizona Complaints do not violate either Rule 8 or Rule 9(b). As discussed fully in the Plaintiffs' Master Brief, the pleading standards of Rule 9(b) are not intended to be a draconian gatekeeper, eager to turn away plaintiffs because they do not yet know all of the details of the defendants' schemes. Similarly, Rule 8 is a notice pleading

---

[3] Defendant Rebecca Parrett is also one of the founders of NCFE, and, like the Poulsens and Ayers, was also an officer, director, and principal shareholder of NCFE. Parrett has not filed a motion to dismiss the claims asserted against her.

2

standard, not a prohibition against detailed complaints brought on behalf of a number of injured plaintiffs asserting multiple claims as Ayers suggests. The Arizona Complaints, and the allegations against Ayers and the Poulsens, conform to the requirements of both rules.

At the outset, Plaintiffs note that aside from Ayers's argument that the Complaints as a whole violate Rule 8, Ayers only moves to dismiss certain of the Arizona Plaintiffs' claims against him. Although Ayers nowhere specifies which claims he is moving to dismiss, the sole argument raised in his motion (besides Rule 8) is that the Arizona Plaintiffs have failed to plead the elements of their fraud claims in accordance with Rule 9(b).[4] Nowhere does Ayers move to dismiss the Arizona Plaintiffs' non-fraud claims, which are not governed by Rule 9(b), including their claims for violation of the Blue Sky laws,[5] negligent misrepresentation, conspiracy, aiding and abetting, breach of fiduciary duty, knowing participation in breach of fiduciary duty, knowing assistance in breach of fiduciary duty, unjust enrichment, negligence, and gross negligence. Accordingly, even if Ayers's motion were well-founded (which it is not), those claims against Ayers cannot be dismissed.

The Poulsens move to dismiss all of the claims asserted against them except the negligent misrepresentation claim. Like Ayers, the essence of their motion is that Plaintiffs have failed to comply with Rule 9(b). Considering the active role that Lance Pouslen, Barbara Poulsen, and Donald Ayers had in the NCFE fraud as alleged in the Complaints, there can be no real doubt that Plaintiffs' pleadings here set out acts and allegations sufficient to justify the advancement of this case to the discovery stage. This is presumably why the fourth "Founder," Ms. Parrett,

---

[4] See Ayers Motion at 11-16 ("Civil Rule 9(b) requires all claims alleging fraud and fraudulent conduct to be plead with particularity. . . . To satisfy the mandates of Civil Rules 9 and 12, all elements of fraud must be present in the Complaint. . . . When claims for fraudulent conduct involve multiple defendants, the complaint must inform each defendant of his or her alleged part in the fraud.").

[5] Plaintiffs' claims for violation of the Blue Sky laws of are not fraud-based claims, and are not subject to Rule 9(b), because scienter is not required to state a claim under those statutes. See Master Brief at III.B.

declined even to move for dismissal and has instead filed her answer. The motions filed by the Poulsens and by Ayers should be denied.

**ARGUMENT**

The majority of the arguments raised by the Founder Defendants repeat or overlap with similar arguments raised by other Defendants. In an effort to coordinate the Court's consideration of these arguments, the Arizona Plaintiffs have prepared and filed their Master Brief, which addresses numerous common issues. Where possible, the arguments and responses set out in that Brief will be referenced, but not repeated, here, so that this separate brief may indeed be as "brief" as possible. Where appropriate, however, additional explanations and responses particular to one or more of the Founder Defendants and their motions are set forth herein.

**I.    PLAINTIFFS' COMPLAINTS COMPLY WITH FEDRERAL RULES 8 AND 9(b)**

Like the other Defendants, the Poulsens and Ayers take the position that, despite what most Defendants acknowledge to have been a massive fraud perpetrated against these Noteholders, not a single Noteholder has set out a claim for relief. Part III of the Master Brief addresses Rule 8 and Rule 9(b) in some detail, making clear that the standards for which the Founder Defendants argue are not the law, and that the Arizona Noteholders' Complaints do not violate either Rule 8 or Rule 9(b).

**A.    The Ayers Motion's Rule 8 Arguments Are Without Merit**

Ayers devotes half of his motion to dismiss to an argument that the Arizona Noteholder Complaints violate the notice pleading standard of Rule 8. In so claiming, Ayers makes much of the fact that the Complaints filed by the Arizona Plaintiffs include a large number of plaintiffs,

4

defendants, claims, and factual allegations.[6]  Of course, the number of Plaintiffs who are victims of NCFE's fraud, and the number of laws that were violated by NCFE's fraudulent note offerings, is a function of the magnitude of the fraud perpetrated by the Defendants, including by Ayers and the Poulsens.  Rule 8 does not impose a bar on the number of claimants or on the number of claims they can pursue.

The other thrust of Ayers's argument that the Arizona Plaintiffs have failed to comply with Rule 8 (Ayers Motion Part II.A) is that the Complaints lack plaintiff-specific information and clarification (*i.e.*, which claims each Plaintiff asserts and against whom).  That concern is addressed in the Master Brief at IV, and in the Proposed Amendments ¶¶ 105A-105RRR.  Though such detail is not required by Rule 8, Rule 9, or otherwise, Plaintiffs have provided detailed information concerning each Plaintiff's purchases, holdings, and claims.[7]

Finally, Ayers relies on and cites at length the case of *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) to support his Rule 8 argument.  In *McHenry*, the plaintiff had been arrested numerous times for giving out free food and political literature in a park without a permit.  *McHenry*, 84 F.3d at 1174.  Unhappy about this, the plaintiff sued the City of San Francisco, the Superior Court of California, the Mayor, the City Attorney, the Chief of Police, and other government employees.  *Id.*  The court described the complaint as "mix[ing] allegations of relevant facts, irrelevant facts, political argument, and legal argument in a confusing way,"

---

[6] Ayers Motion at 8-9 ("[I]n *State of Arizona v. Credit Suisse First Boston Corp.*, there are 3 separate Plaintiffs that have filed claims against 18 different defendants.  The Complaint contains 37 paragraphs, 148 of which are allegations of fact. . . . In *City of Chandler*, there are 184 Plaintiffs that have filed claims against 18 separate Defendants. . . . In *Crown Cork & Seal Co.*, there are 5 Plaintiffs that have filed claims against 19 separate Defendants.").

