IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|   |   |   |
|---|---|---|
|   | : |   |
| In re National Century | : | Case No. 2:03-md-1565 |
| Financial Enterprises, |   |   |
| Inc., Investment Litigation. | : | Judge Graham |
|   | : | Magistrate Judge Abel |
|   | : |   |

OPINION AND ORDER ON CERTAIN MOTIONS TO DISMISS
FILED BY INDENTURE TRUSTEES JPMORGAN AND BANK ONE

This matter is before the Court on motions filed by JPMorgan
Chase Bank and Bank One, N.A. to dismiss the claims made against
them in their capacities as Indenture Trustees of the NPF VI, Inc.
and NPF XII, Inc. securitization programs.  For the reasons set
forth below, the motions are granted in part and denied in part.

I.  **BACKGROUND**

   A.  **Overview of the Factual Allegations**

   Lance Poulsen, Donald Ayers, and Rebecca Parrett ("the
Founders") formed National Century Financial Enterprises, Inc. in
1990 and operated the company as a healthcare finance firm.
National Century purchased accounts receivable from healthcare
providers, giving hospitals and medical firms a steady cash flow in
exchange for a discount on the receivables.  To generate funds to
buy receivables, National Century issued investment-grade
promissory notes.  Those notes were sold to institutional investors
and were backed by the purchased receivables.

   National Century used special-purpose entities, notably NPF

VI, Inc. and NPF XII, Inc., to purchase receivables and issue notes. NPF VI and NPF XII were wholly owned by National Century and each had a Master Indenture that governed its operation. The Master Indentures for NPF VI and NPF XII were identical in all material respects. Chase Manhattan Bank (now JPMorgan Chase Bank) served as the Indenture Trustee of NPF VI, and Bank One, N.A. served as the Indenture Trustee of NPF XII. NPF VI and NPF XII issued billions of dollars worth of notes. The majority of the plaintiffs in this multidistrict litigation are institutional investors who purchased NPF VI and NPF XII notes.

Under a Sale and Subservicing Agreement, NPF VI and NPF XII were to purchase high-quality receivables, known as "eligible" receivables. An eligible receivable had to meet certain criteria designed to lower the risk of default. These criteria included that the receivables be less than 180 days old and that they be billed to highly-rated payors, such as commercial insurers, managed healthcare organizations, Medicare, and Medicaid. See Sale and Subservicing Agreement, §4.2. Further, the Master Indenture and Sale Agreement required trust accounts to be created for the purpose of offsetting the risk associated with buying receivables. See Master Indenture, Art. VI; Sale and Subservicing Agreement, Art. II. These accounts included the Equity Account, Seller Credit Reserve Account, Offset Reserve Account, Collection Account, and Purchase Account. The accounts had to carry a minimum balance, determined as a certain percentage of the value of purchased receivables. Monthly tests were conducted to check for compliance with the reserve levels.

Plaintiffs allege that despite National Century's apparent

2

success, the Founders were looting corporate funds and causing NPF VI and NPF XII to violate the terms of the Master Indentures. According to Plaintiffs, National Century used noteholder money to purchase low-quality or even non-existent receivables from healthcare companies that the Founders controlled or had some financial interest in. These healthcare companies became overfunded because National Century paid them for receivables that had little or no value. In turn, the trust accounts at NPF VI and NPF XII became severely depleted. The Founders allegedly used their control of these healthcare companies to gain access to the overfunded amounts. Plaintiffs allege that the Founders treated the companies as their personal "piggy banks."[1] In time, the alleged wrongdoing was uncovered and National Century went into bankruptcy, costing the investor plaintiffs an alleged aggregate loss of $2.6 billion.

