IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re National Century Financial Enterprises, Inc., Investment Litigation. | : | Case No. 2:03-md-1565 |
| | : | Judge Graham |
| | : | Magistrate Judge Abel |

OPINION AND ORDER ON THE REMAINING
MOTIONS TO DISMISS THE PHAROS COMPLAINT

This matter is before the Court on the motions of Purcell & Scott, Co., L.P.A., JPMorgan Chase & Co., and the Beacon Group, LLC and the Beacon Group III-Focus Value Fund, L.P. (the "Beacon Entities") to dismiss the claims made against them by Pharos Capital Partners, L.P. The complaint alleges that Pharos purchased $12 million of preferred stock in National Century Financial Enterprises, Inc. about four months before National Century collapsed and filed for bankruptcy. Pharos alleges that it was fraudulently induced into making the investment and that one of the documents on which it relied was an opinion letter issued by National Century's outside legal counsel, Purcell & Scott. Pharos alleges that JPMorgan and the Beacon Entities are secondarily liable for the alleged fraudulent conduct of their employees – Harold W. Pote, Eric R. Wilkinson, and Thomas G. Mendell -- who each served as outside directors on National Century's board of directors.

For the reasons stated below, Purcell & Scott's motion to dismiss is granted, and the motions to dismiss of JPMorgan and the Beacon Entities are granted.

**I.     BACKGROUND**

   **A.     General Allegations**

Pharos is a limited partnership organized under the laws of Delaware. Pharos describes itself as being in the business of making equity investments on behalf of its limited partner investors. According to the complaint, defendant Credit Suisse First Boston Corporation

approached Pharos in early 2002 about potentially investing in National Century. Pharos was provided with offering materials, including a private placement memorandum, financial statements, and audit reports. Pharos was also provided with an opinion letter authored by Purcell & Scott. Pharos, Credit Suisse, and National Century's management participated in meetings and phone calls regarding the potential investment. On July 8, 2002, Pharos and National Century entered into a Stock Purchase Agreement whereby Pharos purchased $12 million of preferred stock.

The complaint alleges that the offering materials fraudulently induced Pharos to invest in the preferred stock. Pharos contends that the offering materials contained misrepresentations and omissions of material fact concerning National Century's operations and business model, especially as to National Century's note programs NPF VI and NPF XII. Pharos alleges that National Century's sale of stock violated Ohio's Blue Sky law because the offering materials misrepresented the quality of healthcare receivables that National Century purchased, did not disclose that National Century was purchasing receivables from related parties, and did not disclose that National Century was depleting and manipulating the reserve accounts at NPF VI and NPF XII.

**B.  Purcell & Scott**

Pharos alleges that Purcell & Scott served as National Century's outside legal counsel and advised the company on securities offerings, including the preferred stock offering to Pharos. Purcell & Scott issued a written legal opinion letter to Pharos on July 9, 2002. The opinion letter was addressed to Pharos and represented that National Century was a corporation existing under the laws of Ohio and had corporate power to enter into the Stock Agreement with Pharos. It also stated that National Century had properly voted, by the requisite number of its board of directors and shareholders, to enter into the Agreement and issue preferred stock and that National Century was not violating its articles of incorporation in so doing.

The opinion letter also represented that the execution of the Stock Purchase Agreement and

the issuance of preferred stock would not violate federal and state law (the "no violation of law" provision).  The complaint alleges that this representation was false because National Century violated Ohio's Blue Sky law when it induced Pharos to purchase stock by means of false and misleading statements in the offering materials.  The complaint further alleges that Purcell & Scott knew the "no violation of the law" provision was false.  According to the complaint, Purcell & Scott served National Century as counsel on most of National Century's securitization transactions and dealings with customers.  The complaint further alleges that Purcell & Scott had access to National Century's books, records, and personnel, and advised National Century on how to structure National Century's transaction with Pharos.

Pharos has asserted claims against Purcell & Scott for common law fraud, negligent misrepresentation, aiding and abetting fraud, conspiracy, and a violation of Ohio's Blue Sky law.

### C. JPMorgan and the Beacon Entities

The complaint alleges that the Beacon Entities acquired a 20% interest in National Century in 1998.  Under the terms of the equity acquisition, the Beacon Entities obtained the right to place two outside directors on National Century's six-person board of directors.  The outside directors also filled two of three seats on the boards of NPF VI and NPF XII.  Defendants Harold W. Pote and Eric R. Wilkinson, who were employees of the Beacon Entities, were named as the initial outside directors.  Pote also served as chairman of National Century's audit committee.

