UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>NATIONAL CENTURY FINANCIAL<br>ENTERPRISES, INC. FINANCIAL<br>INVESTMENT LITIGATION. | Case No. 03-md-01565<br><br>Judge James L. Graham<br><br>Magistrate Judge Mark R. Abel |

| | |
|---|---|
| THE UNENCUMBERED ASSETS<br>TRUST, *et ano.,*<br><br>                   Plaintiffs,<br><br>     -against-<br><br>JP MORGAN CHASE BANK, *et al.,*<br><br>        Defendants. | Case No. 04-cv-1090<br><br>Judge James L. Graham<br><br>Magistrate Judge Mark R. Abel |

## MOTION BY DEFENDANT CREDIT SUISSE TO DISQUALIFY GIBBS & BRUNS LLP AS COUNSEL FOR PLAINTIFFS AND TO OBTAIN ANCILLARY RELIEF

Credit Suisse Securities (USA) LLC and Credit Suisse, New York Branch (together, "Credit Suisse"), by and through their undersigned counsel, and pursuant to the Court's inherent equitable powers, respectfully submit this Motion seeking to disqualify Gibbs and Bruns LLP ("G&B") from serving as counsel for the Arizona Plaintiffs and the Unencumbered Assets Trust ("UAT") in this proceeding.[1] In addition, Credit Suisse also seeks

---

[1]    The Arizona Plaintiffs are the plaintiffs in the cases filed in the United States District Court for the District of Arizona and transferred to this Court, namely City of Chandler, et al. v. Bank One, N.A., et al., 03-cv-1220; State of Arizona, et al. v. Credit Suisse First Boston Corp., et al., 03-cv-1618; and Crown Cork & Seal Company, Inc. Master Retirement Trust, et al. v. Credit Suisse First Boston Corp., et al., 03-cv-2084 (collectively, the "Arizona Complaints"). G&B also represents the UAT, which has asserted claims against Credit Suisse in the action captioned: Unencumbered Assets Trust, et al. v. JP Morgan Chase Bank, et al., 04-cv-1090 (S.D. Ohio) (the

costs and attorneys' fees incurred by Credit Suisse in connection with the designation and "de-designation" by Plaintiffs of Professor Steven L. Schwarcz ("Schwarcz") as an expert witness, including all fees, travel and expenses associated with his deposition, as well as costs and attorneys' fees incurred in connection with making this motion.

Rule 1.9 of the Ohio Rules of Professional Conduct prohibits lawyers from engaging in conduct that is materially adverse to the interests of a former client in a substantially related matter, unless the client gives informed consent. In clear violation of the ethical rules governing duties owed to former clients, G&B solicited and retained Schwarcz, a former attorney for Credit Suisse with respect to transactions that are at issue in this case, as an expert for the Plaintiffs here. Consequently, had Schwarcz not been de-designated, he would have been disqualified from serving as an expert in this action.

The same ethical principles mandate the disqualification of G&B as counsel for Plaintiffs. As a matter of law, it is presumed both that Schwarcz obtained relevant privileges and confidences belonging to Credit Suisse during the former representation and that those privileges and confidences were disclosed to G&B. Accordingly, Schwarcz's disqualification should be imputed to G&B. See Kala v. Aluminum Smelting & Refining Co., 688 N.E.2d 258 (Ohio Sup. Ct. 1998).

As set forth in detail in the accompanying Memorandum of Law, G&B should be disqualified from representing any parties to this action. In addition, Credit Suisse should be

---

"UAT Complaint" or "UAT Compl."). The plaintiffs in the UAT Complaint will be referred to in this motion as the UAT Plaintiffs, and the Arizona Plaintiffs and the UAT Plaintiffs shall be referred to collectively as the "Plaintiffs."

reimbursed for the costs and attorneys' fees it has incurred relating to G&B's improper retention of Schwarcz, including the costs and attorneys' fees associated with this motion.

Dated:   Columbus, Ohio
          January 27, 2009

Respectfully submitted,

BAKER & HOSTETLER LLP

By:___s/ Thomas L. Long_____
       Thomas L. Long (0023127)
       Sherri B. Lazear (0030546)
Capitol Square
65 East State Street, Suite 2100
Columbus, Ohio 43215
Tel: (614) 228-1541

     -and-

McKEE NELSON LLP
Jeffrey Q. Smith (JS-7435)
Steven G. Brody (SB-6859)
Susan F. DiCicco (SD-8013)
One Battery Park Plaza
New York, New York 10004
Tel: (917) 777-4200

Attorneys for:

Credit Suisse Securities (USA) LLC and
Credit Suisse, New York Branch

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>NATIONAL CENTURY FINANCIAL ENTERPRISES, INC. FINANCIAL INVESTMENT LITIGATION. | Case No. 03-md-01565<br><br>Judge James L. Graham<br><br>Magistrate Judge Mark R. Abel |
| THE UNENCUMBERED ASSETS TRUST, *et ano.*,<br><br>                  Plaintiffs,<br><br>      -against-<br><br>JP MORGAN CHASE BANK, *et al.*,<br><br>          Defendants. | Case No. 04-cv-1090<br><br>Judge James L. Graham<br><br>Magistrate Judge Mark R. Abel |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANT CREDIT SUISSE TO DISQUALIFY GIBBS & BRUNS LLP AS COUNSEL FOR PLAINTIFFS AND TO OBTAIN ANCILLARY RELIEF

BAKER & HOSTETLER LLP
Thomas L. Long (0023127)
Sherri B. Lazear (0030546)
Capitol Square
65 East State Street, Suite 2100
Columbus, Ohio 43215
Tel: (614) 228-1541

    -and-

McKEE NELSON LLP
Jeffrey Q. Smith (JS-7435)
Steven G. Brody (SB-6859)
Susan F. DiCicco (SD-8013)
One Battery Park Plaza
New York, New York 10004
Tel: (917) 777-4200

Attorneys for Defendants
   Credit Suisse Securities (USA) LLC and
   Credit Suisse, New York Branch

279148v.6

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................................iii

PRELIMINARY STATEMENT .............................................................................2

BACKGROUND ....................................................................................................4

    A. Summary of the Cases ................................................................................4

    B. Schwarcz's Representation of Credit Suisse in NCFE-Related Transactions ....................5

    C. The Participation of Schwarcz in Other NCFE-Related Transactions.................................7

    D. The Designation and "De-designation" of Schwarcz as an Expert Witness........................8

ARGUMENT.........................................................................................................11

I.   THE RETENTION OF SCHWARCZ, A FORMER ATTORNEY FOR CREDIT SUISSE,
    AS AN EXPERT WITNESS AGAINST CREDIT SUISSE, VIOLATED THE
    APPLICABLE ETHICAL RULES REGARDING FORMER CLIENTS, AND WOULD
    REQUIRE HIS DISQUALIFICATION HAD HE NOT BEEN "DE-DESIGNATED" AS AN
    EXPERT WITNESS .......................................................................................11

- Schwarcz would have been disqualified from continuing to serve as an expert witness in this substantially related matter against his former client, Credit Suisse, pursuant to the relevant ethical rules. See Ohio Prof. Cond. Rule 1.9; Model Rule of Prof'l Conduct 1.9; T.C. Theatre Corp. v. Warner Bros. Pictures, 113 F. Supp. 265 (S.D.N.Y. 1953).

- Because Schwarcz has taken a materially adverse position to Credit Suisse that is substantially related to the former representation, an irrebuttable presumption arises that Credit Suisse's privileged information and confidences have been shared with G&B. T.C. Theatre Corp., 113 F. Supp. at 268-69; Gen. Elec. Co. v. Valeron Corp., 608 F.2d 265, 267 (6th Cir. 1979); OneBeacon Am. Ins. Co. v. Safeco Ins. Co., No. C-1-07-358, 2008 WL 4059836, at *2 (S.D. Ohio. Aug. 25, 2008).

