IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

In re: National Century Financial      :
Enterprises, Inc. Financial Investment
Litigation                                :      Case No. 2:03-md-1565

                                          :      Judge James L.  Graham

                                          :      Magistrate Judge Abel

                                          :

**Order**

This matter is before the Court on Credit Suisse Securities (USA) LLC and Credit Suisse, New York Branch's ("Credit Suisse") July 30, 2009 objection to the Magistrate Judge's July 16, 2009 Order (doc. 1667).

## I.    Background

The Magistrate Judge partially granted Credit Suisse's December 29, 2008 omnibus motion for sanctions against certain plaintiffs for discovery abuses (doc. 1445). The Magistrate Judge's Order stated:

> . . . With respect to the passive corporate investors, absent a showing of good cause for the failure to timely produce, plaintiffs may not affirmatively use any document that was not produced before the deposition of the deponents who had knowledge of the document and they may not affirmatively use any document that was not produced before the deadline for completing all discovery.
>      With respect to plaintiffs  SanPaolo, PIMCO, III Finance, Alliance Capital Management plaintiffs, Lincoln Capital Management, United of Omaha and Credit Suisse's claims of spoliation of evidence, I conclude that Credit Suisse may proffer evidence at trial that it believes would give

rise to an adverse inference and entitle it to an adverse inference jury
instruction.

       With respect to plaintiffs PIMCO, Ambac, Ofivalmo, GMO, I
conclude that, absent a showing of good cause for the failure to timely
produce documents, plaintiffs may not affirmatively use any document
that was not produced before the deadline for completing all discovery.  If
Credit Suisse believes their conduct gives rise to an inference that these
plaintiffs knowingly withheld production, it is free to make a proffer at
trial.


## II.      Arguments of the Parties

### A.     Credit Suisse

Credit Suisse argues that the Arizona Plaintiffs have engaged in discovery

abuses that have fundamentally compromised the integrity of the discovery process in

this action. Although the Magistrate Judge acknowledged that the Arizona plaintiffs

engaged in such misconduct, Credit Suisse argues that he failed to impose any

meaningful sanctions upon them. As a result, Credit Suisse maintains that the

Magistrate Judge has rewarded plaintiffs for their misconduct and further prejudiced

Credit Suisse. Credit Suisse also argues that the Magistrate Judge erroneously and

unjustly shifted the burden of proof on it, the aggrieved party.

Credit Suisse maintain that the plaintiffs' misconduct began when discovery

opened and continued after the close of discovery. Plaintiffs early on began dumping

documents on Credit Suisse on the eve of a deposition. After Credit Suisse challenged

this practice, the Court issued an order requiring plaintiffs to produce any additional

documents at least five days prior to the relevant deposition dates. According to Credit

Suisse, plaintiffs disregarded that order.

Credit Suisse maintains that its motion for sanctions demonstrated that:

1.    Plaintiffs learned about improper practices at NCFE, and anticipated litigation against Credit Suisse as early as October 2002, as evidenced by Plaintiffs' documents and privilege log entries from that time.

2.    Only one plaintiff claims to have implemented a litigation preservation hold at that time,[1] and that plaintiff (PIMCO) badly botched the effort.

3.    In September 2007, Plaintiffs represented to the Court that their document production was largely complete. But Plaintiffs went on to produce thousands of pages of documents after that time.

4.    Plaintiffs' document productions continued through February 17, 2009 (six months after the discovery cutoff), and Plaintiffs have still not responded to Credit Suisse's inquiry as to whether their document production is complete.

5.    Plaintiffs' searches for responsive documents were obviously inadequate, as demonstrated by the fact that every time Credit Suisse challenged the completeness of their document production, including in the Sanctions Motion, Plaintiffs produced more documents.

6.    211 plaintiffs had not produced a single piece of paper prior to the filing of the Motion (five of those plaintiffs for the first time produced a few documents as part of Plaintiffs' Opposition). Thus, as of this time, 206 plaintiffs still have not produced any documents

---

[1] According to Credit Suisse, the only other evidence of a litigation hold is plaintiffs' outside counsel's representation to Credit Suisse that they issued their clients a litigation hold on April 25, 2003, almost six months after these plaintiffs started contemplating litigation against Credit Suisse. Credit Suisse maintains not one of these plaintiffs has produced any document retention notice from either October 2002 or April 2003.

in this case. Credit Suisse never relieved any Plaintiff of its obligation to comply with the requirements of its first request for the production of documents, which included producing account statements and other transaction documents that Plaintiffs admit they possess but have not produced.