[7] Ayers simply rehashes his Rule 8 argument under the guise of a Rule 12(e) argument to require Plaintiffs to file a more definite statement because he alleges the Complaints are "vague and ambiguous."  As fully discussed in the Arizona Noteholder Plaintiffs' Response to the Consolidated Motions to Dismiss by the JPM Entities and the Bank One Entities, such an argument must be rejected because Plaintiffs' Complaints provide adequate notice to Ayers regarding what claims have been asserted against him.

consisting of "mostly 'narrative ramblings' and 'storytelling or political griping,'" and noted that

the "claims" were "set out in a single sentence thirty lines long, alleging numerous and different

violations of rights, without any specification of which of the twenty named defendants or John

Does is liable for which wrongs."[8]  *Id.* at 1174, 1176.  The court surmised that "the pleading

seems designed to provide quotations for newspaper stories" and dismissed the complaint for

failing to comply with Rule 8 because it "presented long-winded tales of municipal conspiracy

and police misconduct, but failed properly to notify the individual defendants of the legal claims

they faced."  *Id.*  The *McHenry* case obviously has no application here.  The Arizona

Noteholders' Complaints plead, in a structured and organized way, the details of the widely-

acknowledged fraud at NCFE, state who is responsible, and explain what legal claims are being

asserted.  That is all that Rule 8 requires.

**B.**   **Plaintiffs' Claims Against the Poulsens and Ayers Satisfy Rule 9(b)**

The Poulsens and Ayers both make arguments concerning Rule 9(b), which appear in

Part III.A of the Poulsen Motion and Part B of the Ayers Motion.  Those arguments are

addressed primarily in Plaintiffs' Master Brief at Part III.  For example, the Poulsens, like other

Defendants, sweepingly argue that *all* of Plaintiffs' claims should be dismissed under Rule 9(b),[9]

---

[8] The Ninth Circuit further described the confused rambling of the complaint before it as follows: "It consists largely of immaterial background information.  For example, the complaint explains that plaintiff McHenry cofounded his political organization in Cambridge Massachusetts in 1980, which is irrelevant.  It explains that McHenry's organization adheres to 'the principles of non-violence developed by Gandhi and King,' also irrelevant.  It tells what brand of motorbikes the police officers who arrested people rode, and points out that a journalist was injured by a police officer at one of the mass arrests at Food Not Bombs distributions.  It describes in detail settlement negotiations which Food Not Bombs had at various times and in various other law suits, telling what United States district judge told the City he was considering in a settlement conference in another lawsuit.  It accuses persons other than the defendants of having 'falsely told members of the press' about an injunction.  The complaint says, and illustrates with a dramatic illustration of the mayor rising from his desk chair, that Mayor Agnos seemed quite angry when he met with McHenry."  *McHenry v. Renne,* 84 F.3d at 1177-78.
[9] *See* Poulsen Motion at 9 ("The failure to plead fraud with particularity renders all of the claims against Movants subject to dismissal.").

without regard to the fact that Rule 9(b) by its terms applies only to the allegations of fraud in Plaintiffs' *fraud* claims. *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud. . . ."). It does not apply to any of the claims not dependent on actual fraudulent conduct, and thus affords no basis upon which those claims can be dismissed.[10]

In addition, many of the 9(b) arguments are a reiteration of the request for detailed, Plaintiff-specific information (*e.g.*, the specific OMs, *etc.*, relied upon by each Plaintiff, *see* Ayers Motion at 13), which was addressed in the previous section. Thus, Ayers's argument that Plaintiffs failed to allege reliance on the misrepresentations made to them is not only incorrect,[11] it is also moot. *See* Master Brief at Part III; Proposed Amendments ¶¶ 105A-105RRR.

In any event, the Arizona Plaintiffs make extensive and detailed allegations regarding the Poulsens' and Ayers's role and participation in the fraud, and those allegations more than satisfy the requirements of Rule 9(b). As the Master Brief explains, the purposes of Rule 9(b) are to (i) provide defendants notice of the conduct being challenged, (ii) prevent frivolous "strike" suits, and (iii) protect the reputation of defendants. *See* Master Brief at Part III (citing *Head v. Univ. of Rio Grande*, 2000 WL 1456999, at *2 (S.D. Ohio 2000)). The Poulsens cite caselaw to the same effect. *See* Poulsen Motion at 7, 9 (citing *Semgen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) for the proposition that Rule 9(b) is intended to give defendants notice of the claims against them

---

[10] Plaintiffs' claims that are not dependent on fraudulent conduct, and thus not subject to Rule 9(b), include the claims for violation of the state securities laws, negligent misrepresentation, conspiracy, aiding and abetting, breach of fiduciary duty, knowing participation in breach of a fiduciary duty, knowing assistance in the breach of fiduciary duty, unjust enrichment, negligence, and gross negligence. *See* Master Brief at Parts III.C-E.

[11] Contrary to Ayers's contention, the Complaints are replete with allegations of Plaintiffs' reliance. *See, e.g.*, FAC ¶¶ 3 ("The Arizona governmental entities and the other investors, were induced to buy the notes as a result of written and oral assurances made by people and institutions the investors believed they could trust."); 10 ("Plaintiffs' purchases of the Notes were made on the basis of materially misleading information supplied to, or material omissions kept from them by, the Defendants."); 11 ("The facts set out below establish that the representations the investors received and relied on when they purchased the notes were false when made."); 20 ("These material misrepresentations and omissions misled Plaintiffs, induced them to rely, affected Plaintiffs decision to buy the Notes, and caused their losses.").

and "to prevent the filing of a complaint as a pretext for discovery of unknown wrongs"). Neither the Poulsens nor Ayers can credibly argue that they do not know what conduct they have been sued for, nor can the Noteholder lawsuits be construed as "pretexts for discovery of unknown wrongs." The Arizona Plaintiffs have lost over $1 billion as a result of the widely-recognized (even by most of the Defendants) "massive fraud" at NCFE, and Lance Poulsen, Barbara Poulsen, and Donald Ayers were at the very center of it. This is not the type of lawsuit Rule 9(b) was designed to prevent.

The Poulsens nonetheless cite to the many paragraphs of the Complaints that assert allegations against them, and then proceed to ignore those allegations, throw up their hands, and contend that the Complaints are so lacking in specificity that "there is no way that [they] can 'defend against the charge' against them." Poulsen Motion at 8-9. The Arizona Plaintiffs, however, plainly allege the roles that Lance Poulsen, Barbara Poulsen, and Donald Ayers played in the NCFE fraud, and why it is that those individuals have been sued. Lance Poulsen, Barbara Poulsen, and Donald Ayers are alleged to be founders, shareholders, board members, and officers of NCFE, and each is alleged to have been actively involved in the day-to-day management of NCFE. FAC ¶¶ 59-60, 132. In addition, Lance Poulsen, Barbara Poulsen, and Donald Ayers are each alleged to have been involved in, and to have known about, (i) improper "advanced funding" for "future receivables" (which Lance Poulsen directed in a December 13, 1999 memo), FAC ¶¶ 134-138;[12] (ii) "re-aging" of receivables to avoid having to classify them as "defaulted receivables," id. ¶ 139; (iii) improper advances to NCFE affiliates, owned by the

---

[12] Lance Poulsen is also alleged to have directed improper and unsecured loans that would be "frozen and not aged." FAC ¶ 3.