According to the complaints, the wrongdoing extended to others who were involved in some way with National Century's operations. This includes Indenture Trustees JPMorgan and Bank One. The complaints allege that the Trustees knew about, facilitated, and participated in violations of the Master Indenture. Plaintiffs allege that the Trustees knew that the note programs lacked adequate capitalization, that ineligible receivables were being purchased, and that the trust accounts were depleted below the reserve requirements. The Trustees allegedly cooperated in transferring money back and forth between NPF VI and NPF XII so that when monthly accountings were done of the respective programs,

---

[1] The Court has issued an opinion largely denying the Founders' motions to dismiss. See Feb. 27, 2006 Opinion and Order.

they had the appearance of having sufficient reserves.  Plaintiffs further allege that despite having knowledge of the wrongdoing, the Trustees failed to provide notice of events of default, as required by the Indenture.

**B.   Claims Against the Trustees**

A number of plaintiffs in the MDL asserted claims against the Trustees.  Recently though, the Arizona Noteholders, the Unencumbered Assets Trust, and the New York City Pension Funds settled their claims with the Trustees.  Still pending are claims brought by Metropolitan Life Insurance Company ("MetLife"), Lloyds TSB Bank PLC, and ING Bank N.V.  The claims asserted against the Trustees by National Century co-founder Rebecca Parrett will be addressed in a separate opinion.

**1.   MetLife and Lloyds**

MetLife is a New York corporation with its principal place of business in New York.  Between June 2001 and July 2002, MetLife purchased a total of $102.6 million of NPF XII notes.  In August 2002, MetLife's affiliate, Metropolitan Insurance and Annuity Company, purchased $18.46 million of NPF XII notes.

Lloyds is a British public limited company with its principal place of business in London, England.  Lloyds purchased a total of $128 million of NPF XII notes in March 2001 and November 2002.

MetLife and Lloyds originally filed suit in New Jersey federal court.  They assert the following claims against Bank One, Trustee of NPF XII: breach of contract, breach of fiduciary duty, negligence, and violations of Ohio's and New Jersey's Blue Sky laws.

Metlife and Lloyds do not assert any claims against JPMorgan

4

in its capacity as Trustee of NPF XII.

### 2. ING Bank

ING Bank is a banking association organized under the laws of the Netherlands.  ING invested $500 million in a NPF VI note on June 20, 2001.

ING originally brought suit in New York federal court.  ING asserts the following claims against JPMorgan: breach of contract, breach of fiduciary duty, negligence, fraud, negligent misrepresentation, aiding and abetting fraud, and aiding and abetting breach of fiduciary duty.  ING asserts the following claims against Bank One: aiding and abetting fraud, and aiding and abetting breach of fiduciary duty.

## II.  MOTION TO DISMISS STANDARD OF REVIEW

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1982).  A complaint may be dismissed for failure to state a claim only where "it appears a beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  A motion to dismiss under Rule 12(b)(6) will be granted if the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint reveals that there is an insurmountable bar to relief.  Rauch v. Day & Night Mfg. Corp., 576

5

F.2d 697 (6th Cir. 1978).

Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, the court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. <u>Scheuer</u>, 416 U.S. at 236; <u>Roth Steel Prods.</u>, 705 F.2d at 155. A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory. <u>Weiner v. Klais & Co., Inc.</u>, 108 F.3d 86, 88 (6th Cir. 1997). The court is not required to accept as true unwarranted legal conclusions or factual inferences. <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10 (6th Cir. 1987). Nor may the court consider extrinsic evidence in determining whether a complaint states a claim. <u>Roth Steel Prods.</u>, 705 F.2d at 155; <u>Sims v. Mercy Hosp. of Monroe</u>, 451 F.2d 171, 173 (6th Cir. 1983).

## III. DISCUSSION

### A. Breach of Contract Claims

Plaintiffs MetLife and Lloyds allege that Bank One breached the Master Indenture by: transferring funds out of the NPF XII equity and reserve accounts to fund the purchase of receivables; transferring funds from NPF XII to NPF VI in order to create the appearance of complying with reserve requirements on the day of monthly testing; failing to perform due diligence with respect to receivables and providers; and failing to take the steps set out in the Master Indenture when events of default occurred.