According to the complaint, JPMorgan acquired the Beacon Entities in 2000, and Pote and Wilkinson became employees of JPMorgan.  At some unspecified time, JPMorgan replaced Wilkinson with Thomas G. Mendell, also a JPMorgan employee, as an outside director.  The complaint alleges that Pote, Wilkinson, and Mendell (the "Outside Directors") were acting as agents of JPMorgan and the Beacon Entities in fulfilling their duties as National Century's outside directors.

The claims against JPMorgan and the Beacon Entities are for common law fraud, aiding and abetting fraud, conspiracy, and a violation of Ohio's Blue Sky law.  These claims rely on a

theory of vicarious liability and hinge on the underlying liability of the Outside Directors. See Byrd v. Faber, 57 Ohio St.3d 56, 58, 565 N.E.2d 584, 587 (Ohio 1991) . In a May 7, 2007 Order, the Court ruled on the Outside Directors' motion to dismiss the claims made against them by Pharos. The motion to dismiss was denied with respect to the Ohio Blue Sky law claim against the Outside Directors, but it was granted as to the claims for fraud, aiding and abetting fraud, and conspiracy. The Court dismissed those claims for the following reasons: the allegations of fraud in the complaint failed to satisfy the particularity requirement of Fed. R. Civ. P. 9(b); the claim for aiding and abetting failed because the complaint did not allege that the Outside Directors knew they were providing any assistance to National Century's alleged fraud; and the conspiracy claim failed because the complaint did not allege that the Outside Directors had an agreement or understanding to commit fraud with any other defendant.

## II. MOTION TO DISMISS STANDARD OF REVIEW

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1982). A complaint may be dismissed for failure to state a claim only where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A motion to dismiss under Rule 12(b)(6) will be granted if the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint reveals that there is an insurmountable bar to relief. Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978).

Because a motion under Rule 12(b)(6) is directed solely at the complaint itself, the court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. Scheuer, 416 U.S. at 236; Roth Steel Prods., 705 F.2d

at 155; see also Bell Atlantic Corp. v. Twombly, 550 U.S. _, 127 S.Ct. 1955, 1965 (2007) (Rule 8 "does not impose a probability requirement at the pleading stage"). A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory. Weiner v. Klais & Co., Inc., 108 F.3d 86, 88 (6th Cir. 1997). The court is not required to accept as true unwarranted legal conclusions or factual inferences. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). Though the complaint need not contain detailed factual allegations, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Bell Atlantic, 127 S.Ct. at 1964-65; Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526 (1983). Plaintiff must provide more than labels and conclusions, or a formulaic recitation of the elements of a cause of action, Bell Atlantic, 127 S.Ct. at 1965, and the court is not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); accord Morgan, 829 F.2d at 12.

### III. DISCUSSION

#### A. Choice of Law

Pharos argues that either Tennessee or Texas law should govern its common law tort claims because Pharos had offices in those two states. Pharos nonetheless relies primarily on Ohio law in defending its claims against the motions to dismiss, and it does not argue that Ohio law differs from Tennessee or Texas law in any pertinent way.

In a tort case, "a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit." Morgan v. Biro Mfg. Co., 15 Ohio St.3d 339, 342, 474 N.E.2d 286, 289 (Ohio 1984). General factors to consider include: (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties;

(4) the place where the relationship between the parties, if any, is located; and (5) other factors the court may deem relevant to the litigation. Id.

Fraud is the primary injury alleged against Purcell & Scott. Where fraud is alleged, the court may also consider the place where defendant made the representation and where plaintiff received and relied on the representation. See Carder Buick-Olds Co., Inc. v. Reynolds & Reynolds, Inc., 148 Ohio App.3d 635, 651, 775 N.E.2d 531, 543-44 (Ohio Ct. App. 2002) (citing Restatement (Second) of Conflict of Laws, § 148(2) (1971)). The Court finds that Ohio has the most significant relationship to the claims against Purcell & Scott. The opinion letter, which contains the alleged misrepresentation, was drafted in Ohio by Purcell & Scott, an Ohio law firm, during its course of rendering legal services for National Century, an Ohio corporation. The only factor counting against Ohio is that Pharos received the opinion letter in Tennessee.

The claims against JPMorgan and the Beacon Entities are based on agency law. In determining which state's law to apply, a court should look to the nature of the underlying actions of the agent. See Laux v. Juillerat, 680 F.Supp. 1131, 1136-37 (S.D. Ohio 1987) (citing Restatement (Second) of Conflict of Laws, § 292(2) (1971)). Here, the alleged underlying wrongdoing related to what the Outside Directors, who resided in New York and New Jersey, did in performing their duties for National Century in Ohio, and in particular their alleged approval of certain National Century audits. There are no factors to support applying Tennessee or Texas law other than Pharos having offices there. The Court finds that Ohio has the most significant relationship to the claims against JPMorgan and the Beacon Entities.