II.  THE SAME ETHICAL PRINCIPLES DISREGARDED IN THE RETENTION OF
    SCHWARCZ LIKEWISE MANDATE THE DISQUALIFICATION OF G&B AS
    COUNSEL FOR PLAINTIFFS ...................................................................15

- The disqualification of an attorney from representing a party because of an ethical violation must be imputed to the attorney's entire firm under the rule of vicarious disqualification. See Kala v. Aluminum Smelting & Refining Co., 688 N.E.2d 258 (Ohio Sup. Ct. 1998); Hamrick v. Union Twp., Ohio, 79 F. Supp. 2d 871 (S.D. Ohio 1999).

A. G&B is Vicariously Disqualified Under the Imputation Rules Established in the Supreme Court of Ohio's Decision in Kala ......................................................................16

o Under the imputation rules established in Kala, G&B is vicariously disqualified from serving as counsel in this action because there is a substantial relationship between the matter at issue and Schwarcz's former representation of Credit Suisse, there is a presumption that Schwarcz shared Credit Suisse's confidences with G&B, and G&B cannot rebut the presumption because it did not implement any screening mechanisms between Schwarcz and G&B attorneys. Kala, 688 N.E.2d at 264-66.

B. The Fact that Schwarcz Served as an Expert Witness Retained by G&B, as Opposed to Being Employed by G&B, Does Not Change the Kala Analysis...................18

o Pursuant to the rationale behind the rules of imputation and vicarious disqualification, G&B is disqualified even though it retained Schwarcz as an expert witness rather than as an employee or partner. See Kala, 688 N.E.2d at 261-63; ARJ Trucking, Inc. v. Emery Worldwide, No. 30 62 00, 1992 WL 189367 (Conn. Super. July 29, 1992).

III. CREDIT SUISSE IS ENTITLED TO BE REIMBURSED FOR ALL EXPENSES ASSOCIATED WITH G&B'S IMPROPER RETENTION OF SCHWARCZ, INCLUDING THE COSTS AND EXPENSES INCURRED IN MAKING THIS MOTION.......................20

• Credit Suisse should be awarded reasonable attorneys' fees and costs incurred as a result of Plaintiffs' improper designation of Schwarcz, as well as in connection with the instant motion to disqualify. See Beam Sys., Inc. v. Checkpoint Sys., Inc., No. CV 95-4068, 1997 WL 423113 (C.D. Cal. July 16, 1997); Kaiser v. Am. Tel. & Tel., No. CIV 000-724, 2002 WL 1362054, at *9 (D. Ariz. Apr. 5, 2002); Hood v. Midwest Sav. Bank, No. C2-97-218, 2001 WL 327723 (S.D. Ohio Mar. 22, 2001).

CONCLUSION.............................................................................................................................22

# TABLE OF AUTHORITIES

## FEDERAL CASES

America Protection Ins. Co. v. MGM Grand Hotel-Las Vegas, Inc.,
    No. CV-LV-82-26, 1986 WL 57464 (D. Nev. Mar. 13, 1986)............................19, 20

Beam System, Inc. v. Checkpoint System, Inc.,
    No. 95-cv-4068, 1997 WL 423113 (C.D. Cal. July 16, 1997)....................................21

Best Western International v. CSI International Corp.,
    No. 94 Civ. 0360, 1995 WL 505565 (S.D.N.Y. Aug. 25, 1995) ................................20

Cardona v. General Motors Corp.,
    942 F. Supp. 968 (D.N.J. 1996) ................................................................................16

Cordy v. Sherwin-Williams Co.,
    156 F.R.D. 575 (D.N.J. 1994).....................................................................................19

Edwards v. Gould Paper Corp. Long Disability Plan,
    352 F. Supp. 2d 376 (E.D.N.Y. 2005) .......................................................................15

Emle Industrial, Inc. v. Patentex, Inc.,
    478 F.2d 562 (2d Cir. 1973).......................................................................................13

General Electric Co. v. Valeron Corp.,
    608 F.2d 265 (6th Cir. 1979) .....................................................................................13

Hamrick v. Union Township, Ohio,
    79 F. Supp. 2d 871 (S.D. Ohio 1999) .......................................................12, 15, 17, 18

HealthNet, Inc. v. Health Net, Inc.,
    289 F. Supp. 2d 755 (S.D. W.Va. 2003)....................................................................14

Hood v. Midwest Savings Bank,
    No. C2-97-218, 2001 WL 327723 (S.D. Ohio Mar. 22, 2001)..................................21

International Insurance Co. v. Certain Underwriters at Lloyds of London,
    No. 00-cv-0983, 2001 WL 1681121 (S.D. Ohio Aug. 29, 2001) ...............................13

Kaiser v. American Telephone & Telegraph
    No. CIV 000-724, 2002 WL 1362054 (D. Ariz. Apr. 5, 2002) ..................................21

Manning v. Waring, Cox, James, Sklar & Allen,
    849 F.2d 222 (6th Cir. 1988) .....................................................................................11

MMR/Wallace Power & Industrial, Inc. v. Thames Associates,
    764 F. Supp. 712 (D. Conn. 1991)............................................................................19

Nix v. Whiteside,
    475 U.S. 157 (1986)..........................................................................................2

North Pacifica, LLC v. City of Pacifica,
    335 F. Supp. 2d 1045 (N.D. Cal. 2004) ...............................................................20

OneBeacon American Insurance Co. v. Safeco Insurance Co.,
    No. 07-c 2008, 2008 WL 4059836 (S.D. Ohio Aug. 25, 2008)...................................13

Plumley v. Dough Mockett & Co.,
    No.CV 04-2868, 2008 WL 5382269 (C.D. Cal. Dec. 22, 2008) ................................20

Remtech, Inc. v. Fireman's Fund Insurance Co.,
    No. CV-05-0087, 2006 WL 5157646 (E.D. Wash. June 5, 2006)...............................20

Rentclub, Inc. v. Transamerica Rental Finance Corp.,
    43 F.3d 1439 (11th Cir. 1995) ...........................................................................20

SST Castings, Inc. v. Amana Appliances, Inc.,
    250 F. Supp. 2d 863 (S.D. Ohio 2002) ...............................................................11

In re Snyder,
    472 U.S. 634 (1985)........................................................................................12

T.C. Theatre Corp. v. Warner Bros. Pictures,
    113 F. Supp. 265 (S.D.N.Y. 1953) .................................................................12, 13

United States v. SAE Civil Construction, Inc.,
    No. CV95-3058, 1996 WL 148521 (D. Neb. Jan. 29, 1996).....................................20

Wasmer v. Ohio Department of Rehabilitation & Correction,
    No. 05-cv-0986, 2007 WL 593564 (S.D. Ohio Feb. 21, 2007) ..................................11

Yates v. Dicks,
    209 F.R.D. 143 (S.D. Ohio 2002) .......................................................................11

## STATE CASES

ARJ Trucking, Inc. v. Emery Worldwide,
No. 30 62 00, 1992 WL 189367 (Conn. Super. July 29, 1992) ..............................18, 19

In re Bell Helicopter Textron,
87 S.W.3d 139 (Tex. Ct. App. 2002) ..........................................................................18

Brand v. 20th Century Insurance Co/21st Century Insurance Co.,
124 Cal. App. 4th 594 (Ct. App. 2004).......................................................................14

Kala v. Aluminum Smelting & Refining Co.,
688 N.E.2d 258 (Ohio Sup. Ct. 1998)..................................................15, 16, 17, 18, 19

## OTHER AUTHORITIES

Connecticut Rules of Professional Conduct ......................................................................19

Model Rules of Professional Conduct ................................................................11, 12, 19

Ohio Rules of Professional Conduct.........................................................11, 12, 14, 15, 17

S.D. Ohio Civ. R 83.3(f) ..................................................................................................11