7.     Most Plaintiffs did not produce their privilege logs until June 2008 after Credit Suisse repeatedly demanded that they do so, and most of their privilege logs were wholly inadequate and not in compliance with the Federal Rules or the Local Civil Rules of the Southern District of Ohio until Credit Suisse demanded that they revise them.

8.     Plaintiffs improperly withheld hundreds of documents as privileged, even though these documents included no legal advice, no communication with an attorney or anything else to indicate that the document might remotely be privileged, and only produced these documents after Credit Suisse challenged their privilege claims.

Credit Suisse argues that although the Magistrate Judge concluded that plaintiffs failed to properly implement a litigation hold, he failed to impose any meaningful sanction for this failure.   Credit Suisse also argues that plaintiffs should bear the burden of showing that their failure to properly implement a litigation hold was harmless.  Credit Suisse maintains that the Magistrate Judge erroneously concluded that Credit Suisse had somehow limited its first document request to plaintiffs, which requested account statements, trade tickets, and other similar documents that would be possessed by all plaintiffs, including passive investors. Credit Suisse further argues that the Magistrate Judge applied the incorrect legal standard for awarding an adverse inference sanction.

San Paolo. Credit Suisse argues that SanPaolo's claims against Credit Suisse should be dismissed. SanPaolo asserts a $25 million claim against Credit Suisse, but it has not produced a single document related to its numerous purchases of NPF notes. SanPaolo claims its file concerning the NPF notes was lost, and the Magistrate Judge failed to impose any sanctions for its failure to preserve and produce any documents because they were not deliberately destroyed. Credit Suisse argues that the a showing of deliberate conduct was not necessary, and SanPaolo's claims should be dismissed. At a minimum, Credit Suisse maintains that it is entitled to the inference that SanPaolo's files would have been unfavorable to its claim that it relied on Credit Suisse in purchasing the NPF notes.

Ofivalmo. Credit Suisse also argues that Ofivalmo's belated and selective production of audio-taped conversations should be excluded. A year after Credit Suisse first requested that Ofivalmo produce audio-taped conversations, Ofivalmo finally produced them on the last day of discovery. Credit Suisse contends that it has been severely prejudiced by the Magistrate Judge's decision to allow the tapes into evidence. The audio-taped conversations are the centerpiece of Ofilvalmo's argument that it relied upon Credit Suisse in deciding to purchase the NPF notes, but Credit Suisse had no opportunity to examine Ofivalmo's witnesses on these conversations because they were not disclosed until the last day of discovery. Credit Suisse maintains that it never learned whether all of the relevant audio tapes were produced because plaintiffs never explained Ofivalmo's retention policies concerning audio tapes.

PIMCO. According to Credit Suisse, PIMCO's pattern of discovery misconduct
warrants additional sanctions. Credit Suisse maintains that PIMCO failed to properly
implement a litigation hold and preserve relevant documentation. PIMCO also
produced hundreds of pages of documents after the close of discovery. Credit Suisse
argues that it is entitled to sanctions for PIMCO's failure to preserve Thurston's notes.
Thurston destroyed his notes after PIMCO reasonably anticipated litigation and after
PIMCO attempted to implement a litigation hold. The Magistrate Judge declined to
award sanctions because PIMCO was not obligated to maintain "every piece of paper"
and Credit Suisse had not demonstrated that the notes would have been favorable.
Credit Suisse argues that this improperly shifted the burden of proof from the
wrongdoer to the victim of the wrongdoing.  Credit Suisse maintains that when an
employee of a party destroys a document after a litigation hold should have been
communicated to that employee, that party is guilty of a willful spoliation. Under these
circumstances, the relevance of the destroyed document is presumed, and sanctions are
appropriate.  Credit Suisse further argues that it has demonstrated that the notes were
favorable and not simply relevant. The notes were made during conversations with Dan
Ivascyn, a key witness who professed that he could not remember many important
details concerning PIMCO's investments in the NPF notes. Contemporaneous
documents demonstrate that internal finger pointing at PIMCO in the wake of the
NCFE collapse.