Poulsens and Ayers themselves, in violation of the Indentures, *id.* ¶¶ 101,141-142;[13] and (iv) the kiting scheme involving the reserve accounts, *id.* ¶¶ 143-146, (indeed Lance Poulsen, Barbara Poulsen, and Donald Ayers are each alleged to have received two memos describing the kiting scheme by early 2000, *id.* ¶ 145, and Lance Poulsen is alleged to have been involved in improper reserve account transactions since at least 1995, *id.* ¶ 149). The Arizona Complaints provide the Poulsens and Ayers with ample notice of the conduct that gives rise to the claims against them.

Further, the Arizona Complaints allege numerous misrepresentations contained in the offering memoranda. *Id.* ¶¶ 80-105. Ayers contends that Plaintiffs' claims are inadequate because they fail to allege details regarding what role Ayers played in the offering memoranda. Ayers Motion at 13-15. That argument is flawed for a number of reasons. First, it ignores the fact that Lance Poulsen, Barbara Poulsen, and Donald Ayers are alleged to have expressly approved the false and misleading offering memoranda used to sell the NCFE Notes, *id.* ¶ 20, and to have assisted in the sale of the NCFE Notes by touting their own backgrounds in the health care industry, participating in the preparation of the offering memoranda, and making oral presentations at meetings and on the phone. *Id.* ¶¶ 15, 70, 132. Second, the offering memoranda themselves belie Ayers's argument that he, a director of NCFE, had no role in the marketing of the notes:

> The *directors* of the Issuer have taken all reasonable care to ensure that (a) the information in the Private Placement Memorandum, as supplemented by this Supplement, with respect to the Issuer and the 2002-1 Notes is true and accurate in all material respects as of the date of this Supplement and (b) there are no other facts the omission of which would make the information contained in the Private Placement Memorandum, as supplemented by this Supplement, misleading in any material respect. The *directors* of the Issuer accept responsibility accordingly.

---

[13] Indeed, Poulsen and Ayers are both alleged to have improperly funneled millions of dollars from NCFE through their alter ego corporations, Defendants E&D Investments, Inc. and Kuld Corporation. FAC ¶¶ 183-185.

*See, e.g.*, NPF VI Series 2002-1 OM at 3; NPF XII Series 2001-1 OM at 3 (emphasis added).[14]

Ayers (like the Poulsens) was an officer and director of NCFE; he was involved in the NCFE note offerings, and thus Plaintiffs' claims against him with respect to the misrepresentations and omissions in the offering memoranda are sufficient under the group pleading doctrine. Judge Sargus of this district recently explained why this group pleading doctrine applies to defendants such as Ayers:

> The group published doctrine applies in cases of corporate fraud where officers and directors of the corporation are held liable for false statements found in group published documents. The doctrine has been summarized as follows:
>
>> In cases of corporate fraud where the false and misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group-published information,' it is reasonable to presume that these are the collective actions of the officers. [citations omitted]. Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations.

*In re Smartalk Teleservs., Inc. Sec. Litig.*, 124 F. Supp. 2d 527, 545 (S.D. Ohio 2000) (quoting *Wool v. Tandem Computers, Inc.*, 818 F. 2d 1433, 1440 (9th Cir. 1987)).[15] The Poulsens and Ayers are alleged to have been officers and directors of NCFE, *see* FAC ¶ 132, and each is alleged to have been involved in and approved the dissemination of the Offering Memoranda to the Noteholders, *id.* ¶¶ 15, 20, 70, 132. Under the group pleading doctrine, those allegations are sufficient to allege fraud against the Poulsens and against Ayers based on the misrepresentations contained in the Offering Memoranda.

---

[14] A copy of the Offering Memorandum is attached as Exhibit C to the Consolidated Motion to Dismiss of Bank One, N.A., Banc One Capital Markets, Inc. and Bank One Corporation.
[15] *See also New Eng. Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 1999 U.S. Dist. LEXIS 12999, at *17 (W.D. Ky. 1999); *Benedict v. Cooperstock*, 23 F. Supp. 2d 754, 762 (E.D. Mich. 1998).

In the end, the fraud claims against Lance Poulsen, Barbara Poulsen, and Donald Ayers are set forth in sufficient detail to satisfy the pleading requirements of Rule 9(b), and their motions to dismiss the fraud claims should be denied.

## C.    Plaintiffs' State Law Claims Are Viable

The Poulsen Motion also argues that all of Plaintiffs' state law claims (except for California and Arizona)[16] must be dismissed because the Complaints fail to allege any connection between the NCFE fraud and each particular state. Poulsen Motion at 10-12. This argument is disingenuous at best. NCFE was based in Ohio, and the Poulsens primarily lived and worked in Ohio. FAC ¶ 59. Lance Poulsen is certainly aware that NCFE had investors throughout the country; indeed, Mr. Poulsen regularly traveled to meet with investors. *Id.* ¶ 132. As set forth in Part XI of the Master Brief, choice of law determinations are premature and inappropriate on a motion to dismiss. Nonetheless, to the extent necessary, Plaintiffs have provided detailed information regarding the connection between each state, the fraudulent NCFE note offerings, and the relevant state statute in the Master Brief at Part IV, and in the Proposed Amendments ¶¶ 105A-105RRR. Poulsen's "nexus" argument is a red herring.

## D.    Plaintiffs' Claims Based On State Blue Sky Laws Do Not Violate The Commerce Clause

In Part III(B)(3) of their Motion, the Poulsens argue that all of Plaintiffs' Blue Sky law claims – except for those based on Arizona's Blue Sky laws – should be dismissed because they violate the Commerce Clause of the United States Constitution. Poulsen Motion at 12-13. That argument, and the reasons why Plaintiffs' claims under various state Blue Sky laws are not barred by the Commerce Clause, is addressed in detail in the Master Brief at Part VI and VII.A.

---

[16] The Poulsens offer no real explanation for the distinction they draw between these two states and the other states whose securities laws are involved.