Plaintiff ING alleges that JPMorgan breached the Master Indenture by: permitting NPF VI reserve accounts to fall below the

required levels; transferring funds from NPF VI to NPF XII in order to create the appearance of complying with reserve requirements; failing to take the steps set out in the Master Indenture when events of default occurred; and failing to preserve ING's investment in NPF VI.

The Trustees argue that their obligations under the Master Indentures were limited, in accordance with the general rule that the pre-default duties of an indenture trustee, unlike those of an ordinary trustee, are limited to the duties imposed by the indenture. See Master Consol. Corp. v. BancOhio Natl. Bank, 61 Ohio St.3d 570, 580, 575 N.E.2d 817, 824-25 (Ohio 1991) ("This court is unwilling to impose on the indenture trustee a duty of inquiry that operates to override the provisions of a trust indenture."); see also LNC Investments, Inc v. First Fidelity Bank, N.A., 935 F. Supp. 1333, 1347 (S.D.N.Y. 1996) ("The role of an indenture trustee differs from that of an ordinary trustee because . . . its obligations are defined primarily by the indenture rather than by the common law of trusts."). The Trustees contend that they cannot be held liable in contract for breaching duties that the Indenture assigned to NPF VI, NPF XII, and the servicer, National Premier Financial Services, Inc. (the "Servicer"). See Master Indenture, §8.01(i) (the Trustees "have no liability in connection with malfeasance or nonfeasance by the Servicer").

Though the Master Indenture for the NPF VI and NPF XII programs is not attached to the complaints, it is cited and quoted frequently in the complaints. Plaintiffs and the Trustees have relied heavily on the language of the Indenture in making their arguments. The Court will consider the Indenture in deciding the

7

motions to dismiss because it is "integral to the complaint." Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp., 413 F.3d 553, 560 (6th Cir. 2005).

The Master Indenture created a narrow role for the Trustees, who undertook to perform "only such duties as are specifically set forth in [the] Master Indenture." Master Indenture, §8.01(c)(i). Many of the breaches alleged by Plaintiffs relate to duties assigned to the Servicer or to NPF VI and NPF XII. The Servicer was the party responsible for performing "due diligence as to whether Receivables presented for Purchase . . . [were] Eligible Receivables." Id., §5.04(b)(iii). The Servicer monitored payments on purchased receivables and maintained "detailed accounting records of all deposits and withdrawals for each account." Id., §5.04(b)(vi),(ix). It also made "all determinations of actual and required amounts in each of the accounts established pursuant to th[e] Master Indenture." Id., §5.04(b)(i). Moreover, the Servicer was responsible for instructing the Trustees to make deposits and withdrawals from the Seller Credit Reserve Account, Offset Reserve Account, Collection Account, and the Purchase Account. Id., §§5.04(b)(iv), 6.01(a), 6.02(c), 6.05(a). With respect to the Equity Account, the Servicer instructed the Trustees what deposits to make, §6.03(c), but the Indenture itself outlined what disbursements the Trustees could make, §6.06(a).

NPF VI and NPF XII were each responsible for "maintain[ing] adequate capitalization" to operate the note programs. Master Indenture, §4.04(c). NPF VI and NPF XII had to keep their own "separate corporate records and books of account." Id., §4.11(d). Each was to keep separate bank accounts and maintain "its assets

8

separately" from the assets of National Century or any other affiliate. Id., §§4.04(e), 4.11(e). The Indenture prohibited NPF VI and NPF XII from commingling assets with National Century or any affiliate. Id., §4.04(e), 4.11(e). Further, the Indenture prohibited NPF VI and NPF XII from engaging "in any intercorporate transactions" other than those specified in the Indenture. Id., §4.11(c).