  **B.**  **Purcell & Scott**

    **1.**  **Fraud**

Pharos asserts a claim for fraud based on an alleged misrepresentation in the Purcell & Scott legal opinion letter provided to Pharos. The elements of a fraud claim are: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter

6

disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. Russ v. TRW, Inc., 59 Ohio St.3d 42, 49, 570 N.E.2d 1076, 1083-84 (Ohio 1991).

Under Rule 9(b), Fed. R. Civ. P., averments of fraud and the circumstances constituting the fraud must be stated with "particularity." To comply with Rule 9(b), "a plaintiff, at a minimum, must 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" Walburn v. Lockheed Martin Corp., 431 F.3d 966, 972 (6th Cir. 2005) (quoting Coffey v. Foamex L.P., 2 F.3d 157, 161-62 (6th Cir. 1993)). Scienter may be averred generally and inferred from circumstantial evidence. See Fed. R. Civ. P. 9(b); S.E.C. v. Blackwell, 291 F.Supp.2d 673, 696 (S.D. Ohio 2003).

The opinion letter that is the basis of Pharos's claims against Purcell & Scott is attached to the motion to dismiss. The Court may consider the opinion letter without converting the motion to dismiss into a motion for summary judgment because the complaint specifically refers to the letter and it is central to Pharos's claims. See Weiner v. Klais and Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997) (court may consider on a motion to dismiss documents that are "referred to in the plaintiff's complaint and are central to her claim"). Pharos does not oppose consideration of the letter and indeed quotes the letter in support of its response brief.

The complaint alleges that the legal opinion letter falsely warranted that National Century's execution of the Stock Purchase Agreement and its issuance of stock would not violate any applicable federal or state law. The pertinent provision of the opinion letter states:

> The execution and delivery by the Company of the Transaction Agreements and the performance by the Company of its obligation thereunder, the issuance of the Series B Convertible Preferred Stock under the Stock Purchase Agreement, and the issuance of the Common Stock upon conversion of the Series B Convertible Preferred Stock, do not and shall not . . . (ii) violate any statute, law, ordinance, rule or regulation of the United States of America or the State of Ohio binding on the Company . . . .

7

Purcell & Scott Legal Opinion Letter, p.4, ¶4.

Purcell & Scott's argument for dismissing the fraud claims starts with the ABA Legal Opinion Accord, which one court has described as follows:

> The Accord arose as a response to the custom and practice of lawyers representing the parties to give third party opinion letters in substantial business transactions such as mergers and acquisitions. Prior to adoption of the ABA Accord, third party opinion letters were negotiated for each transaction; there were no standards governing their content or interpretation. The ABA Accord was adopted by the Business Law Section of the ABA in 1991. . . . It contains extensive commentary and other explanation on the meaning, scope and interpretation of the opinion letter.
>
> . . .
>
> Incorporation of the ABA Accord in opinion letters reduces wasteful and duplicitous opinion drafting and negotiations in individual transactions. Enforcement of the Accord by the courts gives the parties and their attorneys a clear understanding of their rights and obligations.

In re Infocure Secs. Litig., 210 F.Supp.2d 1331, 1356, 1358 (N.D. Ga. 2002).

The opinion letter authored by Purcell & Scott expressly incorporates the ABA Accord. It states, "This opinion is governed by and shall be interpreted in accordance with the Legal Opinion Accord (1991) and [its accompanying guidelines] and by this reference the Accord is incorporated in its entirety herein." See Purcell & Scott Legal Opinion Letter, p.3, ¶3. This language tracks the provision in the ABA Accord on how the Accord may be adopted and made to govern a legal opinion letter. See ABA Accord, §22. Acceptance of an opinion letter containing such language constitutes the recipient's "willingness to have the Opinion governed by the Accord." ABA Accord, §22.1.

The Accord explains the meaning of a "no violation of law" provision like the one in the Purcell & Scott opinion letter:

> When a No Violation of Law Opinion is given, it means that execution and delivery by the Client of, and performance by the Client of its agreements in, the specified Transaction Document neither is prohibited by, nor subjects the Client to a fine, penalty or other similar sanction under, any statute or regulation of the Opining Jurisdiction that a lawyer in the Opining Jurisdiction exercising customary

8

> professional diligence would reasonably recognize as being directly applicable to the Client, the Transaction, or both.