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>NATIONAL CENTURY FINANCIAL ENTERPRISES, INC. FINANCIAL INVESTMENT LITIGATION. | Case No. 03-md-01565<br><br>Judge James L. Graham<br><br>Magistrate Judge Mark R. Abel |
| THE UNENCUMBERED ASSETS TRUST, *et ano.*,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　　-against-<br><br>JP MORGAN CHASE BANK, *et al.*,<br><br>　　　　Defendants. | Case No. 04-cv-1090<br><br>Judge James L. Graham<br><br>Magistrate Judge Mark R. Abel |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
BY DEFENDANT CREDIT SUISSE TO DISQUALIFY
GIBBS & BRUNS LLP AS COUNSEL FOR
PLAINTIFFS AND TO OBTAIN ANCILLARY RELIEF**

Credit Suisse Securities (USA) LLC and Credit Suisse, New York Branch
(together, "Credit Suisse"), by and through their undersigned counsel, and pursuant to the
Court's inherent equitable powers, respectfully submit this Motion to (1) disqualify Gibbs and
Bruns LLP ("G&B") from continuing to serve as counsel for the Arizona Plaintiffs and the
Unencumbered Assets Trust ("UAT") in these cases[1] and (2) remedy the injuries suffered by

---

[1]　　The Arizona Plaintiffs are the plaintiffs in the cases filed in the United States District
Court for the District of Arizona and transferred to this Court, namely City of Chandler, et al. v.
Bank One, N.A., et al., 03-cv-1220; State of Arizona, et al. v. Credit Suisse First Boston Corp., et
al., 03-cv-1618; and Crown Cork & Seal Company, Inc. Master Retirement Trust, et al. v. Credit
Suisse First Boston Corp., et al., 03-cv-2084 (collectively, the "Arizona Complaints"). G&B
also represents the UAT, which has asserted claims against Credit Suisse in the action captioned:
Unencumbered Assets Trust, et al. v. JP Morgan Chase Bank, et al., 04-cv-1090 (S.D. Ohio) (the

Credit Suisse due to G&B's improper solicitation and retention of expert witness Steven L. Schwarcz ("Schwarcz").

## PRELIMINARY STATEMENT

It is a bedrock principle of the American legal system that a client should rest secure knowing that its attorney will not use privileges and confidences acquired during the course of representing it in a manner adverse to the client's interests. See, e.g., Nix v. Whiteside, 475 U.S. 157, 188 n.7 (1986) ("[Lawyer] who has previously represented [client] has a continuing obligation to that former client not to reveal confidential information received during the course of the prior representation."). G&B flagrantly violated that principle here, when it solicited and thereafter retained the expert services of Schwarcz, an individual who served as Credit Suisse's counsel in certain of the transactions that G&B (and its other experts) have placed at issue in this case.

As this Court well knows, Plaintiffs seek to hold Credit Suisse responsible for losses they incurred in purchasing (and in the case of the UAT, issuing) certain medium-term notes, which were issued by wholly-owned subsidiaries of National Century Financial Enterprises ("NCFE"). These notes were supposed to be backed by eligible healthcare receivables. Credit Suisse served as a placement agent/initial purchaser in connection with certain of the notes issuances. Credit Suisse was represented in each of these transactions by the New York law firm of Kaye Scholer LLP ("Kaye Scholer"). Schwarcz, who was at that time the head of Kaye Scholer's Structured Finance Practice Group and now is a law professor at Duke University, was the partner responsible for the work done by Kaye Scholer for Credit Suisse on

---

"UAT Complaint" or "UAT Compl."). The plaintiffs in the UAT Complaint will be referred to in this motion as the UAT Plaintiffs, and the Arizona Plaintiffs and the UAT Plaintiffs shall be referred to collectively as the "Plaintiffs."

some of these transactions and personally performed some of the services that were required. Notwithstanding this prior representation – and the fact that Kaye Scholer produced to G&B (and G&B itself produced from NCFE's files) documents confirming that representation – G&B solicited and retained Schwarcz to serve as an expert witness in these cases against Credit Suisse, his former client.[2]

When these facts were disclosed at Schwarcz's deposition, it was obvious to everyone in the room that the retention of Schwarcz ran afoul of the ethical rules governing duties owed to former clients. After initially professing not to recall working on NCFE matters, Schwarcz declared that he would no longer continue to serve as an expert witness, and G&B purported to "de-designate" him as such. In a telephonic conference with Magistrate Judge Abel, G&B took the position that the matter was closed.

However, the inquiry does not end there – nor does the remedy. The law is clear that, because G&B worked alongside Schwarcz, conferred with him on multiple occasions for hours, turned him into a witness against his former client and even had Schwarcz confer with another G&B expert, Professor Bernard Black – all without Credit Suisse's consent or any ethical screens whatsoever – the disqualification of Schwarcz should be imputed to G&B because Schwarcz is presumed to have shared Credit Suisse's confidences and privileged information with G&B. That fact will taint (indeed has already tainted) this litigation and will continue to as long as G&B participates in it. There is no way to remedy this taint other than the disqualification of G&B from continuing to represent any party in these proceedings. In addition, Credit Suisse should receive reimbursement for all the costs and expenses it has

---

[2] By making this motion, Credit Suisse does not waive, and rather reaffirms, the privilege applicable to its communications with Schwarcz.

incurred relating to G&B's improper retention of Schwarcz, including the costs and fees associated with this motion.

## BACKGROUND

### A.    Summary of the Cases

This MDL proceeding involves cases arising out of the fraudulent activities of NCFE, formerly one of the country's largest providers of healthcare accounts receivable financing. The Arizona Plaintiffs, represented by G&B, filed these cases asserting thousands of claims against multiple defendants, including Credit Suisse. The Arizona Plaintiffs allege, among other things, that the offering memoranda used in connection with notes offerings contained material misrepresentations and omissions, and they assert claims against Credit Suisse for common law fraud, violation of various states' "blue sky" statutes, negligent misrepresentation, conspiracy, unjust enrichment and breach of contract.

In connection with NCFE's bankruptcy filing, the UAT was formed. The UAT retained G&B to pursue any claims that it might possess. The UAT filed a complaint in this Court asserting claims against Credit Suisse, Kaye Scholer, and other defendants alleging breach of agency, breach of fiduciary duty, fraud, negligent misrepresentation, deepening insolvency, concert of action, civil conspiracy, professional negligence, violation of the Ohio RICO statute, as well as certain bankruptcy avoidance claims. On behalf of the UAT, G&B alleged that as counsel to Credit Suisse, NCFE and various NCFE-related entities, Kaye Scholer drafted many of the key documents, had detailed knowledge of how the NPF note programs functioned, and knew that the NPF note programs were not functioning properly. UAT Compl. ¶¶ 1074-1143.

Most of the original defendants in these cases, including Kaye Scholer, have resolved their claims with Plaintiffs. Aside from the founders of NCFE and some of its related entities, Credit Suisse is the only remaining defendant.

4

**B.** **Schwarcz's Representation of Credit Suisse in NCFE-Related Transactions**

In 1989, Schwarcz became a partner at Kaye Scholer and the Chairman of its Structured Finance Practice Group. Ex. A (Appendix A, Expert Report of Steven L. Schwarcz ("Schwarcz Report")).[3] From December 1995 until NCFE's demise in November 2002, Kaye Scholer was involved in the NCFE healthcare receivables securitizations that are the subject of the instant litigation.[4] The firm, under the stewardship of Schwarcz in his capacity as a partner and the Chairman of the Structured Finance Practice Group, represented numerous parties in NCFE-related transactions, including NCFE itself. However, most importantly for purposes of this motion, Kaye Scholer and Schwarcz represented Credit Suisse in several of the very transactions that G&B put at issue in this litigation and labeled fraudulent.

Kaye Scholer's representation of Credit Suisse in the NCFE transactions began on approximately December 1, 1995, when Schwarcz prepared a New Client/New Matter form for "First Boston – Structured Finance," signing it in the capacities of both billing partner and partner in charge.[5] Ex. B (Kaye Scholer New Client/Matter Form dated December 1, 1995,

---

[3]    All citations to "Ex. ___" refer to exhibits annexed to the Affidavit of Gillian I. Epstein, sworn to on January 27, 2009 ("Epstein Aff.").