Credit Suisse also argues that PIMCO's documents produced after the close of discovery also merit sanctions and that the Magistrate Judge erroneously concluded that the late produced emails had little or no relevance to whether PIMCO was at fault. PIMCO's Bill Powers called the NPF notes "sink holes" and stated that they "made no sense for PIMCO portfolios" because they were "poor quality" and had "questionable character quality of management." MDL D.E. 1445 (App. 2 at PMCo 003310). A private bond investor questioned PIMCO's level of diligence when he asked "how is that guys who were trading $500 blocks of a penny stock knew more than PIMCO analysts?" *Id.* at PMCo 030521. Another late-produced email raised concerns the "inability of [PIMCO'] process/internal controls to catch and rectify the size of" its position in NPF notes. *Id.* at PMCo 036466.  Credit Suisse says that the unavailability of these documents during the depositions of PIMCO's witnesses was prejudicial. In order to remedy that prejudice, Credit Suisse maintains that the Court should deem established the fact that PIMCO's diligence concerning the NPF note purchases was negligent.

Ambac and GMO. Finally, Credit Suisse argues further sanctions should be awarded to Credit Suisse for Ambac and GMO's belated document production.  The Magistrate Judge found that Ambac and GMO failed to explain their late document productions and to provide timely privilege logs and prohibited Ambac from affirmatively using Barlow's handwritten notes produced after discovery ended. Credit Suisse maintains that this relief is illusory because the notes are unfavorable to Ambac.

Credit Suisse further argues that it was prejudiced by the unavailability of the email belatedly produced by GMO in which a GMO investor expressed his anger over the NPF investment. In response, GMO stated that the fraud by NCFE's employees was not anticipated by GMO, the rating agencies, the auditors, JP Morgan, "or the investment bank CSFB (who also owns a large amount of this debt in their investment accounts)." Credit Suisse maintains that it would have used this email with GMO's Rule 30(b)(6) witnesses, Janet Braggs and Tom Cooper to pursue lines of questioning concerning whether GMO adequately analyzed their investments in the NPF notes and if its disclosures to investors about its diligence process were accurate.

Credit Suisse argues that Ambac and GMO should suffer consequences for their unexplained failure to timely produce relevant documents that it would have used to test plaintiffs' arguments. Although Credit Suisse maintains that dismissal of plaintiffs' claims is appropriate under the circumstances, in the alternative, Credit Suisse seeks that certain facts be deemed admitted, which include that Ambac relied on other entities than Credit Suisse in deciding to hold its NPF notes and that GMO admitted that Credit Suisse was also defrauded by NCFE. Credit Suisse also seeks the dismissal of all of Ambac's "holder" claims, an award of attorneys' fees and costs for taking the depositions of Ambac's Diane Barlow and all the GMO witnesses without benefit of all the relevant documents, and an award of attorneys' fees and costs of bringing the motion and objections to the Magistrate Judge's order. Credit Suisse also argues that the Court should impose significant monetary sanctions on plaintiffs for their misconduct.

### B.      The Arizona Plaintiffs

The Arizona plaintiffs maintain that the Magistrate Judge found no bad faith discovery conduct by any plaintiff or any instance in which Credit Suisse has been prejudiced. The Magistrate Judge also noted numerous instances where Credit Suisse failed to establish that the purported documents that it complains were destroyed ever existed at all.  The Magistrate Judge also noted instances where Credit Suisse mischaracterized the record. For instance Credit Suisse maintains that 211 of 230 plaintiffs failed to participate in discovery. The vast majority of the plaintiffs who Credit Suisse challenges produced documents from their advisors and had no other responsive documents. Credit Suisse also ignored the limits it placed on its document requests when making this assertion.

The plaintiffs acknowledge that the Magistrate Judge was disappointed with aspects of plaintiffs' discovery, but maintain that he properly tailored sanctions as to those instances.  Plaintiffs state that the Magistrate Judge's factual findings should not be overturned or modified unless they are clearly erroneous, and his findings are afforded considerable deference. Similarly, the Magistrate Judge's legal findings should not be disturbed unless they are contrary to law. According to plaintiffs, the Sixth Circuit affords courts broad discretion in deciding whether to impose discovery sanctions and the propriety of sanctions must be determined on the facts of each specific case.