Further, the cases cited by the Poulsens do not support their argument. Those cases stand for the unremarkable proposition that a state's Blue Sky laws do not apply to securities transactions that occur entirely in other jurisdictions and have no connection to the state.[17] Based on these cases, the Poulsens attempt to confuse the issue by stating that all of the Complaints allege that acts were committed in Arizona, so it must be the case that the Arizona Blue Sky law is the only one that can apply consistent with the Commerce Clause. Poulsen Motion at 13. The obvious flaw in that argument is that while it is certainly true that many of Defendants' acts occurred in Arizona and harmed Arizona-based Plaintiffs, it is also true that the fraudulent acts took place and harmed Plaintiffs in a number of other states as well. As explained in the Master Brief, and in the Proposed Amendments ¶¶ 105A-105RRR, each Plaintiff alleges Blue Sky claims based solely on the Ohio Securities Act (where NCFE, and its notes offerings, were based) and the Blue Sky laws of the state with a connection to that particular Plaintiff's purchase of the NCFE notes. Those claims do not violate the Commerce Clause.[18]

---

[17] *See Singer v. Magnavox Co.*, 380 A.2d 969, 981 (Del. 1977) ("Plaintiffs are residents of Pennsylvania and were not solicited here. Nor does it appear that the contract was made in Delaware nor that any part of the 'sale' occurred [in Delaware]. It follows that the Delaware Securities Act does not apply."); *Arizona Corp. Comm'n v. Media Prods., Inc.*, 763 P.2d 527, 528-29 (Ariz. Ct. App. 1988) (determining that applying Arizona's Blue Sky law to securities offering would violate the Commerce Clause where "Sales of the entire issue were negotiated out-of-state solely by the out-of-state agent underwriter and its selling out-of-state broker-dealers with purchasers who were residents of states where the offerings were duly registered. No sales or offers of sale were made in Arizona or to Arizona residents. There is no contention that the offerings were fraudulent."); *Cors v. Langham*, 683 F. Supp. 1056 (E.D.Va. 1988) (no claim stated under Maryland law when the acts complained of *all* took place in Virginia); *McCullough v. Leede Oil & Gas, Inc.*, 617 F. Supp. 384 (W.D. Okla. 1985) (granting summary judgment on plaintiff's claim under Oklahoma Securities Act, without mention of the Commerce Clause, based on a finding that the sale of the securities occurred entirely outside of Oklahoma).

[18] Aside from the "Commerce Clause" argument, neither the Poulsens nor Ayers contest the allegations that they are subject to aiding and abetting liability and control person liability under Plaintiffs' Blue Sky law claims, nor could they. The Poulsens materially aided and participated in the sales through their role as officers and directors by, among other things, approving each offering, directing the affairs of NCFE and the NPF trusts, both strategically and on a day-to-day basis, and soliciting investors in person and on the telephone. *See* FAC ¶¶ 15, 20, 59, 60, 132.

E.    **Plaintiffs Have Adequately Alleged a Breach Of Fiduciary Duty Claim Against the Poulsens**

The Poulsens next argue that Plaintiffs have failed to allege a breach of fiduciary duty claim against them because (i) there is no allegation that the Poulsens owed any duty to the Plaintiffs and (ii) Plaintiffs have failed to allege that the Poulsens wasted corporate assets. Poulsen Motion at 13-14. The Poulsens are wrong on both counts.

With respect to whether Arizona Plaintiffs have alleged that the Poulsens owed them a fiduciary duty, it is commonly recognized, and the Poulsens do not dispute, that directors (like the Poulsens) owe a fiduciary duty directly to creditors (like the Arizona Noteholders) when a company is insolvent or operating in the vicinity of insolvency. *See, e.g., Denune v. Consolidated Capital of N. Am., Inc.*, 288 F. Supp. 2d 844, 859 (N.D. Ohio 2003) ("Under long-standing Ohio law, the officers and directors of a corporation that is insolvent or on the brink of insolvency owe a fiduciary duty to the corporation itself and to its creditors not to waste corporate assets which otherwise could be used to pay corporate debts.").[19]

---

Similarly, the Poulsens and Ayers are subject to control person liability because they were officers, directors, and shareholders of NCFE, they were intimately involved with the day-to-day operations and management of NCFE, and they played an integral role in the fraud on the investors. *Id.* Facts such as these have repeatedly been found to state a claim for control liability against officers and directors of a company. *In re Aetna Inc. Sec. Litig.*, 34 F. Supp. 2d 935 (E.D. Pa. 1999) (finding that defendants, as chairman/chief executive officer and vice chairman/chief financial officer, influenced and controlled their corporation's decision-making regarding its misrepresentation of problems resulting from acquisition of another corporation); *In re Tel-Save Sec. Litig.*, 1999 WL 999427 (E.D. Pa. 1999) (concluding that the chairman of a corporation's board of directors and chief executive officer, by virtue of his high-level position, his ownership and contractual rights, and his knowledge of the corporation's financial condition and operations, had almost complete control over and participation in the concealment of expenses in financial statements and earning reports); *In re Equimed, Inc.*, 2000 WL 562909 (E.D. Pa. 2000) (noting that by virtue of his majority stock ownership, high-level position in the company, unlimited access to company information, and direct involvement in the day-to-day operations of the company, the defendant had the power to control or influence the transactions giving rise to the underlying securities claim).

[19] *See also In re Baldwin-United Corp.*, 43 B.R. 443 (S.D. Ohio 1984) (noting that "the rule prevailing in most jurisdictions . . . is that when the corporation becomes insolvent, the directors are thereafter considered as trustees for the corporate creditor" quoting 3 Fletcher Cyclopedia Corporations § 849

In their Complaints, the Arizona Noteholders allege that as a result of the Ponzi scheme perpetrated by the Defendants, "NPF XII and NPF VI were actually insolvent, or in the imminent vicinity of insolvency, on each date upon which they issued Notes and on each date when Notes were sold to the Plaintiffs. Accordingly, the Founders and the JPM Directors owed fiduciary duties directly to Plaintiffs as creditors and prospective creditors of NCFE, NPF XII and NPF VI." FAC ¶ 397. Thus, the Complaints plainly allege that the Poulsens owed a fiduciary duty directly to the Arizona Noteholders.

Next, the Poulsens contend that even if they owed a fiduciary duty to Plaintiffs, they are not alleged to have breached any such duty by wasting corporate assets. Poulsen Motion at 13. That argument is breath-taking, considering that these lawsuits arise out of a multi-billion dollar Ponzi scheme involving improper "preferential loans, advances and illusory purchases of 'future receivables'" *to and from affiliate companies owned and controlled by the Poulsens id.* ¶ 101-103, and a bold reserve kiting scheme specifically intended to mask the fact that Defendants had wasted the very corporate assets that were supposed to remain in the reserve accounts to protect the Noteholders, *id.* ¶ 145-150. For example, Plaintiffs allege that "Poulsen knew about and approved of more than $1 billion in fraudulently overfunded advances that went to companies affiliated with Defendants Poulsen, Ayers, Parrett and Barbara Poulsen." *Id.* ¶ 142. That certainly constitutes a waste of corporate assets and a breach of fiduciary duty by the Poulsens.

In short, the Arizona Plaintiffs have alleged that the Poulsens owed them a fiduciary duty by virtue of the fact that NCFE, NPF VI, and NPF XII were insolvent or in the vicinity of insolvency at the time of each note offering, and they have alleged multiple, egregious breaches

---

(1945)); *Ford v. Lamson*, 1999 WL 1258, at *4 (Ohio Cir. 1899) ("When the corporation becomes insolvent, the creditor directors become trustees for the corporate creditors.")).

of that duty in the form of improper advances and loans to affiliated companies. That is sufficient to state a claim for breach of fiduciary duty.