The Indenture required the trust accounts to be established with the Trustees. Master Indenture, §§6.01(a), 6.02(a), 6.03(a). The Trustees administered the Seller Credit Reserve Account, Offset Reserve Account, Collection Account, and Purchase Account "pursuant to the written directions of the Servicer in regard to deposits and disbursements." Id., §6.01(a); see also §§6.02(c), 6.05(a). The Trustees made deposits into the Equity Account according to the Servicer's instructions, §6.03(c), but made disbursements as outlined in Section 6.06(a) of the Indenture.

The Indenture assigned to the Trustees the duty of providing notices of an occurrence or possible occurrence of an event of default. Master Indenture, §8.01(a). An event of default included a material breach of the Indenture by NPF VI, NPF XII, or the Servicer. Id., §§5.09(f), 7.01(c),(g). When an event of default occurred, the Trustees had "discretion" to "protect and enforce" the rights of noteholders. Id., §7.03. When an event of servicer default occurred, the Trust could act as an interim servicer or appoint a new servicer. Id., §5.10.

The Trustees also performed certain ministerial tasks. They provided monthly statements of account activities to the Servicer and performed verification procedures, such as confirming

calculations made in the Servicer's investor reports and collateral coverage reports.  Id., §§6.01(a), 8.01(j) (incorporating Exhibit 7 to Master Indenture).  These procedures would help the Trustees identify a potential event of default.  Id., Ex. 7 to Master Indenture, §IV.B.

The Court agrees with the Trustees that they cannot be held liable for breaching contractual duties that the Indenture assigned to NPF VI, NPF XII, or the Servicer.  The Trustees did not have a duty to ensure that purchased receivables were eligible, to audit the health care providers who sold the receivables, or to keep reserve levels above the required levels.  Plaintiffs are unable to point to any provision in the Indenture placing those duties on the Trustees.

MetLife and Lloyds argue that Bank One failed to perform "due diligence related to the receivables and providers," and they cite Exhibit 7 to the Indenture in support.  Under Exhibit 7, Bank One had a duty to recalculate certain amounts listed in the Servicer's reports.  MetLife's and Lloyds's complaints do not allege any violations of Bank One's verification duties under Exhibit 7. Instead, the complaints allege that Bank One failed to ensure that purchased receivables were eligible and failed to audit the creditworthiness of providers.  The Indenture did not impose such duties on the Trustees.  See Master Indenture, §8.01(i) ("The Trustee makes no representations or warranties with respect to the Purchased Receivables.").

Plaintiffs also allege that the Trustees breached the Indenture by improperly transferring funds.  Under the Indenture, the Trustees generally made transfers at the instruction of the

Servicer, and it was the Company's duty to not commingle funds. With respect to the Seller Credit Reserve, Offset Reserve, Collection, and Purchase Accounts, the Trustees' contractual duty was to execute the transfers that the Servicer instructed them to make.  See Master Indenture, §§6.01-6.05.  In order to have breached Sections 6.01 to 6.05 of the Indenture, the Trustees would have had to refuse to execute the instructions of the Servicer. The complaints do not allege this.  Plaintiffs' claims for breach of Sections 6.01 to 6.05 must be dismissed.

Nonetheless, the complaints do state a claim against the Trustees for breaching Section 6.06 by making improper transfers out of the Equity Account.  While Sections 6.01 to 6.05 expressly stated that the Trustees had to execute transactions at the direction of the Servicer, Section 6.06(a), in contrast, stated that "the Trustee shall disburse . . . amounts held in the Equity Account in the following priority . . . ."  On its face, the Indenture made the Trustees, and not the Servicer, responsible for making disbursements out of the Equity Account.  The complaints sufficiently allege that the Trustees improperly transferred funds out of the Equity Account to other National Century note programs in a manner not authorized under Section 6.06(a).  Furthermore, MetLife and Lloyds sufficiently allege that Bank One disbursed funds from the Equity Account to other NPF XII reserve accounts, again in violation of Section 6.06(a).