ABA Accord, §16. The Accord sets forth certain exclusions of what a "no violation of law" provision does not cover:

> It is a basic principle of this Accord that the Opinion will deal in a direct way with any specific legal issue to be addressed. In this connection, an Opinion does not address any of the following legal issues unless the Opinion Giver has explicitly addressed the specific legal issue in the Opinion Letter:
>
> (a) Federal securities laws and regulations administered by the Securities and Exchange Commission (other than the Public Utility Holding Company Act of 1935), state "Blue Sky" laws and regulations, and laws and regulations relating to commodity (and other) futures and indices and other similar instruments . . .

ABA Accord, §19. The Purcell & Scott legal opinion letter does not specifically address state Blue Sky law. Even so, the complaint alleges that the opinion letter was false because National Century violated Ohio's Blue Sky law in selling stock to Pharos. Purcell & Scott responds that the "no violation of law" provision" did not, under the ABA Accord, extend to a violation of Ohio's Blue Sky law.

A similar issue arose in Infocure Securities Litigation, where a legal opinion letter was issued in connection with a corporate merger. The opinion letter expressly incorporated the ABA Accord and stated that the execution, delivery, and performance of the acquisition documents would not result in a "[v]iolation of any existing federal or state constitution, statute, regulation, rule. Order, or law to which [the parties] or their respective assets are subject." Infocure, 210 F.Supp.2d at 1356. The plaintiffs alleged that the merger transactions violated federal securities laws and alleged that the opinion letter was therefore false. The court held that the opinion letter could not be read as warranting that the transactions did not violate federal securities laws:

> As illustrated by the above quoted passages, an Opinion Letter subject to the ABA Accord contains many limitations on its scope. Specifically, the "no violation of law" provision in the Opinion Letter does not relate to [the company's] overall compliance with securities laws. Instead, the Opinion Letter simply confines itself to the execution of the transaction documents and the obligations thereunder. [The

9

> law firm] opined that these actions would not give rise to the violation of any federal or state statutes. This assurance is limited compared with the Plaintiffs' proposed interpretation which has [the law firm] opining as to [the company's] compliance with all of the disclosure mandates of federal securities laws. If the Court were to interpret [the opinion letter's] "no violation of law" provision to encompass overall compliance with securities laws, every law firm which submitted an opinion letter would open themselves to possible securities fraud claims. . . . If one party to a transaction wants more protection, it remains free to try to obtain that through negotiation.

Infocure, 210 F.Supp.2d at 1358.

Here, Pharos alleges that National Century violated Ohio's Blue Sky law. Section 19 of the ABA Accord specifically excludes this type of violation from coverage under a "no violation of law" provision like the one in the Purcell & Scott opinion letter. Thus, in applying the ABA Accord, the Court finds that the complaint does not state a claim for fraud against Purcell & Scott.

Even if ABA Accord were not applied here, the Court finds that the "no violation of law" provision in the opinion letter did not encompass the Ohio Blue Sky law violation as alleged by Pharos. The opinion letter was narrow in scope. It stated that National Century was a corporation existing under the laws of Ohio and had corporate power to enter into the Stock Agreement with Pharos. It also stated that National Century's board and shareholders had properly voted to enter into the Agreement and issue preferred stock. The opinion letter further warranted that the execution of the Stock Purchase Agreement and the issuance of preferred stock would not violate federal and state law. The opinion letter did not guarantee National Century's overall compliance with the law.

National Century's alleged violation of Ohio's Blue Sky law was not with the execution of the Stock Purchase Agreement or with the issuance of stock – Pharos does not allege that National Century lacked the corporate authority to enter into the Agreement or that Ohio law somehow prohibited National Century from issuing stock. Rather, the alleged violation was with the offering materials that allegedly induced Pharos to purchase the stock. The complaint alleges that National Century violated the Blue Sky law because the offering materials were false and

10

misleading. However, the opinion letter does not warrant that the private placement memoranda, financial statements, and audit reports that National Century and Credit Suisse gave to Pharos would not contain material misrepresentations or omissions of fact. Simply put, Purcell & Scott's opinion letter did not undertake to speak on the veracity of the offering materials Pharos received from National Century and Credit Suisse. See Rubin v. Schottenstein, Zox & Dunn, 143 F.3d 263, 267, 268 (6th Cir.1998) (en banc) (finding that an attorney for a corporation issuing securities, who agreed to speak directly to two potential investors about the corporation's financial condition as it related to the investment, had "a duty to provide complete and nonmisleading information with respect to the subjects on which he undertakes to speak").