[4]    Kaye Scholer was placement agent's or initial purchaser's counsel on all NPF VI and NPF XII note issuances from 1998 until 2002. Ex. C (Supplemental Declaration of Lester M. Kirshenbaum (supplementing the Declaration of Lester M. Kirshenbaum in Support of Application of Official NPF VI Noteholders' Subcommittee to Retain Kaye Scholer LLP as Co-Counsel), dated December 18, 2003, and previously marked by G&B as Ex. 15 at the Bankruptcy Rule 2004 deposition of Edward J. O'Connell, on November 3, 2004). Credit Suisse was placement agent or initial purchaser on several of these NPF note offerings. Ex. D (undated document listing NCFE note offerings, produced as CS-MDL-00199120 and previously marked as Richter Ex. 11). Other placement agents or initial purchasers on these offerings were PaineWebber Inc., Deutsche Bank Alex Brown, and Bank One Capital Markets, Inc. Id. Kaye Scholer was also counsel to the structuring agent, Ascendant Capital, Inc., on many of the earlier offerings. Ex. C.

[5]    First Boston later merged with Credit Suisse in 1997 and became Credit Suisse First Boston, the entity currently known as Credit Suisse.

produced as KS-2004-0003398 and previously marked as Schwarcz Ex. 11). The transaction for which Schwarcz was retained by Credit Suisse, NPF VI 1995-2, closed on January 5, 1996, and was the first NCFE healthcare receivables-backed notes offering in which Credit Suisse participated. Ex. C; Ex. D.

As part of the representation of Credit Suisse, Schwarcz and Kaye Scholer were responsible for reviewing and commenting on transaction documents for NPF VI 1995-2, including all offering memoranda, and drafting key legal opinions. Ex. E (excerpts of the Bankruptcy Rule 2004 deposition transcript of Edward J. O'Connell, a former partner at Kaye Scholer, in the Rule 2004 Bankruptcy proceeding, dated November 3, 2004, at 17:10-14, 22:5-18); Ex. F (excerpts of the deposition transcript of Edward J. O'Connell, dated July 18, 2008, at 17:2-18:11); Ex. G (deposition transcript of Steven Schwarcz, dated December 16, 2008 ("Schwarcz Tr.") at 69:1-24). One of these legal opinions, known as a 10b-5 opinion, was addressed to Credit Suisse and attests that Kaye Scholer had not learned anything during its representation indicating that the offering documents were materially misleading. Ex. H (Kaye Scholer 10b-5 opinion for NPF VI 1995-2 excerpted from a closing binder for NPF VI 1995-2, produced as PS0381-1640–1641 and previously marked as Schwarcz Ex. 12).

One of Plaintiffs' other experts in this case, Professor Bernard Black, has identified NPF VI 1995-2 as part of the alleged NCFE fraud, and specifically criticized Credit Suisse for its conduct in conjunction with that transaction:

> This case involves an astonishing array of red flags, warning sirens, and known falsehoods which CSFB missed or ignored, from the beginning of CSFB's involvement with NCFE. CSFB's first placement of debt for NCFE was a $50M offering for NPF VI which closed on January 4, 1996. The Hausser Taylor accounting firm delivered its opinion on NCFE's 1994 financials the next day. CSFB was aware of what the financial statements said when the notes were issued.

6

*     *     *

Here is what CSFB knew from NCFE's 1994 financial statements, or could have learned in the course of customary due diligence. There were ample red flags and warning sirens, which called for additional investigation, and known problems which called into question the viability of NCFE's business strategy, the solvency of the Trusts, and the integrity of NCFE's management.[6]

Schwarcz and Kaye Scholer also represented Credit Suisse with respect to NPF IX, a notes program that closed its first series in June 1996. Ex. J (Kaye Scholer invoice dated November 14, 1996, produced as KS-2004-0080429–35 and previously marked as Schwarcz Ex. 9); Ex. C.

### C.    The Participation of Schwarcz in Other NCFE-Related Transactions

In addition to their representation of Credit Suisse, Schwarcz and Kaye Scholer also represented NCFE itself. On February 21, 1996, Schwarcz opened a New Client/Matter Form for client "NPF-WL," signing it in the capacities of both billing partner and partner in charge. Ex. K (Kaye Scholer New Client/Matter Form dated February 21, 1996, produced as KS 26571–77 and previously marked as Schwarcz Ex. 4). Schwarcz advised Kaye Scholer management that no engagement letter was required because "[NPF WL is a] [s]ubsidiary of major healthcare finance co, and we have worked with them before – and they have wonderful market reputation." Id. For this issuance of NPF WL, which was a warehouse line of credit funded by various banks (including Credit Suisse), Schwarcz and Kaye Scholer were responsible for drafting and reviewing loan agreements and legal opinions. See, e.g., Ex. L. (Kaye Scholer invoices for services rendered to NPF WL, dated March 12, 1996 and July 31, 1996, previously marked as Schwarcz Exs. 6 & 7); Ex. G (Schwarcz Tr. 38:22-44:2). NPF WL was renewed annually for several years, and Kaye Scholer continued to work on the NPF WL transactions,

---

[6]     Ex. I (Excerpts of the Expert Report of Professor Bernard S. Black ("Black Report"), at 32; see also id. at 17-18, 32-42).

7

later acting as counsel for the agent bank/lenders, including Credit Suisse. See, e.g., Ex. M (excerpts of June 1998 and May/June 2000 Confidential Information Memoranda for NPF WL, previously marked as Vespasiano Exs. 29 & 42, at LL_004966, 5030, & LL_005101, 5161, respectively (cover page, summary of opinions)).

The events surrounding NPF WL have also been put at issue in this case by G&B and expert Black. In particular, Black argues (based on no personal knowledge but perfect 20-20 hindsight) that, in 2000, various red flags occurred around the NPF WL program that should have alerted Credit Suisse to NCFE's fraud. Specifically, Black argues that Credit Suisse should have been aware of and troubled by shortfalls in the NPF WL reserve accounts. Ex. I (Black Report, at 79-80, 84, 89-90, 92, 96 n.158).

In July 1996, Schwarcz stepped down as Chairman of Kaye Scholer's Structured Finance Practice Group to begin a teaching career at Duke. However, he continued his relationship with Kaye Scholer as Special Counsel until May 2004, when he became a Special Consultant, a status that continues to the present day. Ex. A, at 16. During Schwarcz's tenure as Special Counsel, Kaye Scholer continued to work on NCFE securitizations and to represent Credit Suisse as well as other placement agents. Ex. C. Indeed, Kaye Scholer played a role in the following NCFE-related transactions, all while Schwarcz was either a partner at or Special Counsel to Kaye Scholer: NPF VI, NPF VIII, NPF IX, NPF XI, NPF XII, NPF LP, and NPF WL. Id. Kaye Scholer also worked as NCFE's counsel on its proposed IPO. Id.

### D.    The Designation and "De-designation" of Schwarcz as an Expert Witness

In early 2008, the UAT and Kaye Scholer settled their dispute, and the claims against the law firm were dismissed with prejudice at that time. See UAT Notice of Voluntary Dismissal, With Prejudice, of Plaintiffs' Claims Against Kaye Scholer (S.D. Ohio Feb. 25, 2008) [UAT D.E. 290].