Plaintiffs maintain that the Magistrate Judge properly dealt with Credit Suisse's numerous and repetitive assertions that plaintiffs improperly failed to preserve and produce documents. The Magistrate Judge concluded that the sanctions of dismissal and claim preclusion were not appropriate because he did not find that plaintiffs failed to preserve documents relevant to a disputed material fact.  He did permit, however, Credit Suisse to make a proffer at trial if it believe the evidence warranted an adverse inference regarding the preservation of documents.

The Arizona plaintiffs also argue that Credit Suisse's allegations that they destroyed evidence are not supported by any evidence. A party seeking a spoliation instruction must demonstrate that the documents did in fact exist at one time, and plaintiffs believe that Credit Suisse has not met this burden.  Plaintiffs maintain that the Magistrate Judge applied the correct legal standard when he declined to grant Credit Suisse's request for adverse inference instruction, and it was within his discretion to not impose such instruction. According to plaintiffs, a court has discretion to deny a request for sanctions even when the court finds that all the elements entitling a party an adverse inference has been met. The Magistrate Judge clearly stated that the imposition of an adverse inference instruction did not require proof of bad faith conduct.

Plaintiffs further argue that Credit Suisse for the first time describes, in its objection to the Magistrate Judge's Order, depositions it purportedly would have taken and topics it would have explored had the GMO emails been received earlier. The

Magistrate Judge had noted that Credit Suisse never identified what discovery it had been deprived of by virtue of GMO and Ambac's alleged abuses.

Plaintiffs maintain that the Magistrate Judge's decision not to award monetary sanctions against plaintiff was not clearly erroneous or contrary to law. Although the Magistrate Judge granted Credit Suisse's motion in part, he rejected the main thrusts of its motion.

### III.    Discussion

Credit Suisse maintains that the Magistrate Judge applied the incorrect legal standard for awarding an adverse inference sanction. The Magistrate Judge stated that any adverse inference from spoliation is based on the spoliator's mental state and that in general, a court will not impose an adverse inference absent bad faith. The Magistrate Judge, however, also noted case law supporting the proposition that an adverse inference may be appropriate for the negligent destruction of evidence.

### A.    Failure to Produce Documents

Credit Suisse maintains that 211 of the 230 Arizona plaintiffs failed to produce any documents in response to its August 31, 2007 First Request for Production of Documents or its April 25, 2008 Second Request for Production of Documents.  Credit Suisse argues that the Magistrate Judge erroneously concluded that it had somehow limited its first document request to plaintiffs.

In its December 29, 2008 motion for sanctions, Credit Suisse argued that it had no way to assess the Arizona plaintiffs' internal communications regarding the information plaintiffs were receiving from their investment advisors about NCFE and who they thought was to blame for its collapse. Credit Suisse also maintains that it cannot assess what plaintiffs were told about significant developments in the NPF programs by the investment advisors, the diligence and analysis that the investment advisors performed prior to purchasing NPF Notes, or the investment advisors' post-default analysis of what went wrong with NCFE. Credit Suisse has not identified which specific document requests from its discovery requests would have provided the information that Credit Suisse seeks. Furthermore, other than stating that it received no documents, Credit Suisse does not state how each particular plaintiff responded to the request and the basis for its failure to produce documents. Credit Suisse also does not appear to have filed a motion to compel in an effort to obtain the documents it claims it was denied.

Plaintiffs assert that they produced all the documents responsive to the requests from the files of their investment advisors and that they had no other responsive documents. Plaintiffs also maintain that as passive investors in an investment pool, they had no relevant knowledge of the investment decision.

Under these circumstances, the sanction of dismissal is not warranted. When evaluating whether dismissal is an appropriate sanction, courts consider whether the party's failure is due to willfulness, bad faith, or fault; whether the adversary was prejudiced by the dismissed party's conduct; whether the dismissed

party was warned that failure to cooperate could lead to dismissal; and whether less drastic sanctions were imposed or considered before dismissal was ordered." *See U.S. v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) (quoting *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir.1999)). "Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct." *Id*. Dismissal for failing to cooperate in discovery is a "sanction of last resort that may be imposed only if the court concludes that a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault." *Patton v. Aerojet Ordnance Co.*, 765 F.2d 604, 607 (6th Cir. 1985).