### F.    Plaintiffs Have Adequately Alleged a Conspiracy Claim Against the Poulsens

The Poulsens argue that Plaintiffs have failed to plead a conspiracy claim against them because, they contend, Plaintiffs have not alleged any underlying tort that could give rise to a conspiracy claim. Poulsen Motion at 14. In other words, if the Court were to dismiss *all* of the other tort claims alleged by the Arizona Plaintiffs, then the conspiracy claim must be dismissed as well. That is true, but irrelevant. The Arizona Plaintiffs have stated a number of viable tort claims against the Poulsens, including fraud, aiding and abetting, breach of fiduciary duty, knowing participation in breach of fiduciary duty, and knowing assistance in the breach of a fiduciary duty. Each and every one of those claims satisfies the "underlying tort" requirement of a conspiracy claim, and thus rebuts the sole argument made by the Poulsens for dismissal of that claim. Accordingly, the Arizona Plaintiffs' conspiracy claim should not be dismissed.[20]

### G.    Plaintiffs State a Claim for Unjust Enrichment

The Poulsens argue that Plaintiffs have failed to allege two necessary elements of their unjust enrichment claim, and, in a repeat of their 9(b) argument, assert that Plaintiffs have failed to allege any particular facts to support an unjust enrichment claim. Poulsen Motion at 15. As

---

[20] In support of their argument that the conspiracy claim should be dismissed, the Poulsens cite *Guy v. City of Phoenix*, 668 F. Supp. 1342, 1352 (D. Ariz. 1987) where the court stated that "Arizona does not recognize the existence of a tort of 'conspiracy.' A conspiracy itself furnishes no grounds whatsoever for a civil action. It is the doing of the thing for which a conspiracy was formed that furnishes the basis for such civil action." Poulsen Motion at 14 (quoting *Guy*, 648 F. Supp. at 1352). Lest there be any confusion, the *Guy* court was *not* saying that there is no such thing as a conspiracy claim under Arizona law, but rather it was simply recognizing the widely accepted concept that "a conspiracy," by itself, is not actionable without an underlying tort. The *Guy* court makes that clear in the very next sentence of its decision, one not cited by the Poulsens: "Plaintiff has failed to prove the underlying alleged unlawful acts. *Since the court finds no unlawful acts occurred, there can be no conspiracy violation.*" *Guy*, 668 F. Supp. at 1352 (emphasis added). Arizona law, like Ohio law, recognizes a civil conspiracy claim where, as here, an underlying tort is alleged.

an initial matter, the heightened pleading requirements of Rule 9(b) do not apply to an unjust

enrichment claim.[21]  Moreover, as explained in the Master Brief at Part XIV, unjust enrichment

is a flexible concept grounded in equity.  *See, e.g., Arnold & Assoc., Inc. v. MISYS Healthcare

Sys.*, 2003 WL 21805232, at *8 (D. Ariz. 2003) (applying Arizona law and stating that unjust

enrichment is "a flexible, equitable remedy" and that "in order to establish a claim for unjust

enrichment, a plaintiff must show that (1) it conferred a benefit on defendant, (2) defendant's

benefit is at plaintiff's expense, and (3) it would be unjust to allow defendant to keep the

benefit"); *see also HLC Trucking v. Harris*, 2003 WL 346266, at *6 (Ohio Ct. App. 2003)

("[T]he elements of unjust enrichment are 1) a confirmed benefit to the defendant; 2) substantial

detriment to the plaintiff; and 3) causal connection between the two. Usually the causal

connection is some type of fraud or misrepresentation.").  Plaintiffs have properly alleged the

elements of a common law unjust enrichment claim against the Defendants, including the

Poulsens, and the Poulsens' motion to dismiss that claim should be denied.

### H.    Plaintiffs Have Adequately Alleged an Aiding and Abetting Claim Against the Poulsens

The Poulsens' argument concerning Plaintiffs' aiding and abetting claim is nothing more

than a repeat of their Rule 9(b) argument, and is equally defective.[22]  Just as the allegations in the

Complaints to state fraud claims against the Poulsens, *see* Parts I.B-C, they likewise state an

aiding and abetting claim.

---

[21] *See In re Fruehauf Trailer Corp.*, 250 B.R. 168, 1997-98 (D. Del. 2000) ("[T]he Rule 9(b) heightened pleading requirement does not apply to the state law claims of . . . unjust enrichment"); *Zucker v. Katz*, 708 F. Supp. 525, 530 (S.D.N.Y. 1989) ("Rule 9(b) is not applicable to . . . unjust enrichment.").

[22] *See* Poulsen Motion at 15 ("Here . . . there are no specific allegations against any of the Movants. Instead, the Complaints make general allegations against 'each Defendant.'  There is, or course, no specific allegation against any of the Movants.").  As with Plaintiffs' other non-fraud claims, Rule 9(b) does not apply to Plaintiffs' aiding and abetting claim.

As explained in the Master Brief at Part XII, an aiding and abetting claim has two elements: "(1) knowledge that the primary party's conduct is a breach of duty and (2) substantial assistance or encouragement to the primary party in carrying out the tortious act." *Andonian v. A.C. & S., Inc.* 647 N.E.2d 190, 192 (Ohio Ct. App. 1994); *see also Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 295 Pension Trust Fund*, 38 P.3d 12, 36 (Ariz. 2002) (adding third element that the primary tortfeasor must have committed a tort that injured the plaintiffs). Plaintiffs allege the Poulsens' active participation and role in the fraudulent NCFE note offerings, including that the Poulsens had knowledge of and substantially assisted in that fraud. *See, e.g.*, FAC ¶¶ 132-150. Those allegations are sufficient to state an aiding and abetting claim.

## I.    Plaintiffs Have Likewise Stated a Claim for Negligence and Gross Negligence

Without citing any authority, the Poulsen's once again repeat their Rule 9(b)-type argument to suggest that Plaintiffs' negligence and gross negligence claims should be dismissed due to a failure to plead "specific facts" that the Poulsens owed, let alone breached, any duty. Poulsen Motion at 16. Rule 9(b) and its heightened pleading standards categorically do not apply to Plaintiffs' negligence and gross negligence claims. *See* Master Brief Part III.E. Further, the Poulsens' contention that no duty, or breach of duty, is alleged is incorrect. When the Poulsens chose to engage in a fraudulent Ponzi scheme by selling the NCFE Notes to Plaintiffs based on misrepresentations and omissions, the Poulsens assumed a duty, under the state Blue Sky laws and the common law, to speak truthfully and to disclose all material facts to Plaintiffs. *See, e.g.*, *Helwig v. Vencor*, 251 F.3d 540, 561 (6th Cir. 2001) ("[A] party who discloses material facts in connection with securities transactions 'assumes a duty to speak fully and truthfully on those subjects'"). They assumed additional duties, as noted above, because they were directors

17

of insolvent entities and thus owed fiduciary duties directly to the noteholders, who are plaintiffs in this case. *See* FAC ¶ 397; *see also Denune,* 288 F. Supp. 2d at 859. As alleged in the Complaint, the Poulsens breached those duties.