Finally, Plaintiffs allege that the Trustees breached their contractual duties with respect to events of default.  When the Trustees had actual knowledge of a possible event of default, they were to deliver notices of default to the Company and Servicer.

See Master Indenture, §§7.02, 8.01(a), 8.02.  Events of default included a material breach of the Indenture.  Id., §§5.09(f), 7.01(c),(g).  The complaints contain numerous allegations that NPF VI, NPF XII, and the Servicer materially breached the Indenture. The complaints allege that NPF VI, NPF XII, and the Servicer purchased ineligible receivables, failed to keep trust accounts at the required reserve levels, and improperly transferred funds. Further, the complaints allege that the Trustees had actual knowledge of the breaches but failed to perform their contractual duties regarding events of default.

The Trustees challenge the assertion that events of default occurred.  They also argue that they had no actual knowledge of the alleged events of default and, even if they did, they were within their discretion not to declare an event of default because the alleged breaches were not material.  The Court finds that resolving these issues is not appropriate on a motion to dismiss and that the complaints sufficiently state a claim for breach of the Trustees' duties regarding events of default.

In sum, Plaintiffs' breach of contract claims are dismissed except for their claims that the Trustees improperly disbursed funds out of the Equity Account and breached their duties with respect to events of default.

**B.   Tort Claims**

**1.   Breach of Fiduciary Duty and Negligence**

Plaintiffs assert claims for breach of fiduciary duty and negligence.  They allege that the Indenture appointed the Trustees to be fiduciaries to the Plaintiffs and other noteholders. Plaintiffs also allege that the Trustees owed Plaintiffs a duty to

use ordinary care.  Plaintiffs contend that the Trustees breached their fiduciary duties and duties of care because they, to the detriment of noteholders, knowingly facilitated and participated in the alleged wrongdoing of NPF VI, NPF XII, and the Servicer.

The Trustees argue that the breach of fiduciary duty and negligence claims must be dismissed because those claims attempt to impose obligations not expressly set forth in the Indenture.  The Trustees are correct that the pre-default duties of an indenture trustee are typically limited to those imposed by the indenture.  See Elliott Associates v. J. Henry Schroder Bank & Trust Co., 838 F.2d 66, 71 (2d Cir. 1988) (stating that "the duties of an indenture trustee are strictly defined and limited to the terms of the indenture").  But the Indenture here expressly stated that JPMorgan and Bank One were each "appointed as a fiduciary for the Holders of the Notes . . . and agree[d] to execute the trusts hereby created as a fiduciary."  Master Indenture, §8.11.  Further, the Indenture stated that each Trustee would not be relieved "from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct."  Id., §8.01(f).  Thus, on its face the Indenture imposes a fiduciary duty and duty of care on the Trustees.  This distinguishes the case at hand from those cited by the Trustees.  The complaints sufficiently allege that the Trustees breached their fiduciary duties and duties of care by facilitating and participating in National Century's alleged wrongdoing.

The Trustees also argue that the breach of fiduciary duty and negligence claims must be dismissed because they are duplicative of Plaintiffs' breach of contract claims.  See Lightbody v. Rust, No.

80927, 2003 WL 21710601, at *6 (Ohio Ct. App. July 24, 2003) ("[A] suit arising from a single instance cannot be classified as both a tort and breach of contract."). Given that the Court is dismissing many of Plaintiffs' breach of contract claims, this argument no longer holds.

### 2. ING's Fraud and Misrepresentation Claims

ING alleges in its complaint that JPMorgan engaged in fraud and negligent misrepresentation because it failed to advise ING of material facts about NPF VI's non-compliance with the Indenture. ING alleges that JPMorgan's failure to speak proximately caused ING to invest in NPF VI. ING further alleges that JPMorgan's failure to speak after the note purchase caused ING to make advancements on the note and maintain its investment in NPF VI.