### 2. Negligent Misrepresentation

The complaint asserts a claim for negligent misrepresentation based on the alleged misrepresentations in the opinion letter. The negligent misrepresentation claim fails for two reasons. First, the opinion letter does not contain a misrepresentation, for the reasons just discussed above in Part III.B.1. Second, Purcell & Scott is entitled to attorney immunity. "Under Ohio law, attorneys enjoy immunity from liability to third persons arising from acts performed in good faith on behalf of, and with the knowledge of, their clients." Vector Research, Inc. v. Howard & Howard Attorneys P.C., 76 F.3d 692, 700 (6th Cir. 1996) (citing Scholler v. Scholler, 10 Ohio St.3d 98, 103, 462 N.E.2d 158, 163 (Ohio 1984)). An exception to attorney immunity is when the attorney or firm acts maliciously, Scholler, 10 Ohio St.3d at 103, 462 N.E.2d at 163, but by definition, negligent misrepresentation is not a claim that alleges the existence of malice. See Delman v. Cleveland Hts., 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 838 (Ohio 1989) (negligent misrepresentation is a failure to exercise reasonable care or competence in obtaining or communicating the information). Therefore, Pharos's claim for negligent misrepresentation is dismissed. See Brady ex rel. Brady v. Hickman & Lowder, Co., L.P.A., No. 82461, 2003 WL 22413491, at *3 (Ohio Ct. App. Oct. 23, 2003) (dismissing, on the basis of attorney immunity, third party claim for negligent representation against attorney); see also Calmes v. Goodyear Tire

& Rubber Co., 61 Ohio St.3d 470, 473, 575 N.E.2d 416, 419 (Ohio 1991) (in context of punitive damages, mere negligence does not constitute malice).

### 3. Aiding and Abetting

The complaint alleges that by authoring the opinion letter Purcell & Scott aided and abetted National Century's fraud. Attorney immunity serves as the basis for dismissing this claim as well. The elements of such a claim are: "(1) knowledge that the primary party's conduct is a breach of duty and (2) substantial assistance or encouragement to the primary party in carrying out the tortious act." Andonian v. A.C. & S., Inc., 97 Ohio App.3d 572, 574-75, 647 N.E.2d 190, 191-92 (Ohio Ct. App. 1994); see also Aetna Cas. and Sur. Co. v. Leahey Constr. Co., 219 F.3d 519, 533 (6th Cir. 2000). It is possible for an aider and abettor to act with malice. See id., 219 F.3d at 545 (treating as legally viable a claim against an aider and abettor for punitive damages, which requires a showing of actual malice). Malice is "that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Preston v. Murty, 32 Ohio St.3d 334, 336, 512 N.E.2d 1174, 1176 (Ohio 1987).

The complaint does not allege that Purcell & Scott acted with malice. At most, it alleges that Purcell & Scott had knowledge of the misstatements in the offering materials. Even then, the complaint does not contain specific allegations of knowledge but instead generally alleges knowledge based on Purcell & Scott's access to National Century's records, and personnel and its service as counsel on most of National Century's securitization transactions. These allegations do not support an inference that Purcell & Scott acted with an ill will or conscious disregard for Pharos's rights when it drafted the opinion letter. See Calmes, 61 Ohio St.3d at 473, 575 N.E.2d at 419 (in context of punitive damages, mere knowledge does not constitute malice).

### 4. Conspiracy

Malice is an element of a civil conspiracy, which is "'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone,

12

resulting in actual damages.'" Kenty v. Transamerica Premium Ins. Co., 72 Ohio St.3d 415, 419, 650 N.E.2d 863, 866 (Ohio 1995) (quoting LeFort v. Century 21-Maitland Realty Co., 32 Ohio St.3d 121, 126, 512 N.E.2d 640, 645 (Ohio 1987)). The elements of a civil conspiracy claim are: "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." Universal Coach, Inc. v. New York City Transit Auth., Inc., 90 Ohio App.3d 284, 292, 629 N.E.2d 28, 33 (Ohio Ct. App. 1993). The element of a malicious combination "does not require a showing of an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act." Gosden v. Louis, 116 Ohio App.3d 195, 219, 687 N.E.2d 481, 496 (Ohio Ct. App. 1996).

Again, the complaint does not allege that Purcell & Scott acted with malice. It alleges only that Purcell & Scott had some general knowledge of National Century's records and securities transactions. Further, the complaint does not allege the existence of an agreement or understanding. Purcell & Scott's only alleged role was drafting the opinion letter, and there is no allegation of Purcell & Scott having an agreement or understanding with another defendant when it drafted the opinion letter.