On July 18, 2008, pursuant to this Court's order, G&B disclosed for the first time that it had retained Schwarcz as an expert witness in the Arizona and UAT cases.[7] See Arizona Plaintiffs' and the UAT's Identification of Experts in Compliance with the Court's July 1, 2008 Order (S.D. Ohio July 18, 2008) [MDL D.E. 1376; UAT D.E. 313]. The circumstances surrounding his retention remain somewhat uncertain. According to G&B partner Kathy Patrick, she first approached Schwarcz while the UAT case against Kaye Scholer was pending. Epstein Aff. ¶ 3. Patrick concluded at that time that Schwarcz could not be involved due to the pendency of the case. Id. When, thereafter, the UAT settled with Kaye Scholer, G&B once again approached Schwarcz soliciting his assistance, and he agreed to work for G&B. Id.; Schwarcz Tr. 9:20-22. During his deposition, Schwarcz could not recall exactly when that occurred. Id. at 8:20-24. Suffice to say that Schwarcz was an expert witness against Credit Suisse for at least six months. Id. at 8:20-9:2. During that time, he met with G&B, conferred with Black and prepared and served a detailed fourteen-page report on behalf of the Plaintiffs on September 3, 2008. Id. at 10:7-13. 14:15-24; Ex. N (Schwarcz Report). As of the date he submitted his report, G&B had paid Schwarcz $46,000 for approximately 46 hours of his work at his normal hourly rate of $1,000 per hour. Ex. N (Schwarcz Report, at 4).

After receiving G&B's expert witness designation (and being struck by the oddity of a party naming an expert witness who was a partner at one of the former defendants in this case), and then reviewing Schwarcz's report (which was oddly structured and seemingly carefully circumscribed), Credit Suisse conducted a review of documents produced by Kaye Scholer in this litigation. These were in large part documents that G&B itself produced to Credit

---

[7] Apparently, G&B was astute enough to avoid retaining Schwarcz as an expert witness against his own law firm, to which he is still Special Counsel. G&B's perspicuity with respect to its ethical obligations ended there.

9

Suisse on July 12, 2007 – documents that G&B had in its possession since the year <u>2004,</u> when Kaye Scholer produced the documents in conjunction with Rule 2004 examinations. The Kaye Scholer documents seemed to confirm that Schwarcz personally represented Credit Suisse in certain NCFE-related transactions.

Credit Suisse confronted Schwarcz with this information at the first reasonable opportunity – his deposition on December 16, 2008:

> Q. Okay. Are you aware, sir, that you represented Credit Suisse in connection with an NPF transaction?
> A. I am not aware of that.

Ex. G (Schwarcz Tr.: 50:10-14). Although Schwarcz repeatedly professed not to recall representing Credit Suisse, he ultimately acknowledged the representation, and his own status as billing partner in charge. <u>Id.</u> at 50:15-52:22. Schwarcz also admitted that he never asked Credit Suisse for permission to take on the representation, and that no one at Credit Suisse had consented to it. <u>Id.</u> at 71:17-24.

Counsel for Credit Suisse then had the following exchange with Schwarcz:

> Q. Do you believe if you did work on the account that it's appropriate for you to be appearing here today as an expert witness in a lawsuit against Credit Suisse?
> A. I would have to consider that and I simply have not had the chance to consider that.

<u>Id.</u> at 52:23-53:2. Following this exchange, Plaintiffs' counsel ended the deposition and "de-designated" Schwarcz as an expert witness. <u>Id.</u> at 72:11-23.[8]

---

[8]    Credit Suisse wished to continue the deposition. However, following a telephonic conference with Judge Abel in which Schwarcz indicated he was no longer willing to be an expert witness, Judge Abel ordered the deposition concluded, subject to any future request to renew that Credit Suisse might choose to make.

## ARGUMENT

**I.      THE RETENTION OF SCHWARCZ, A FORMER ATTORNEY FOR CREDIT SUISSE, AS AN EXPERT WITNESS AGAINST CREDIT SUISSE, VIOLATED THE APPLICABLE ETHICAL RULES REGARDING FORMER CLIENTS, AND REQUIRED HIS DISQUALIFICATION HAD HE NOT BEEN "DE-DESIGNATED" AS AN EXPERT WITNESS**

As an attorney who formerly represented Credit Suisse, Schwarcz had a clear ethical obligation not to take an adverse position to Credit Suisse in the same or substantially-related transactions.   As G&B essentially conceded by "de-designating" him as an expert witness, the applicable ethical rules precluded Schwarcz from serving as an expert witness against Credit Suisse.  At issue here is whether G&B should be disqualified for its role in this affair.

In analyzing a motion to disqualify, this Court should look to the Ohio Rules of Professional Conduct (the "Ohio Rules"), as well as federal case law interpreting the Model Rules of Professional Conduct (the "Model Rules"), which are essentially identical to the Ohio Rules.  See Wasmer v. Ohio Dep't of Rehab. & Corr., No. 05-cv-0986, 2007 WL 593564 (S.D. Ohio Feb. 21, 2007), at *1 (explaining that the Ohio Rules "are either identical to or adapted from the [Model Rules]").  As one court in this district explained:

> In this district, the [Ohio Rules] govern such [motions to disqualify].  See, e.g., Yates v. Dicks, 209 F.R.D. 143, 150 (S.D. Ohio 2002); see also S.D. Ohio Civ. R. 83.3(f) (providing that the conduct of attorneys and the supervision of their conduct in this Court "shall be governed by the Model Federal Rules of Disciplinary Enforcement," which provide that this Court abides by "the Code of Professional Responsibility adopted by the highest court of the state in which this Court sits" (i.e., Ohio).).  "[H]owever, since questions of ethics in federal cases are ultimately questions of federal law, courts are guided by federal case law, the American Bar Association's comments to its Model Rules, and the policies underlying the particular rules at issue." SST Castings, Inc. v. Amana Appliances, Inc., 250 F. Supp. 2d 863, 866 (S.D. Ohio 2002) (Spiegel, J.) (citing Manning v. Waring, Cox, James, Sklar, & Allen, 849 F.2d 222, 258 (6th Cir. 1988)).

11

OneBeacon Am. Ins. Co. v. Safeco Ins. Co., No. C-1-07-358, 2008 WL 4059836, at *2 (S.D. Ohio Aug. 25, 2008).

   To enforce rules of professional conduct, federal courts have inherent authority to discipline attorneys who appear before them for conduct deemed inconsistent with ethical standards imposed by the court.  In re Snyder, 472 U.S. 634, 643-45 (1985).  This power includes the ability to disqualify an attorney from representation of a client if, as here, a violation of one of the ethical rules has taken place.  Hamrick v. Union Twp., Ohio, 79 F. Supp. 2d 871, 874 (S.D. Ohio 1999) ("The power to disqualify an attorney from a case is incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession . . . .") (internal quotations and citation omitted).

   Rule 1.9 of the Ohio Rules, "Duties to Former Clients," provides, in relevant part:

> (a) Unless the former client gives <u>informed consent</u>, <u>confirmed in writing</u>, a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a <u>substantially related matter</u> in which that person's interests are materially adverse to the interests of the former client.

Ohio Prof. Cond. Rule 1.9 (2007) (emphasis in original).[9]

   In interpreting Ohio Rule 1.9(a) and its Model Rule equivalent, the courts have made clear that that an attorney is prohibited, in perpetuity, from taking subsequent employment or engaging in conduct which is adverse to the interests of his or her former client.  As the court explained in T.C. Theatre Corp. v. Warner Bros. Pictures, 113 F. Supp. 265 (S.D.N.Y. 1953):

> A lawyer's duty of absolute loyalty to his client's interests does not end with his retainer.  He is enjoined for all time, except as he may be released by law, from disclosing matters revealed to him by reason of the confidential relationship.  Related to this principle is the rule that where any substantial relationship can be shown

---

[9]  See also Rule 1.9 of the Model Rules.

between the subject matter of a former representation and that of a subsequent adverse representation, the latter will be prohibited.

Id. at 268.    Thus, "[l]awyers should not put themselves in the position 'where, even unconsciously, they might take, in the interests of a new client, an advantage derived or traceable to, confidences reposed under the cloak of a prior, privileged relationship.'" T.C. Theatre Corp., 113 F. Supp. at 269; see also Int'l Ins. Co. v. Certain Underwriters at Lloyd's of London, No. 00-cv-0983, 2001 WL 1681121, at *2 (S.D. Ohio Aug. 29, 2001) ("It has been repeatedly held that an attorney may not represent a client in litigation against a former client if the subject matter of the litigation is 'substantially related' to work he or she did for the former client.").