Here, there is no evidence that plaintiffs have acted with willfulness, bad faith, or fault. Exhibit D to Credit Suisse's motion contains extensive correspondence between the parties with respect to the discovery requests.  The Court simply cannot conclude that the plaintiffs failed to cooperate in discovery. If Credit Suisse disagreed with plaintiffs' assertion that the they had produced everything that they were required to, Credit Suisse should have filed a motion to compel to challenge plaintiffs' position on their discovery obligations. Credit Suisse has not demonstrated that it was prejudiced by the dismissed party's conduct.  Furthermore, plaintiffs were not warned that failure to cooperate in discovery could lead to dismissal with respect to these discovery requests because Credit Suisse never sought assistance from the Court to resolve this dispute prior to filing its December 29, 2008 motion for sanctions. Similarly, less drastic sanctions were not imposed or considered prior to Credit Suisse's motion for sanctions

because Credit Suisse failed to bring this matter to the Court's attention until after the close of discovery.

### B.       Spoliation of Evidence

Credit Suisse also argues that some of the Arizona plaintiffs are guilty of spoliation of evidence either through their own actions or as a result of spoliation by their investment advisors. In large part, the spoliation argument is based on an asserted failure to timely implement a litigation hold and to preserve all documents relevant to the claims and defenses of the parties. Credit Suisse maintains that plaintiffs should have anticipated litigation in November 2002 when the NCFE fraud was first uncovered. On November 18, 2002, NCFE filed for bankruptcy protection. Thereafter, some of the largest Arizona Noteholder plaintiffs barred Credit Suisse from further service on the ad hoc creditors' committee because they were considering possible litigation against Credit Suisse. No later than April 2003, the Arizona Noteholder plaintiffs engaged Gibbs & Bruns L.L.P. as their outside litigation counsel. They filed suit on May 23 and October 9, 2003.

Credit Suisse maintains that the Magistrate Judge applied the wrong legal standard and that bad faith is not required for granting the adverse interest instruction requested by it. The Magistrate Judge acknowledged that some courts have concluded that an adverse inference is appropriate for the negligent destruction of evidence. *See* Order at p. 7. The Magistrate Judge also correctly stated that a party seeking a spoliation instruction must first demonstrate that the documents did in fact exist at one time. *See,*

*e.g., Otero v. Wood*, 316 F. Supp. 2d 612, 619 (S.D. Oh. 2004) *and Hadi v. State Farm Ins. Companies*, No. 2:07-cv-0060, 2008 WL 687166, at *3 (S.D. Oh. Mar. 11, 2008). The Court concludes that the Magistrate Judge's Order was neither clearly erroneous or contrary to law.

### 1.    SanPaolo

SanPaolo maintains that the documents at issue were misplaced months before NCFE filed for bankruptcy. In the spring of 2002, the files were shipped to Naples, Italy in anticipation of the Banco di Napoli and SanPaolo merger. The merger occurred in December 2002. Following the merger, the files were sent to Turin, Italy where SanPaolo had its headquarters. At the time it initiated this lawsuit, SanPaolo maintains that it conducted an intensive search for the NCFE investment files. SanPaolo believes that the files were misplaced in transit when they were shipped to Italy in March 2002.

The Magistrate Judge concluded that there was no evidence suggesting that the SanPaolo's files were deliberately destroyed and that sanctions were not appropriate at this time. Credit Suisse was also permitted to raise this issue at trial and, if the evidence warrants, seek an adverse jury instruction at that time. Credit Suisse was also permitted to serve discovery requests on SanPaolo for information about its record keeping practices as they relate to the August 1998 purchases of NPF notes and the transfer of files to the Bank di Napoli. The Magistrate Judge's decision to impose limited sanctions on SanPaolo is neither clearly erroneous nor contrary to law.

### 2.    Ofivalmo

Credit Suisse argues that it has been severely prejudiced by the Magistrate

Judge's decision to allow Ofivalmo to use the audio-taped conversations to demonstrate

that it relied upon Credit Suisse in deciding to purchase the NPF notes because Credit

Suisse had no opportunity to examine Ofivalmo's witnesses on these conversations

because they were not disclosed until the last day of discovery. Credit Suisse also

maintains that it never learned whether all of the relevant audio tapes were produced

because plaintiffs never explained Ofivalmo's retention policies concerning audio tapes.