Plaintiffs have stated viable claims against them for negligence and gross negligence.

### J.    Plaintiffs' Exemplary Damages Claim is Not Subject to Dismissal

The Poulsens also argue that Plaintiffs' request for exemplary damages should be dismissed because "the Complaints fail to allege any actionable, wrongful conduct against any of the Movants." Poulsen Motion at 16. As discussed above in connection with the Poulsens Rule 9(b) argument, this assertion simply defies the facts. The Complaints allege at length the actionable, wrongful conduct for which the Poulsens, along with the other Defendants, are liable. In addition, as explained in the Master Brief at Part XV, Plaintiffs' intent to seek punitive damages in this lawsuit is not an independent claim that is subject to dismissal, and punitive damages are available to Plaintiffs on the intentional tort claims asserted in this case.

### K.    Kuld Corporation Is Liable as the Alter Ego of The Poulsens

Finally, The Poulsens point out that the Arizona Plaintiffs make no allegations against Kuld Corporation ("Kuld") other than the fact that it is the alter ego of Lance Poulsen. Poulsen Motion at 8. The Poulsens are correct, but that does not warrant dismissal of Kuld. Kuld, as the alter ego of the Poulsens, is liable for the Poulsens' acts and omissions. *See* FAC ¶ 185. In addition, to the extent necessary, additional allegations regarding Kuld's alter ego status are provided in the Proposed Amendment ¶ 184A, including the fact that Poulsen owns all of the stock of Kuld and is its sole officer and director. In his deposition, moreover, Poulsen testified that he set up Kuld only for the purpose of holding his NCFE stock, Kuld has no separate bank account and no offices, and Poulsen regularly disregards Kuld's separate corporate form, by, for

example, including NCFE's stock on his personal financial statements even though Kuld is the

holder of that stock. Those allegations are more than enough to find that Kuld is liable as

Poulsens' alter ego. *See Roofers Local 149 Sec. Trust Fund v. Duane Smelser Roofing*, 285 F.

Supp. 2d 936 (E.D. Mich. 2003) (stating that the factors to consider for determining alter ego

status include "whether the two enterprises have substantially identical management, business,

purpose, operation, equipment, customers, supervision and ownership" (citations omitted)).[23]

## CONCLUSION

For the reasons set forth in this Response and for the reasons set forth in the Master Brief,

the Poulsen Motion and the Ayers Motion must be denied in their entirety.

Dated:

Respectfully submitted,

s/Jeffry J. Cotner
Kathy D. Patrick (TX Bar No. 15581400)
Jeffry J. Cotner (TX Bar No.  00783884)
Scott A. Humphries (TX Bar No. 00796800)
Jeremy L. Doyle (TX Bar No. 24012553)
Attorney for City of Chandler, State of Arizona
    and Crown Cork Plaintiffs
GIBBS & BRUNS, L.L.P.
1100 Louisiana, Suite 5300
Houston, Texas  77002
Telephone No. (713) 650-8805
Facsimile No. (713) 750-0903
E-mail:  Kpatrick@gibbs-bruns.com
E-mail:  Jcotner@gibbs-bruns.com
E-mail:  Shumphries@gibb-bruns.com

---

[23] Plaintiffs also plead that E&D is liable as the alter ego of Ayers. *See* FAC ¶ 62, 184. The Ayers Motion does not challenge that allegation. Rather, with respect to E&D, the Ayers Motion argues that the Arizona Plaintiffs have not stated a fraud claim *directly* against E&D. Ayers Motion at 2 (moving to dismiss Plaintiffs' fraud claims because the complaints "do not allege specific facts showing that Defendants Ayers and E&D committed fraud"). Plaintiffs' allegations against E&D for *alter ego* liability thus should not be dismissed.

## CERTIFICATE OF SERVICE

I hereby certify that on ___MAY 3, 2004___, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following as indicated on the service list below, and I hereby certify that I have mailed by certified mail, return receipt requested, United Postal Service the document to the following non CM/ECF participants as indicated on the service list below.

> s/ Jeffry J. Cotner
> Kathy D. Patrick (TX Bar No. 15581400)
> Jeffry J. Cotner (TX Bar No. 00783884)
> Scott A. Humphries (TX Bar No. 00796800)
> Attorney for City of Chandler, State of Arizona
>    And Crown Cork Plaintiffs
> GIBBS & BRUNS, L.L.P.
> 1100 Louisiana, Suite 5300
> Houston, Texas 77002
> Telephone No. (713) 650-8805
> Facsimile No. (713) 750-0903
> E-mail: Kpatrick@gibbs-bruns.com
> E-mail: Jcotner@gibbs-bruns.com
> E-mail: Shumphries@gibbs-bruns.com

### Service List

| | |
|---|---|
| **VIA CM/ECF**<br>Brian Dickerson<br>R. Polifrono<br>Maguire & Schneider, LLP<br>250 Civic Center Drive, Suite 200<br>Columbus, OH 43215<br>**Attorneys for Defendant Donald Ayers, Ayers LLC, Elyse Ayers, and E&D Investments** | **VIA CM/ECF**<br>Michael Carpenter<br>Carpenter & Lipps, LLP<br>1600 Huntington Center, 41 South High Street<br>Columbus, OH 43215<br><br>**VIA CM/ECF**<br>Michael Proctor Graney<br>Simpson Thacher & Bartlett – 2<br>1 Riverway Plaza, 9th Floor<br>Columbus, OH 43215<br><br>**VIA CM/RRR and CM/ECF**<br>Barry Ostrager; Mary Kay Vyskocil<br>Simpson Thacher & Bartlett, LLP<br>425 Lexington Avenue<br>New York, NY 10017<br>**Attorneys for Defendants Thomas G. Mendell, Harold W. Pote and Eric R. Wilkinson** |