JPMorgan argues that under the terms of the Indenture, it owed no duty to speak or warn ING about the operation of NPF VI. However, the complaint alleges that Section 8.11 created a fiduciary relationship between JPMorgan and ING. A duty to disclose can arise from a fiduciary relationship. In Ohio, "'[O]ne who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so. And the duty to disclose arises when one party has information that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." State v. Warner, 55 Ohio St.3d 31, 54, 564 N.E.2d 18, 40 (Ohio 1990) (quoting Chiarella v. United States, 445 U.S. 222, 228, 100 S.Ct. 1108, 1114 (1980)). JPMorgan disputes that Section 8.11 created a fiduciary relationship and points to other provisions to support its interpretation. The Court, though, will

not resolve a conflict in contract interpretation on a motion to dismiss. See DeNune v. Consol. Capital of N. Am., Inc., No. 3:03-cv-7241, 2004 WL 1474653, at *2 (N.D. Ohio May 21, 2004).

JPMorgan also argues that the complaint improperly relies on allegations about events that took place before ING invested in NPF VI in June 2001. For instance, the complaint alleges that JPMorgan received a letter from Lance Poulsen in 2000 stating that National Century was violating the Indenture. See ING Am. Compl., ¶¶69, 72. JPMorgan contends that such allegations cannot be used to support ING's claims. This argument is unconvincing. Knowledge of the falsity of one's conduct is an essential element of a fraud claim. See Russ v. TRW, Inc., 59 Ohio St.3d 42, 49, 570 N.E.2d 1076, 1083-84 (Ohio 1991). ING's allegations about pre-investment events help support its claim that JPMorgan had knowledge of the alleged wrongdoing at National Century even before ING invested in NPF VI.

### 3.   ING's Aiding and Abetting Claims

ING asserts a claim for aiding and abetting fraud against both JPMorgan and Bank One. ING alleges that the Trustees--by facilitating improper transfers between NPF VI and NPF XII and by ignoring violations of the Master Indenture--provided substantial assistance to National Century's scheme to defraud investors.

ING also asserts a claim for aiding and abetting breach of fiduciary duty. ING alleges that the Trustees--by facilitating improper transfers and ignoring violations of the Indenture--assisted the directors of National Century in breaching their fiduciary duties to ING.

In response, the Trustees argue that Ohio does not recognize

15

a claim for aiding an abetting tortious conduct.  They further contend that even if such a claim could be asserted under Ohio law or the law of another state,[2] the complaint does not allege the essential elements of a claim.

The Trustees' first argument raises an issue where uncertainty exists in the case law.  An Ohio court of appeals has held that "Ohio does not recognize a claim for aiding and abetting common-law fraud." Fed. Mgmt. Co. v. Coopers & Lybrand, 137 Ohio App.3d 366, 381, 738 N.E.2d 842, 853 (Ohio Ct. App. 2000); see also Collins v. National City Bank, No. 19883, 2003 WL 22971874, at *5 (Ohio Ct. App. Dec. 19, 2003) ("One who engages in any way in fraudulent behavior is liable for fraud itself, not as an aider and abetter to fraud.").  Even so, the Ohio Supreme Court has indicated in dicta that aiding and abetting fraud could be actionable under Ohio law. See Great Cent. Ins. Co. v. Tobias, 37 Ohio St.3d 127, 130-31, 524 N.E.2d 168, 172 (Ohio 1988).  This dicta led the Sixth Circuit to conclude that "the Supreme Court of Ohio would recognize aiding and abetting liability if squarely faced with the issue." Aetna Cas. and Sur. Co. v. Leahey Const. Co., 219 F.3d 519, 533 (6th Cir. 2000).  Most recently, though, the Sixth Circuit observed that "[i]t is unclear whether Ohio recognizes a common law cause of action for aiding and abetting tortious conduct." Pavlovich v. National City Bank, 435 F.3d 560, 570 (6th Cir. 2006).