### 5. Ohio Blue Sky Law

Pharos asserts a claim against Purcell & Scott under Ohio Revised Code §1707.43, which imposes joint and several liability on "every person that has participated in or aided the seller in any way in making [a] sale or contract for sale" that is unlawful under §1707.41. Section 1707.41 prohibits the use of misrepresentations or material omissions in connection with the sale of securities.

Attorneys providing legal services are protected from liability under §1707.43:

For purposes of this section, the following persons shall not be deemed to have effected, participated in, or aided the seller in any way in making, a sale or contract of sale in violation of sections 1707.01 to 1707.45 of the Revised Code:

(A) Any attorney, accountant, or engineer whose performance is incidental to the

13

practice of the person's profession.

Ohio Rev. Code § 1707.431(A). See also Riedel v. Acutote of Colorado, 773 F.Supp. 1055, 1066 (S.D. Ohio 1991) ("[A]n attorney providing professional services is not liable under section 1707.43."). In order to be liable under §1707.43, an attorney for a company must participate in the sale in some manner other than providing legal services to the company. Leeth v. Decorator's Mfg., Inc., 67 Ohio App.2d 29, 34, 425 N.E.2d 920, 923 (Ohio 1979).

The Court finds that Purcell & Scott is entitled to protection under §1707.431(A). The complaint alleges that Purcell & Scott served as National Century's outside legal counsel and that, in the course of providing counsel to National Century, Purcell & Scott drafted the legal opinion letter to Pharos. The Court finds that the drafting of the opinion letter was incidental to Purcell & Scott's provision of legal services to National Century. The complaint does not contain any allegations that would put Purcell & Scott's conduct outside the scope of protection under §1707.431(A). See e.g., Perkowski v. Megas Corp., 55 Ohio App.3d 234, 236, 563 N.E.2d 378, 380 (Ohio Ct. App. 1990) (denying §1707.431(A) protection to attorney who received a commission for advertising an investment opportunity on a radio talk show); Gerlach v. Wergowski, 65 Ohio App.3d 510, 515, 584 N.E.2d 1220, 1222-23 (Ohio Ct. App. 1989) (denying §1707.431(A) protection to accountant who was a corporate director and treasurer and who actively solicited plaintiffs to invest); McCartney v. Universal Electric Power Corp., No. 22417, 2005 WL 2020559, at *2 (Ohio Ct. App. Aug. 24, 2005) (holding that §1707.431 "immunizes attorneys acting a legal counsel, and not as salesmen, from R.C. 1707 securities fraud liability").

  **C. JPMorgan and the Beacon Entities**

    **1. Fraud, Aiding and Abetting, and Conspiracy**

The complaint alleges that JPMorgan and the Beacon Entities are vicariously liable for the actions of the Outside Directors, who were employees of JPMorgan and the Beacon Entities. As noted in Part I.C. above, the Court has dismissed the underlying claims for fraud, aiding and abetting, and conspiracy against the Outside Directors. See May 7, 2007 Order. The claims

14

against JPMorgan and the Beacon Entities that rest on a theory of vicarious liability necessarily fail also. See Greenlee v. City of Cleveland, No. 1:03-cv-2410, 2005 WL 2249920, at *8 (N.D. Ohio Sept. 15, 2005) (stating that an essential element of respondeat superior is that the agent committed tortious conduct) (citing Ohio case law).

Pharos argues that the complaint supports more than a theory of vicarious liability against JPMorgan. Pharos points to two additional ways in which JPMorgan can be held liable. First, Pharos contends that JPMorgan committed fraud by failing to disclose to Pharos that National Century had a practice of purchasing accounts receivable from healthcare companies in which it held an ownership interest – a practice contrary to what the offering materials represented. This argument fails because the complaint does not allege a basis for imposing a duty to disclose on JPMorgan. Ohio law prohibits fraudulent nondisclosure only where there is a duty to disclose. State v. Warner, 55 Ohio St.3d 31, 54, 564 N.E.2d 18, 40 (Ohio 1990); see also Chiarella v. United States, 445 U.S. 222, 228, 100 S.Ct. 1108, 1114 (1980). Pharos does not explain in its brief why it believes JPMorgan had a duty to disclose, but other plaintiffs have commonly relied on two theories. Certain noteholder plaintiffs have alleged that JPMorgan had a fiduciary duty to disclose because it served as indenture trustee of the NPF VI note program. See Warner, 55 Ohio St.3d at 54, 564 N.E.2d at 40 (holding that a duty to disclose can arise from a fiduciary relationship). Pharos, however, was not a noteholder and the complaint does not allege that JPMorgan had a fiduciary relationship with Pharos. Other plaintiffs have alleged that a defendant who chooses to speak in a securities transaction assumes a duty to speak truthfully and completely about the matters on which he speaks. See Rubin v. Schottenstein, Zox & Dunn, 143 F.3d 263, 268 (6th Cir. 1998) (en banc). But Pharos does not allege that JPMorgan undertook to speak to Pharos in connection with its decision to purchase preferred stock in National Century.