As noted in the authorities cited above, in order to establish a violation of Ohio Rule 1.9(a), all that is required is that a lawyer has taken a "materially adverse" position that is "substantially related to" the former representation, and then an irrebuttable presumption of the sharing of the client's privileged information and confidences will arise, requiring the court to disqualify the attorney.  As the court held in T.C. Theatre:

> The former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client.  The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation.  It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.

113 F. Supp. at 268-69; accord Gen. Elec. Co. v. Valeron Corp., 608 F.2d 265, 267 (6th Cir. 1979); Emle Indus., Inc. v. Patentex, Inc., 478 F.2d 562, 570-71 (2d Cir. 1973); OneBeacon Am. Ins. Co., 2008 WL 4059836, at *2.

13

There can be no serious dispute that the retention of Schwarcz to serve as an expert witness against Credit Suisse violated Ohio Rule 1.9(a), insofar as it was "substantially related" to the former representation and "materially adverse" to Credit Suisse's interests. Schwarcz represented Credit Suisse on the NCFE healthcare receivables transactions, like those at issue here. In connection with this representation, Schwarcz was responsible for reviewing key transaction documents and legal opinions – documents which unquestionably contained relevant, confidential information belonging to Credit Suisse. Moreover, in his report, Plaintiffs' other expert, Black, describes the first NPF VI transaction – the very transaction that Schwarcz worked on – as being part of the overall NCFE fraud and thus pivotal in establishing Credit Suisse's alleged liability. Ex. I (Black Report, at 32-42).

In addition, not only has Schwarcz presumably shared Credit Suisse's confidences with G&B in a substantially related matter, but he agreed, at G&B's behest, to become a witness against his prior client. It is difficult to imagine a more apt example of an attorney taking a "materially adverse" position. See, e.g., Brand v. 20th Century Ins. Co/21st Century Ins. Co., 124 Cal. App. 4th 594, 606 (Ct. App. 2004) (disqualifying attorney who had previously represented defendant in a substantially related matter from appearing as an expert witness against his former client).[10]

---

[10]    Further, any professed memory failure by Schwarcz regarding his representation of Credit Suisse is irrelevant. In HealthNet, Inc. v. Health Net, Inc., 289 F. Supp. 2d 755 (S.D. W. Va. 2003), defense counsel had formerly represented the plaintiff, who moved to disqualify him based on the former representation. The challenged attorney advised that he "had absolutely no such knowledge [of the potential conflict] and further denied any recollection about an opinion letter to HealthNet, Inc. or even having had HealthNet, Inc. as a client seventeen years ago." Id. at 757. Regardless, the court held that "[w]hile seventeen years is certainly long enough for [counsel] to have forgotten he ever represented the plaintiff, it is not long enough to overcome the plain language of Rule 1.9" and accordingly disqualified the attorney. Id. at 760. The same holds true here.

Thus, had Plaintiffs continued to proffer Schwarz as an expert witness, there is no doubt that he would have been disqualified. However, since G&B "de-designated" him as an expert witness, no order of disqualification need be entered at this point. But, as noted above, that does not end the analysis with respect to this egregious ethical violation.

## II. THE SAME ETHICAL PRINCIPLES DISREGARDED IN THE RETENTION OF SCHWARCZ LIKEWISE MANDATE THE DISQUALIFICATION OF G&B AS COUNSEL FOR PLAINTIFFS

It is well-settled that, if an attorney has been disqualified from representing a party because of an ethical violation, his or her entire firm is also disqualified under the rule of vicarious disqualification. Edwards v. Gould Paper Corp. Long Disability Plan, 352 F. Supp. 2d 376, 381 (E.D.N.Y. 2005) ("It is well settled that the knowledge of a single attorney within a firm is to be imputed to the entire firm."); accord Hamrick, 79 F. Supp. 2d at 877. As the Supreme Court of Ohio held in Kala v. Aluminum Smelting & Refining Co., 688 N.E.2d 258 (Ohio Sup. Ct. 1998), the same rule of "vicarious disqualification" applies where an attorney "switches sides" by associating with a law firm that represents an adversary of the attorney's former client. Specifically, if there is a violation of Ohio Rule 1.9, the entire new firm should be disqualified from the offending representation.[11] Applying these well settled principles to the circumstances presented here, it is clear that the ethical violation committed in the retention of Schwarcz should be imputed to G&B and it should likewise be disqualified from representing any party to these proceedings.

---

[11] See Ohio Prof. Cond. Rule 1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when the lawyer knows or reasonably should know that any one of them practicing alone would be prohibited from doing so by Rule 1.7 or 1.9. . . .").

15

A.    **G&B is Vicariously Disqualified Under the Imputation Rules Established in the Supreme Court of Ohio's Decision in Kala**

In <u>Kala</u>, the Supreme Court of Ohio laid out the circumstances under which "vicarious disqualification" will apply, <u>i.e.</u>, where the disqualification of a single attorney will be imputed to an entire firm. As the <u>Kala</u> court noted, the principle of vicarious disqualification aims to preserve the integrity of the attorney-client relationship, and, in particular, the attorney-client privilege and the duty of confidentiality.

> Because of the importance of these ethical principles, it is the court's duty to safeguard the preservation of the attorney-client relationship. In so doing, a court helps to maintain public confidence in the legal profession and assists in protecting the integrity of the judicial proceeding.

<u>Id.</u> at 262 (internal citations omitted). As a different court put it in applying the same principle, when an attorney "switches sides," the integrity of the attorney-client relationship is impugned:

> At the heart of every "side-switching attorney" case is the suspicion that by changing sides, the attorney has breached a duty of fidelity and loyalty to a former client, a client who had freely shared with the attorney secrets and confidences with the expectation that they would be disclosed to no one else. It is for this reason that the "appearance of impropriety doctrine" was adopted to protect the public, our profession, and those it serves. In short this much maligned doctrine exists to engender, protect and preserve the trust and confidence of clients.

<u>Cardona v. Gen. Motors Corp.</u>, 942 F. Supp. 968, 975 (D.N.J. 1996).

Thus, in <u>Kala</u>, the Ohio Supreme Court established a tri-partite inquiry to determine whether an attorney's disqualification should be imputed to a firm in a "side-switching" case. First, the court should determine whether there is "a substantial relationship between the matter at issue and the matter of the former firm's prior representation." 688 N.E.2d at 268. In this case, as discussed above, there is no doubt that there is a "substantial relationship" between Schwarcz's prior representation of Credit Suisse in NCFE-related matters and his

16

retention as an expert witness by G&B. Indeed, he worked for Credit Suisse on the very transactions that G&B has claimed form the fraud in this case. See supra at 6.

The second Kala step is to determine "whether the attorney shared in the confidences and representation of the prior matter." 688 N.E.2d at 265. There is a presumption that the attorney did in fact share in the confidences of the former client. Id. at 265-66. Again, in this case, there can be no real doubt about this issue – Schwarcz was the billing partner in charge of the representation of Credit Suisse. It is beyond peradventure that he was privy to Credit Suisse's confidences when he participated in its representation; in any event, there is certainly nothing on the record to rebut the presumption that he was. As the Kala court continued, if there is no evidence to rebut the presumption of shared confidences at the old firm, as herein, then the presumption arises that the attorney has also shared the client confidences with the new firm. Id. Thus, here, it should be presumed that Schwarcz shared Credit Suisse's confidences with G&B.

Finally, the third part of the inquiry is whether the law firm can rebut the presumption of shared confidences through the erection of "adequate and timely screens," walling off the tainted attorney from the remainder of the firm. Id. at 268. Here, where G&B claims that it only learned about the ethical violation at Schwarcz's deposition after he had spent nearly fifty hours on the matter and prepared an expert report against Credit Suisse, it is beyond dispute that G&B implemented no screening measures whatsoever.