The Magistrate Judge agreed with Credit Suisse that Ofivalmo should have

produced the tapes earlier, but he also concluded that Credit Suisse failed to

demonstrate it is entitled to the sanction of dismissal, claim bar, or facts deemed

admitted. The Magistrate Judge's order permitted Credit Suisse to serve discovery on

Ofivalmo regarding its record keeping system for the audio recordings, its retention

policies for them, and the efforts it took to preserve them and retrieve them for this

litigation. If Credit Suisse concluded that Ofivalmo's conduct gave rise to an inference

that it knowingly withheld production, it is free to make a proffer at trial. The

Magistrate Judge did not abuse his discretion in permitting Credit Suisse to serve

additional discovery requests and raise this issue again before the trial court if it is

appropriate.  No further sanctions are warranted.

### 3.     PIMCO

The Magistrate Judge concluded that Credit Suisse failed to show that some of

the purported documents that it seeks actually existed at some point. It is incumbent on

the party seeking a spoliation instruction to demonstrate that the documents

did in fact exist at one time. *See, e.g., Otero v. Wood*, 316 F. Supp. 2d 612, 619 (S.D. Oh.

2004) and *Hadi v. State Farm Ins. Companies*, No. 2:07-cv-0060, 2008 WL 687166, at *3

(S.D.

Oh. Mar. 11, 2008).

With respect to the documents related to PIMCO's due diligence, the Magistrate

Judge concluded that Credit Suisse failed to present any evidence corroborating its

position that the missing notes would have been favorable to its case. The notes of

Powell Thurston were not likely to shed further light on the due diligence conducted by

PIMCO because Thurston was not involved in the decision to buy or sell NCFE

securities. Instead, Thurston was responsible for drafting a letter to PIMCO's clients

about the collapse of NCFE.  To prepare the letter, Thurston spoke with Dan Ivascyn,

the portfolio manager, concerning the NCFE investment.  The draft letter that resulted

from the conversation with Ivascyn was produced, and Credit Suisse questioned

Thurston regarding the letter during his deposition. Nothing in the record suggests that

the draft letter failed to contain the complete content of the missing notes.

With respect to the late-produced emails, the Magistrate Judge concluded that

the delay in producing the emails does not demonstrate that PIMCO deliberately

attempted to conceal the evidence during discovery.  Credit Suisse has shown that the

delay in producing these documents caused it prejudice.

### 4.      Ambac and GMO

Credit Suisse complains that it was prejudiced by the failure of Ambac to

produce the written notes of two of its employees, Nick Aloe and Diane Barlow. Aloe

introduced the NPF investment to Ambac in July 2001. Aloe's notes contain extensive,

detailed information he gathered about the structure of NPF program and NCFE. His

notes were used to create a presentation of the program to his superiors and Ambac's

Credit Committee. Credit Suisse received the typewritten presentation that was created

from the handwritten notes prior to deposing Aloe, and Credit Suisse has failed to

demonstrate how it was prejudiced by not having them sooner.  Barlow's notes were

inadvertently withheld as privileged, but they were produced when the error was

raised by counsel for Credit Suisse.  Credit Suisse has failed to show how it was

prejudiced by not having access to the notes prior to deposing Barlow.

GMO produced documents responsive to Credit Suisse's discovery requests two

weeks prior to the close of discovery.  The documents included an email from the co-

head of the Fixed Income Group and GMO acknowledging that GMO was the victim of

a massive fraud that was not anticipated by it or Credit Suisse.  Although the

Magistrate Judge noted that GMO failed to provide an adequate explanation for the

delay in producing these documents, the Magistrate Judge also noted Credit Suisse

failed to identify any discovery that it would have taken had it received the documents

earlier. As a result, the Magistrate Judge concluded that sanctioning GMO by deeming

certain facts admitted was not warranted under the circumstances.

**IV.     Conclusion**

Credit Suisse Securities (USA) LLC and Credit Suisse, New York Branch's

("Credit Suisse") July 30, 2009 objection to the Magistrate Judge's July 16, 2009 Order

(doc. 1667) is DENIED.


Date: March 5, 2010

<div align="center" style="float:right">

s/ James L. Graham
James L. Graham
United States District Judge

</div>