|  | **VIA CM/ECF**<br>Kyle Lonergan,<br>K. Russum, S. Craig, R. Counteepistorius,<br>and D. Goodcare<br>Simpson, Thacher & Barlett<br>425 Lexington Avenue<br>New York, NY 10017-3909<br>**Attorneys for Defendants Thomas G. Mendell,**<br>**Harold W. Pote and Eric R. Wilkinson** |
|---|---|
| ***VIA CM/RRR***<br>Andrew Stewart Ashworth, Esq.<br>Gabriel & Ashworth, PLLC<br>10105 East Via Linda<br>Suite 103, No. 392<br>Scottsdale, AZ 85258<br>**Attorney for Richard Heuer** | **VIA EM/ECF**<br>Bobby Burchfield; Benjamin Block;<br>James Garland<br>Gary Rubman, Esq.<br>Covington & Burling<br>1201 Pennsylvania Avenue, N.W.<br>Washington, DC 20004-2401<br><br>**Attorneys for Defendants Bank One N.A.,**<br>**Bank One Corporation, and Banc One**<br>**Capital Markets, Inc.** |
| **VIA CM/ECF**<br>Robert M. Cary, Esq.;<br>C. Singer, Esq.;Matthew Andelman<br>Williams & Connolly, LLP<br>725 Twelfth Street, N.W.<br>Washington, DC 20005-3901<br><br>**VIA CM/RRR**<br>John K. Villa, Esq.<br>Rob Cary, Esq.<br>Williams & Connolly, LLP<br>725 Twelfth Street, N.W.<br>Washington, DC 20005-3901<br><br>**VIA CM/RRR and CM/ECF**<br>Matthew Fornshell<br>Kohrman Jackson & Krantz<br>One Cleveland Center<br>1375 E. 9th Street, 20th Floor<br>Cleveland, OH 44114<br>**Attorneys for Defendant Purcell & Scott** | **VIA CM/ECF**<br>Michael J. Collins, Esq.<br>Bickel & Brewer<br>4800 Bank One Center<br>1717 Main Street, Suite 4800<br>Dallas, TX 75201<br><br>**VIA CM/ECF**<br>Joseph J. Murray<br>Tiffany@mmmb.com<br>Jennifer@mmmb.com<br>Murray Murphy Moul & Basil<br>326 S. High Street, Suite 400<br>Columbus, OH 43215<br>**Attorneys for Pharos Plaintiffs** |

| | |
|---|---|
| **VIA CM/ECF**<br>James J. Coster, Esq.<br>Satterlee Stephens Burke & Burke, LLP<br>230 Park Avenue<br>New York, NY 10169-0079<br><br>**VIA CM/ECF**<br>Lawrence David Walker<br>Taft Stettinius & Hollister – 2<br>21 E. State Street, 12th Floor<br>Columbus, OH 43215-4221<br>**Attorneys for Defendant Moody's Investors Services, Inc.** | **VIA CM/ECF**<br>Evan A. Davis and Stephen Rich<br>Carmine Boccuzzi, Esq.<br>Cleary, Gottlieb, Steen & Hamilton<br>One Liberty Plaza<br>New York, NY 10006-1470<br><br>*VIA CM/RRR*<br>Eric Seiler, Esq.<br>Joshua A. Polak, Esq.<br>Friedman Kaplan Steiler & Adelman, LLP<br>One Gateway Center, 25th Floor<br>Newark, NJ 07102-5311<br>**Attorneys for Defendant Fitch, Inc.** |
| **VIA CM/RRR**<br>William D. Davis, Esq.<br>P. O. Box 1224<br>Gallipolis, OH 45631-6224<br>**Attorneys for Defendant E&D Investments, Inc.** | **VIA CM/RRR**<br>William K. Davis, Esq.<br>Bell, Davis & Pitt, Pa<br>100 North Cherry Street, Suite 600<br>Winston-Salem, NC 27120-1029<br><br>**VIA CM/ECF**<br>Timothy S. Rankin<br>Onda LaBuhn & Rankin Co., LPA<br>266 N. Fourth Street, Suite 100<br>Columbus, OH 43215<br>**Attorneys for Florida Health Plan Management, Inc.** |

| | |
|---|---|
| **VIA CM/RRR**<br>Howard D. DuBosar, Esq.<br>Dubosar & Dolnick, PA<br>3010 North Military Trail, Suite 210<br>Boca Raton, FL 33431<br>**Attorney for CHC Clintwood Inc.** | **VIA CM/ECF**<br>William A. Escobar<br>Martin S. Bloor<br>Nicholas J. Panarella<br>John Callagy; J. Hankin<br>Kelley Drye & Warren, LLP<br>101 Park Avenue<br>New York, NY 10178<br><br>**VIA CM/ECF**<br>O. Judson Scheaf; John Bernard Kopf;<br>Nita Hanson; Rhonda Van Arsdale<br>William Chester Wilkinson; Cindy Wagner<br>Thompson Hine LLP<br>10 West Broad Street, 7th Floor<br>Columbus, OH 43215<br>**Attorneys for Defendant JP Morgan Chase & Co., JP Morgan Chase Bank, JP Morgan Partners, LLC and The Beacon Group, LLC** |

**VIA CM/ECF**
Andrew L. Goldman, Esq.
Bartlit Beck Herman Palenchar & Scott
Courthouse Place
54 West Hubbard Street, Suite 300
Chicago, IL 60610

**VIA CM/ECF**
Michael Szolosi
McNamara & McNamara
88 East Broad Street, Suite 1250
Columbus, OH 43215

**VIA CM/ECF and CM/RRR**
David Stewart Cupps
L. K. Lowery
Vorys Sater Seymour & Pease
52 E. Gay Street, P. O. Box 1008
Columbus, OH 43216-1008

**VIA CM/RRR**
Sharon Katz
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017
**Attorneys for Defendant Deloitte & Touche, LLP**

**VIA CM/ECF**
John Edward Haller, Esq.
Shumaker Loop & Kendrick
41 South High Street, Suite 2210
Columbus, OH 43215

**VIA CM/RRR**
Michael J. O'Connor
Mike Farrell
Jennings, Strouss & Salomon, PLC
The Collier Center – 11th Floor
201 East Washington Street
Phoenix, AZ 85004-2385

**VIA CM/ECF and CM/RRR**
Albert J. Lucas and L. Horne
Calfee Halter & Griswold, LLP
1400 McDonald Investment Center
800 Superior Avenue
Columbus, OH 44114-2688
**Attorney for Defendant Kuld Corporation, Barbara Poulsen and Lance Poulsen**