Given the uncertainty in the case law, the Court declines to dismiss the aiding and abetting claims on a motion to dismiss.  It

---

[2]  The Court has refrained from making choice-of-law determinations until the facts are further developed.  The parties cite both Ohio law and the law of New York, where ING originally filed suit.

16

cannot be said conclusively that Ohio law does not recognize such a claim. If Ohio would recognize a claim for aiding and abetting tortious conduct, two elements are required: "(1) knowledge that the primary party's conduct is a breach of duty and (2) substantial assistance or encouragement to the primary party in carrying out the tortious act." <u>Andonian v. A.C. & S., Inc.</u>, 97 Ohio App.3d 572, 574-75, 647 N.E.2d 190, 191-92 (Ohio Ct. App. 1994); <u>see also</u> <u>UniCredito Italiano SPA v. JPMorgan Chase Bank</u>, 288 F.Supp.2d 485, 502 (S.D.N.Y. 2003) (requiring knowledge and substantial assistance).

The Trustees argue that ING has not alleged actual knowledge of the fraud. This is not true, for the complaint alleges the Trustees knew that National Century routinely purchased ineligible receivables, reserves were not maintained at the required levels, and improper transfers were made. <u>See</u> ING Am. Compl., ¶¶69, 71, 72, 85, 86. The Trustees allegedly came to know of this fraudulent activity because of their roles in executing transfers and performing certain verification procedures.

Turning to the substantial assistance element, the complaint alleges that JPMorgan substantially assisted in the tortious activity by failing to declare events of default, facilitating improper transfers, and signing off on a letter falsely certifying that National Century had complied with NPF VI Indenture requirements. JPMorgan contends that those allegations are insufficient because "mere inaction" is not sufficient to support aider and abettor liability. <u>National Westminster Bank USA v.</u> <u>Weksel</u>, 124 A.D.2d 144, 148, 511 N.Y.S.2d 626, 629 (N.Y. App. Div. 1987). Nonetheless, the same New York cases cited by JPMorgan go

17

on to clarify that inaction can constitute substantial assistance when the defendant owed to the defrauded investor an independent duty to act.  See Kolbeck v. LIT America, Inc., 939 F.Supp. 240, 247 (S.D.N.Y. 1996).  Here, the complaint plainly alleges both that JPMorgan owed a fiduciary duty to ING under Section 8.11 of the Indenture.

In contrast, ING cannot argue that Bank One owed it a fiduciary duty because ING did not invest money in NPF XII, where Bank One served as Trustee.  ING responds by arguing that it has alleged affirmative conduct, namely that Bank One wired money from NPF XII to NPF VI so National Century could hide shortfalls in NPF VI reserve accounts from NPF VI noteholders.  Though Bank One disputes that it did anything more than execute the instructions of the Servicer, the complaint suggests that at least some of the wire transfers were made out of the Equity Account, for which Bank One did not take instructions from the Servicer.  See ING Am. Compl., ¶86.  This is sufficient to state a claim for aiding and abetting liability against Bank One.

### 4.  Punitive Damages

ING seeks punitive damages in connection with its tort claims against JPMorgan.  JPMorgan argues that punitive damages are available in tort cases only when a defendant's wrongdoing was outrageous or deliberate.  JPMorgan contends that the complaint fails to allege such behavior.

"Under Ohio law, an award of punitive damages in a tort case may be made only upon a finding of actual malice, fraud, oppression, or insult on the part of the defendant."  Estate of

<u>Schmidt v. Derenia</u>, 158 Ohio App.3d 738, 740, 822 N.E.2d 401, 404 (Ohio Ct. App. 2004) (citing Ohio Rev. Code §2315.21; <u>Calmes v. Goodyear Tire & Rubber Co.</u>, 61 Ohio St.3d 470, 473, 575 N.E.2d 416 (Ohio 1991)). ING's complaint alleges that JPMorgan knew of National Century's scheme to defraud NPF VI investors and deliberately participated in that alleged scheme. <u>See</u> ING Am. Compl., ¶¶121-138. In light of those allegations, it cannot be said that there are no set of facts that would entitle ING to punitive damages.