Second, Pharos contends that JPMorgan can be held liable for transferring funds in and out of the NPF VI reserve account in order to conceal account shortfalls. The complaint, however, contains no such allegation that JPMorgan transferred funds. Rather, National Century was the

15

party who allegedly transferred the funds with the intent of hiding shortfalls.[1]  Even if the complaint did allege that JPMorgan followed National Century's instructions in transferring the funds, the complaint still fails to plead the essential elements of the various types of claims Pharos asserts.  As to fraud, the complaint does not contain allegations supporting an inference that JPMorgan acted with knowledge or intent.  See Russ v. TRW, Inc., 59 Ohio St.3d 42, 49, 570 N.E.2d 1076, 1083-84 (Ohio 1991).  As to aiding and abetting, the complaint does not support an inference that JPMorgan had actual knowledge of the underlying tortious conduct.  See Aetna Cas. and Sur. Co. v. Leahey Constr. Co., 219 F.3d 519, 533 (6th Cir. 2000).  And as to conspiracy, the complaint does not allege that JPMorgan had an agreement or tacit understanding with any other party to commit fraud.  See Kenty v. Transamerica Premium Ins. Co., 72 Ohio St.3d 415, 419, 650 N.E.2d 863, 866 (Ohio 1995).

### 2. Ohio Blue Sky Law

Pharos concedes that its Blue Sky law claim against JPMorgan and the Beacon Entities rests solely on a theory of vicarious liability.[2]  The Ohio Blue Sky law claim was the only one to survive the Outside Directors' motion to dismiss.  The Court found that the complaint stated a claim against the Outside Directors because it alleged that the Outside Directors approved of false audit reports of National Century that Pharos received and relied on in deciding to purchase National Century stock.

The doctrine of respondeat superior applies when the wrongful act of the agent is

---

[1] In its brief in opposition to the motion to dismiss, Pharos makes numerous other assertions as to how JPMorgan directly participated in alleged wrongdoing.  Each assertion is accompanied by a citation to the complaint.  However, the paragraphs in the complaint to which Pharos cites do not contain the allegations that Pharos says they do.  For each citation, it was National Century or some other defendant, and not JPMorgan, who allegedly committed the wrongful act.  Pharos is cautioned to be more careful in its advocacy.

[2] Though not an issue raised by the parties, some courts have considered the issue of whether common law agency principles can be applied to state blue sky laws.  There are no Ohio cases on point, but most courts have held that blue sky laws do not displace common law agency principles and that the imposition of vicarious liability furthers the goals of those laws "by creating an incentive for corporations to monitor the activities of their senior corporate officers."  Adams v. Hyannis Harborview, Inc., 838 F.Supp. 676, 693 (D. Mass. 1993); see also Opatz v. John G. Kinnard and Co., Inc., 454 N.W.2d 471, 475 (Minn. Ct. App. 1990)

committed *within the scope of his employment*.  See Byrd v. Faber, 57 Ohio St.3d 56, 58, 565 N.E.2d 584, 587 (Ohio 1991).  "Conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business.  That an employee was acting in violation of some instruction or rule of an employer is generally held to be of no consequence."  Martin v. Central Ohio Transit Auth., 70 Ohio App.3d 83, 92-93, 590 N.E.2d 411, 417 (Ohio Ct. App. 1990).

   The complaint alleges that Pote served as Executive Vice President of Regional Banking for JPMorgan Chase & Co., while Wilkinson and Mendell were managing directors of JPMorgan Partners, a subsidiary of JPMorgan Chase & Co.  JPMorgan and the Beacon Entities contend that the actions of Pote, Wilkinson, and Mendell in approving the National Century audits were performed in their capacity as directors of National Century and had nothing to do with the scope of their employment at JPMorgan or the Beacon Entities.

   Pharos responds that the issue of whether an employee's actions are within the scope of employment is a factual inquiry not typically suitable for determination on a motion to dismiss.  See Osborne v. Lyles, 63 Ohio St.3d 326, 330, 587 N.E.2d 825, 829 (Ohio 1992).  But the cases cited by Pharos are distinguishable.  Those cases deal with an alleged wrongdoer who had one line of employment, or one "hat," and whose alleged wrongdoing had some arguable connection to the scope of his one line of employment.  In those cases, the courts held that the issue of whether the employee's conduct furthered his employer's business was a factual inquiry.  See Ogrodowski v. Health & Home Care Concepts, Inc., No. 9-99-54, 1999 WL 1255807, at *2 (Ohio Ct. App. Dec. 28, 1999).