Thus, all three prongs of the Kala test are established here. Accordingly, Schwarcz's disqualification under Ohio Rule 1.9 should be imputed to G&B, and the firm should be precluded from representing any parties in these actions. Id. at 266; see also Hamrick, 79 F. Supp. 2d at 877 (disqualifying law firm where plaintiff failed to rebut presumption of shared

confidences by "failing to produce any evidence to show that a 'Chinese wall' has been erected by GL & J in this action").

**B.** **The Fact that Schwarcz Served as an Expert Witness Retained by G&B, as Opposed to Being Employed by G&B, Does Not Change the Kala Analysis**

Plaintiffs may claim that because G&B retained Schwarcz as an expert witness, rather than as an employee or partner, the Kala rule of imputed disqualification should not apply. However, there is no principled basis to limit imputation in this manner. Indeed, at least one court, applying a Texas standard nearly identical to the one articulated in Kala, has disqualified a law firm that chose to retain, as an expert witness, an individual possessing confidential information regarding an adversary. See In re Bell Helicopter Textron, 87 S.W.3d 139, 151 (Tex. Ct. App. 2002) (disqualifying law firm for hiring adversary's former non-attorney employee as a consulting expert witness).

As the Supreme Court of Ohio made crystal clear in Kala, the rationale behind the rules of imputation and vicarious disqualification are to preserve the integrity of the attorney-client relationship, and eliminate the sharing, or even the opportunity for sharing, of former client confidences. 688 N.E.2d at 261-63. Here, where G&B claims to have had no inkling that Schwarcz worked for Credit Suisse on the very transactions at issue in this litigation, where Schwarz worked for nearly 50 hours on a project that was adverse to Credit Suisse's interest, involving significant conversations with G&B attorneys, and where Schwarz prepared and served an expert report specifically intended to support the imposition of liability on his former client, the mere fact that he did not formally associate with G&B as an employee or partner provides no justification for disregarding the Kala rules of disqualification.

Analogous circumstances were presented in ARJ Trucking, Inc. v. Emery Worldwide, No. 30 62 00, 1992 WL 189367 (Conn. Super. July 29, 1992). In that case, an

18

attorney who had formerly represented the defendant submitted an affidavit on behalf of the plaintiff, to the former client's disadvantage. Id. The court found that the attorney's statements in the affidavit were improper under Rules 1.6 and 1.9 of the Connecticut Rules of Professional Conduct (equivalent to the Model Rules) and accordingly struck the affidavit. Id. at *2. Concluding that the attorney was clearly privy to the confidences of his former client, the court found the opportunity for disclosure of such confidences existed when the attorney's statements were taken by the plaintiff's lawyers. Id. at *3. Applying a Kala-like test, the court further held that "[i]t must be presumed that McCauley disclosed confidences of his former client regarding this matter to Cohen and Wolf" and disqualified plaintiff's counsel. Id. The submission of the affidavit by the attorney in ARJ Trucking in opposition to the interests of his former client was no different than Schwarcz's submission of his expert report here, and, as in ARJ Trucking, the same result should obtain – the firm that solicited the confidential information should be disqualified.

Indeed, imputed disqualification can occur, and should occur, whenever an attorney or firm has improper access to confidential or privileged information of the attorney's adversary, and thus there is the opportunity for the sharing of a client's confidences, regardless of whether the facts conform to Kala. Indeed, these imputation principles have even been extended to circumstances where a law firm has contact with non-attorneys in possession of confidential information regarding an adversary. See, e.g., MMR/Wallace Power & Indus., Inc. v. Thames Assocs., 764 F. Supp. 712, 723-28 (D. Conn. 1991) (disqualifying law firm for hiring adversary's former office manager as trial consultant); Cordy v. Sherwin-Williams Co., 156 F.R.D. 575, 582 (D.N.J. 1994) (disqualifying law firm for hiring adversary's former non-attorney expert); Am. Prot. Ins. Co. v. MGM Grand Hotel-Las Vegas, Inc., No. CV-LV-82-26, 1986 WL

19

57464 (D. Nev. Mar. 13, 1986) (disqualifying law firm in light of contacts with former non-attorney employee of adversary); Best W. Int'l v. CSI Int'l Corp., No. 94 Civ. 0360, 1995 WL 505565, at *1 (S.D.N.Y. Aug. 25, 1995) (disqualifying law firm because it agreed to represent former non-attorney employee of adversary at her deposition); Rentclub, Inc. v. Transamerica Rental Fin. Corp., 43 F.3d 1439, 1439 (11th Cir. 1995) (affirming disqualification of law firm due to appearance of impropriety arising from firm's payment of money to adversary's former non-attorney employee); United States v. SAE Civil Constr., Inc., No. CV95-3058, 1996 WL 148521, at *4 (D. Neb. Jan. 29, 1996) (disqualifying law firm because it engaged adversary's former non-attorney employee as a trial consultant). Here, where G&B had unfettered access to and communications with Credit Suisse's former attorney regarding matters substantially related to the former representation, disqualification of G&B is required regardless of the nature of Schwarcz's relationship with the firm.[12]

### III. CREDIT SUISSE IS ENTITLED TO BE REIMBURSED FOR ALL EXPENSES ASSOCIATED WITH G&B'S IMPROPER RETENTION OF SCHWARCZ, INCLUDING THE COSTS AND EXPENSES INCURRED IN MAKING THIS MOTION

G&B has implicitly conceded that the retention of Schwarcz was improper. See supra at 10. Accordingly, regardless of how the Court rules on the motion to disqualify G&B,

---

[12]    Certain courts, in cases involving very different facts, have held that the rules of vicarious liability should not apply to disqualify a law firm that hires an attorney as an expert witness against his or her former client. See N. Pacifica, LLC v. City of Pacifica, 335 F. Supp. 2d 1045, 1050 (N.D. Cal. 2004); Plumley v. Dough Mockett & Co., No. CV 04-2868, 2008 WL 5382269, at *4 (C.D. Cal. Dec. 22, 2008); Remtech, Inc. v. Fireman's Fund Ins. Co., No. CV-05-0087, 2006 WL 5157646, at *2 (E.D. Wash. June 5, 2006). However, the representation of the former client in each of these cases was de minimis in scope and/or unrelated to the expert witness representation. North Pacifica, 335 F. Supp. 2d at 1052; Plumley, 2008 WL 5382269 at *4; Remtech, 2006 WL 5157646 at *1. These decisions are not applicable or persuasive here where: (1) Schwarcz represented Credit Suisse extensively in the very transactions at issue in this litigation; and (2) he had unrestricted communications with G&B for at least six months before he was "de-designated."

Credit Suisse should be reimbursed for all the expenses incurred with respect to the designation and "de-designation" of Schwarcz as an expert witness. See, e.g., Beam Sys., Inc. v. Checkpoint Sys., Inc., No. CV 95-4068, 1997 WL 423113, at *9 (C.D. Cal. Jul. 16, 1997) (disqualifying plaintiffs' improperly designated expert and granting attorneys' fees and expenses incurred as a result of plaintiffs' improper designation). In response to the improper designation of Schwarcz, Credit Suisse was required to: (1) review his report; (2) review documents related to his retention by Credit Suisse; (3) prepare for his deposition, not only on his prior retention by Credit Suisse, but on the substantive merits of his expert report; and (4) travel to Texas for his deposition. The expenses and attorneys' fees associated with all of those activities should be awarded to Credit Suisse, even if the Court ultimately concludes that G&B should not be disqualified. See id.

In addition, Credit Suisse is entitled to its reasonable costs in connection with the instant motion. Kaiser v. Am. Tel. & Tel., No. CIV 000-724, 2002 WL 1362054, at *9 (D. Ariz. Apr. 5, 2002) (granting defendant's motion to disqualify plaintiff's counsel plus attorneys' fees and costs incurred in investigating the ethical violation); Hood v. Midwest Sav. Bank, No. C2-97-218, 2001 WL 327723, at *5 (S.D. Ohio Mar. 22, 2001) (motion disqualifying counsel granted and disqualified attorney ordered to show cause as to why he should not satisfy personally attorneys' fees and costs reasonably incurred by defendant in preparation of its motion to disqualify and its reply memorandum).