| | |
|---|---|
| **VIA CM/RRR**<br>Robert N. Kaplan, Esq.<br>Kaplan, Kilsheimer & Fox, LLP<br>805 3rd Avenue<br>New York, NY 10022<br>**Attorneys for Plaintiffs Michael Mahoney,**<br>**Louis Janssen and All Other Similarly**<br>**Situated** | **VIA CM/ECF**<br>Harold G. Levison, Esq.; F. Figueroa, Esq.<br>C. Kelly, Esq.; N. Berstein, Esq.;<br>Michael H. Rogers and D. Ross<br>Kasowitz Benson Torres & Friedman, LLP<br>1633 Broadway<br>New York, NY 10019-6799<br><br>**VIA CM/ECF**<br>David G. Jennings<br>Amy Hoover<br>Timothy Edward Miller<br>Issaac Brant Ledman & Teetor<br>250 E. Broad Street, Suite 900<br>Columbus, OH 43215-3742<br>**Attorneys for Plaintiffs Met Life and Lloyds**<br>**TSB Bank plc** |
| **VIA CM/ECF AND CM/RRR**<br>William R. Maguire, Esq.<br>Sarah Loomis Cave, Esq.<br>Hughes Hubbard & Reed, LLP<br>One Battery Park Plaza<br>New York, NY 10004-1482<br><br>**VIA CM/ECF**<br>Dan L. Cvetanovich, Esq.<br>Tiffany C. Miller<br>Bailey Cavalieri LLC<br>10 West Broad Street<br>Columbus, OH 43215-3422<br>**Attorneys for PricewaterhouseCoopers LLP** | **VIA CM/ECF**<br>David W. Alexander, Esq.<br>Keith Shumate, Esq.<br>P. Brian See, Esq.<br>C. H. Perez, Esq.<br>Squire, Sanders & Dempsey, LLP<br>1300 Huntington Center<br>41 S. High Street<br>Columbus, OH 43215<br>**Attorneys for Plaintiff Bank One, N.A. as**<br>**Indenture Trustee** |

| | |
|---|---|
| **VIA CM/ECF**<br>William A. Miller, Esq.<br>2390 East Camelback Road, Suite 225A<br>Phoenix, AZ 85016<br>**Attorneys for Rebecca Parrett** | **VIA CM/RRR**<br>R. Brian Oxman, Esq.<br>R. Brian Oxman Law Offices<br>14126 E. Rosencrans Blvd.<br>Santa Fe Springs, CA 90670<br><br>**VIA CM/ECF**<br>David Albert Kopech<br>Kopech & Associates<br>140 E. Town Street, Suite 1070<br>Columbus, OH 43215<br>**Attorney for Cranford L. Scott** |
| **VIA CM/ECF**<br>Barry Sher, Esq.<br>Israel David, Esq.<br>Thomas Ross Hooper<br>Fried, Frank, Harris, Shriver & Jacobsen, LLP<br>One New York Plaza<br>New York, NY 10004-1980<br>**Attorneys for The Beacon Group, III Focus Value Fund** | *VIA CM/ECF*<br>Jeffrey Q. Smith, Esq.<br>Steven G. Brody, Esq.<br>King and Spaulding, LLP<br>1185 Avenue of the Americas<br>New York, NY 10036<br><br>**VIA CM/ECF**<br>Thomas Leslie Long<br>Baker & Hostetler – 2<br>65 E. State Street, Suite 2100<br>Columbus, OH 43215-4260<br>**Attorneys for Defendant Credit Suisse First Boston and Credit Suisse First Boston, LLC** |

| | |
|---|---|
| **VIA CM/ECF**<br>Roger P. Sugarman, Esq.<br>Kegler, Brown, Hill & Ritter<br>65 East State Street<br>Suite 1800<br>Columbus, OH 43215<br>**Attorneys for Defendant The Shattan Group, LLP** | **VIA CM/RRR**<br>Joseph C. Wasch, Esq.<br>888 East Olas Blvd., Suite 210<br>Ft. Lauderdale, FL 33301<br>**Attorneys for Biosource Corporation** |
| **VIA CM/RRR and (CM/ECF)**<br>David M. Wells, Esq.<br>William K. Deem, Esq.<br>C. Hilf, Esq.<br>McGuire Woods LLP<br>50 North Laura Street, Suite 3300<br>Jacksonville, FL 32202-4099<br>**Attorneys for Defendants Albert Martson, Sam J. Romeo, Frank Magliochetti, George Kuselias, Suzanne Hosch and Johnson** | **VIA CM/RRR**<br>ACC/Allcare of Pennsylvania<br>23975 Park Sorrento, Suite 370<br>Calabasas, CA 91302-4022<br>**Pro Se** |
| **VIA CM/RRR**<br>Home Medical Care of America, Inc.<br>55 Carnegie Plaza<br>Cherry Hill, NJ 08003<br>**Pro Se** | **VIA CM/RRR**<br>National Rehab of Florida<br>8727 Beckingham Place<br>Orlando, FL 32836<br>**Pro Se** |
| **VIA CM/RRR**<br>Craig W. Porter<br>42 Faxon Street<br>Newton, MA 02458<br>**Pro Se** | **VIA CM/ECF**<br>Susan S. Oosting, Esq.<br>Michael J. Obringer, Esq.<br>Obringer, DeCandio & Oosting, P.A.<br>12 E. Bay Street<br>Jacksonville, FL 32202-5147<br><br>**VIA CM/ECF and CM/RRR**<br>Roger L. Longtin, Lawrence A. Wojcik and Paula D. Friedman<br>Piper Rudnick<br>203 N. LaSalle Street, Suite 1800<br>Chicago, IL 60601-1293<br>**Attorneys for Defendant R. J. Gold & Company** |

| | |
|---|---|
| **VIA CM/ECF**<br>Thomas J. Fellig,<br>J. Temchin, and J. Scott<br>Fellig, Feingold, Edelblum & Schwartz, LLC<br>Two University Plaza, Suite 307<br>Hackensack, NJ 07601<br>**Attorney for Barbara Poulsen and Lance Poulsen** | **CM/ECF**<br>Kevin Janus and Nathaniel Read<br>Quinn, Emanuel, Urquhart, Oliver & Hedges<br>335 Madison Avenue, 17th Floor<br>New York, NY 10017<br>**Attorney for ING Bank, N.V.** |
| **VIA CM/ECF**<br>George Ridge<br>Cooper, Ridge & Lantinberg, P.A.<br>1200 Sun Trust Bank Building<br>200 West Forsyth Street<br>Jacksonville, FL 33202 | **VIA CM/ECF**<br>James Edward Arnold<br>Clark, Perdue, Roberts & Scott<br>471 E. Broad Street, Suite 1400<br>Columbus, OH 43215 |
| **VIACM/ECF**<br>Richard B. Harper<br>**(address unknown)** | **VIA CM/ECF and CM/RRR**<br>Stanley H. Wakshlag<br>Brian P. Miller<br>Samantha K. Kavanaugh<br>*Akerman Senterfitt*<br>One Southeast Third Avenue, 28th Floor<br>Miami, FL 33131-1704<br>**Attorneys for John F. Andrews** |
| **VIA CM/ECF**<br>Marc J. Kessler and K. Essex<br>kessex@hahnlaw.com<br>Hahn Loeser & Parks, LLP<br>1050 Fifth Third Center<br>21 East State Street<br>Columbus, OH 43215-4224<br><br>**Attorneys for Amedisys, Inc. and its Affiliates** | **VIA ECF**<br>Hector D. Geribon |