**C. Blue Sky Law Claims**

MetLife and Lloyds assert claims under Ohio's and New Jersey's Blue Sky laws. These laws prohibit the use of misrepresentations or material omissions in connection with the sale of securities. The claims are asserted against all named defendants, including Trustee Bank One, N.A. and one of the underwriters of the notes, Banc One Capital Markets, Inc. ("BOCM"). Trustee Bank One argues that the claims against it must be dismissed because the complaints do not allege that it had any involvement with the marketing or offering of notes to MetLife or Lloyds. Bank One believes that the Blue Sky law claims appear to be directed at BOCM.

Plaintiffs respond that liability extends beyond the sellers of securities. Under Ohio's Blue Sky law, anyone who "has participated in or aided the seller in any way in making [a] sale or contract for sale" is jointly and severally liable to the purchaser. Ohio Rev. Code §1707.43(A). Similarly, under New Jersey law, a broker, advisor, or agent who "materially aids in the sale" can be liable. N.J. Stat. §49:3-71(d). Plaintiffs argue that the statutes impose sweeping liability on anyone who aided the

seller "in any way."  According to Plaintiffs, Bank One is liable because it aided National Century in the scheme to defraud NPF XII noteholders.  Plaintiffs further contend that Bank One acted as an agent of National Century in carrying out the scheme to defraud.

The Court finds that even though the Ohio and New Jersey statutes extend liability to certain non-sellers, the complaints fail to allege how Bank One, as Trustee, aided in the sale of the notes.  The statutes do not impose liability on anyone who aided the seller "in any way," as Plaintiffs argue.  Rather, they impose liability on anyone who aided the seller in any way *in making an unlawful sale or contract for sale*.  The complaints may allege that Bank One aided in the scheme to defraud, but they do not allege that Bank One aided National Century in selling notes.  Moreover, the complaints do not allege that Bank One acted as National Century's agent, advisor, or broker in selling NPF XII notes.

In trying to save their Blue Sky law claims, Plaintiffs argue that Bank One participated in the sale of notes because misrepresentations made about Bank One's role in the NPF XII program contributed to Plaintiffs' decision to invest.  See Am Compl., ¶7.  However, there are no allegations that Bank One itself made misrepresentations to the Plaintiffs.  The complaints allege that it was the underwriters, NPF XII, and the directors who made the misrepresentations.  Simply put, Plaintiffs have failed to allege that Bank One participated in the sale of NPF XII notes, and their the Blue Sky law claims must be dismissed.

IV.   **CONCLUSION**

For the reasons set forth above, the motions of JPMorgan and Bank One to dismiss the claims against them in their capacity as Indenture Trustees are granted in part and denied in part.  The breach of contract claims are dismissed, except for Plaintiffs' claims that the Trustees improperly disbursed funds out of the Equity Account and breached their duties with respect to events of default.  The motions to dismiss are denied as to Plaintiffs' tort claims.  Metlife's and Lloyds's Blue Sky law claims against Bank One are dismissed.

The Clerk of Court shall terminate JPMorgan's December 2, 2005 motion to dismiss (doc. 673) as granted in part and denied in part and Bank One's December 2, 2005 motion to dismiss (doc. 674) as denied.  This order grants in part and denies in part portions of Docs. 155, 165, and 747, but portions of each of those motions remain pending.

The Clerk of Court shall also terminate the following motions in Case No. 03-md-1565 as moot: Docs. 226, 243, 248, 250, 252, 742. The parties involved in those motions to dismiss have settled their claims.  The Clerk of Court shall terminate the following motions in Case No. 04-cv-1090 as moot for the same reason: Docs. 38, 39, 42, 43.


s/ James L. Graham
JAMES L. GRAHAM
United States District Judge


DATE: October 2, 2006