   Here, the alleged wrongdoers had two separate lines of employment, or two "hats" -- one as JPMorgan employees and one as National Century directors.  Though JPMorgan was only a shareholder of National Century, even in the parent-subsidiary context it is a "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their

17

common ownership." Lusk v. Foxmeyer Health Corp., 129 F.3d 773, 779 (5th Cir. 1997). "Since courts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary, . . . it cannot be enough to establish liability [on the parent] here that dual officers and directors made policy decisions and supervised activities at the [subsidiary]." U.S. v. Bestfoods, 524 U.S. 51, 69-70, 118 S.Ct. 1876, 1888 (1998) (internal quotations and citations omitted).

The Court finds that the complaint does not support an inference that Pote, Wilkinson, and Mendell were within the scope of their employment with JPMorgan and the Beacon Entities when they engaged in the conduct that allegedly violated Ohio's Blue Sky law. As alleged in the complaint, Pote, Wilkinson, and Mendell approved of the National Century audits while executing their duties as directors for National Century. There is no apparent connection between their approval of the audits as National Century directors and their respective duties with JPMorgan, and the complaint does not provide any guidance. The complaint offers only a conclusory allegation that "[d]uring the time when they sat on the boards of National Century, NPF VI, and NPF XII, Pote, Wilkinson, and Mendell were acting within the scope of their employment for JPM Chase and JPM Partners, as well as agents for Defendant Beacon Group." Pharos Compl., ¶84. The complaint contains no further allegations as to how the actionable conduct fell within the scope of their job duties with JPMorgan or otherwise furthered JPMorgan's business. Instead, the complaint squarely places the actionable conduct as having occurred while Pote, Wilkinson, and Mendell were engaged in the business affairs of National Century. This relieves JPMorgan from vicarious liability. See Martin, 70 Ohio App.3d at 92, 590 N.E.2d at 417 (a master is relieved from liability when the servant engages in his own affairs or the affairs of another party, such that the servant's actionable conduct departs entirely from his regular duties for the master).

Pharos stresses in its brief that JPMorgan and the Beacon Entities, as shareholders, had the authority to appoint Pote, Wilkinson, and Mendell to National Century's board and thereby controlled National Century. The complaint, nevertheless, does not contain allegations sufficient

to support a theory that JPMorgan should be treated as National Century's alter ego. And the mere fact that JPMorgan was a shareholder and could appoint members to the board does not suffice for imposing vicarious liability. "[I]ndividual directors are in no sense the personal representatives of the stockholders by whose suffrage they hold office. . . . [I]t remains their duty to exercise their own judgment in all final corporate action." Lamb v. Lehmann, 110 Ohio St. 59, 65-66, 143 N.E. 276, 278 (Ohio 1924); see also Restatement (Second) of Agency §14C (1958) (an individual director is not an agent of the corporation or its shareholders); Emerson Radio Corp. v. Int'l Jensen Inc., Nos. 15130, 14992, 1996 WL 483086, at *20 n.18 (Del.Ch. Aug. 20, 1996) (finding "no legal foundation" for the argument that a minority stockholder should be held liable for the wrongdoing of the director it had appointed). Again, even in the context of a parent and subsidiary, "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." American Protein Corp. v. AB Volvo, 844 F.2d 56, 57 (2d Cir. 1988).

Finally, it should be noted that the complaint does not support a theory of apparent authority. There is no allegation that JPMorgan held out to Pharos that Pote, Wilkinson, and Mendell were acting as agents of JPMorgan when they performed their duties for National Century. See Master Consolidated Corp. v. BancOhio Nat'l Bank, 61 Ohio St.3d 570, 576-577, 575 N.E.2d 817, 822 (Ohio 1991) (under theory of apparent agency, principal must create the appearance of authority for the agent's conduct). The complaint does not allege that JPMorgan or the Beacon Entities had any contacts with Pharos.

**IV.   CONCLUSION**

For the reasons set forth above, Purcell & Scott's motion to dismiss (doc. 143) is GRANTED. The motions to dismiss of the Beacon Entities and JPMorgan (docs. 167, 175) are GRANTED as to Pharos complaint (note: those motions remain pending as to the Parrett

19

complaint).

                                                          s/ James L. Graham
                                                          JAMES L. GRAHAM
                                                          United States District Judge

DATE: May 2, 2008