21

## CONCLUSION

For the foregoing reasons, Credit Suisse's motion to disqualify G&B as counsel for Plaintiffs should be granted and Credit Suisse should be awarded costs and attorneys' fees in connection with the designation and "de-designation" of Schwarcz as an expert witness, and costs and attorneys' fees in connection with the instant motion.

Dated:   Columbus, Ohio
         January 27, 2009

Respectfully submitted,

BAKER & HOSTETLER LLP

By:   s/ Thomas L. Long
       Thomas L. Long (0023127)
       Sherri B. Lazear (0030546)
Capitol Square
65 East State Street, Suite 2100
Columbus, Ohio 43215
Tel: (614) 228-1541

   -and-

McKEE NELSON LLP
Jeffrey Q. Smith (JS-7435)
Steven G. Brody (SB-6859)
Susan F. DiCicco (SD-8013)
One Battery Park Plaza
New York, New York 10004
Tel: (917) 777-4200

Attorneys for:

Credit Suisse Securities (USA) LLC and
Credit Suisse, New York Branch

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>NATIONAL CENTURY FINANCIAL<br>ENTERPRISES, INC. FINANCIAL<br>INVESTMENT LITIGATION. | Case No. 2:03-md-01565<br>Judge James L. Graham<br>Magistrate Judge Mark R. Abel |

| | |
|---|---|
| THE UNENCUMBERED ASSETS<br>TRUST, *et ano.*,<br><br>                         Plaintiffs,<br><br>      -against-<br><br>JP MORGAN CHASE BANK, *et al.*,<br><br>      Defendants. | Case No. 04-cv-1090<br>Judge James L. Graham<br>Magistrate Judge Mark R. Abel |

**AFFIDAVIT OF GILLIAN I. EPSTEIN IN SUPPORT
OF MOTION BY DEFENDANT CREDIT SUISSE TO
DISQUALIFY GIBBS & BRUNS LLP AS COUNSEL
FOR PLAINTIFFS AND TO OBTAIN ANCILLARY RELIEF**

STATE OF NEW YORK     )
                             ) ss.:
COUNTY OF NEW YORK   )

      1.     I am an attorney with the law firm of McKee Nelson LLP ("McKee Nelson"),

counsel for defendant Credit Suisse Securities (USA) LLC, formerly known as Credit Suisse

First Boston LLC ("Credit Suisse"). I submit this affidavit in support of the Motion by

Defendant Credit Suisse to Disqualify Gibbs & Bruns LLP ("G&B") as Counsel for Plaintiffs

and to obtain ancillary relief. I have personal knowledge of the matters stated herein unless

otherwise indicated.

      2.     Credit Suisse is a defendant in three separate lawsuits in the District of Arizona,

which are consolidated for discovery (along with other cases) before this Court in the above-

captioned MDL: <u>City of Chandler, et al. v. Bank One, N.A., et al.</u>, 03-cv-1220; <u>State of Arizona, et al. v. Credit Suisse First Boston Corp., et al.</u>, 03-cv-1618; and <u>Crown Cork & Seal Company, Inc. Master Retirement Trust, et al. v. Credit Suisse First Boston Corp. et al.</u>, 03-cv-2084 (collectively, the "Arizona Complaints"). Credit Suisse is also a defendant in the Southern District of Ohio in <u>Unencumbered Assets Trust, et al. v. JP Morgan Chase Bank, et al.</u>, 04-cv-1090 (the "UAT Complaint"). The plaintiffs in the Arizona Complaints and the UAT Complaint will be referred to collectively as "Plaintiffs."

3.     At a telephonic hearing held before Magistrate Judge Abel on December 16, 2008, Counsel for Plaintiffs stated that G&B first approached Steven L. Schwarcz ("Schwarcz") in connection with this matter when the UAT action against Kaye Scholer LLP ("Kaye Scholer") was pending, but concluded that it could not retain Schwarcz due to the pendency of the case. Counsel for Plaintiffs further stated that subsequently, after the UAT had settled with Kaye Scholer, G&B again approached Schwarcz and procured his services as an expert for Plaintiffs here.

4.     Annexed as **Exhibit A** hereto is a true and correct copy of Appendix A to the Expert Report of Steven L. Schwarcz ("Schwarcz Report").

5.     Annexed as **Exhibit B** hereto is a true and correct copy of a Kaye Scholer New Client/Matter Form dated December 1, 1995, produced as KS-2004-0003398 and previously marked as Schwarcz Ex. 11.

6.     Annexed as **Exhibit C** hereto is a true and correct copy of a Supplemental Declaration of Lester M. Kirshenbaum (supplementing the Declaration of Lester M. Kirshenbaum in Support of Application of Official NPF VI Noteholders' Subcommittee to Retain Kaye Scholer LLP as Co-Counsel), dated December 18, 2003 and previously marked as O'Connell Ex. 15 in the Bankruptcy Rule 2004 proceeding.

2

7. Annexed as **Exhibit D** hereto is a true and correct copy of an undated document listing NCFE note offerings, produced as CS-MDL-00199120 and previously marked as Richter Ex. 11.

8. Annexed as **Exhibit E** hereto is a true and correct copy of excerpts from the deposition transcript of Edward J. O'Connell, a former partner at Kaye Scholer, in the Bankruptcy Rule 2004 Bankruptcy, dated November 3, 2004.

9. Annexed as **Exhibit F** hereto is a true and correct copy of excerpts from the deposition transcript of Edward J. O'Connell, dated July 18, 2008.

10. Annexed as **Exhibit G** hereto is a true and correct copy of the deposition transcript of Schwarcz, an expert witness for Plaintiffs, dated December 16, 2008.

11. Annexed as **Exhibit H** hereto is a true and correct copy of a Kaye Scholer 10b-5 opinion for NPF VI 1995-2 excerpted from a closing binder for NPF VI 1995-2, produced as PS0381-1640–1641 and previously marked as Schwarcz Ex. 12.

12. Annexed as **Exhibit I** hereto is a true and correct copy of excerpts from the Expert Report of Professor Bernard S. Black.

13. Annexed as **Exhibit J** hereto is a true and correct copy of a Kaye Scholer invoice dated November 14, 1996, produced as KS-2004-0080429–35 and previously marked as Schwarcz Ex. 9.

14. Annexed as **Exhibit K** hereto is a true and correct copy of a Kaye Scholer New Client/Matter Form dated February 21, 1996, produced as KS 26571–77 and previously marked Schwarcz Ex. 4.

15. Annexed as **Exhibit L** hereto are true and correct copies of Kaye Scholer invoices, dated March 12, 1996 & July 31, 1996, produced as KS 26563–64 and KS 26566–67 respectively and previously marked as Schwarcz Exs. 6 & 7.

3

16.     Annexed as **Exhibit M** hereto are true and correct copies of excerpts from Confidential Information Memoranda, dated June 1998 & May/June 2000, produced as LL_004966, 5030, & LL_005101, 5161 respectively and previously marked as Vespasiano Exs. 29 & 42.

17.     Annexed as **Exhibit N** hereto is a true and correct copy of the Schwarcz Report.

*Gillian Epstein*

GILLIAN I. EPSTEIN

Sworn to and subscribed before me
this 27th day of January 2009.

*Janice C. Haughton*

Notary Public
My Commission Expires:

JANICE C. HAUGHTON
**Notary** Public, State of New York
No. 01FO5005109
**Qualified** in King County
**Commission Expires November 30,** 2010

4

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2009, a true and correct copy of the foregoing Motion by Defendant Credit Suisse to Disqualify Gibbs & Bruns LLP as Counsel for Plaintiffs and to Obtain Ancillary Relief and the Affidavit of Gillian I. Epstein in Support of same (with attached exhibits) were served via the Court's CM/ECF system.

/s/ Gillian I. Epstein