IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re National Century Financial Enterprises, Inc., Investment Litigation. | Case No. 2:03-md-01565<br>Judge James L. Graham |

UNITED STATES DISTRICT COURT – MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| Amedisys, Inc., et al.,<br><br>       Plaintiffs,<br><br>v.<br><br>JP Morgan Chase Bank, et al.,<br><br>       Defendants. | Case No. 3:03-cv-224<br>Judge Ralph E. Tyson |

**Opinion and Order**

Defendant JP Morgan Chase Bank, N.A. moves for summary judgment on all claims asserted by plaintiff Amedisys, Inc. in its complaint filed in Louisiana state court. These claims involve a dispute over $7.3 million worth of accounts receivable allegedly transferred from Amedisys to bank accounts owned by NPF VI, a subsidiary of National Century Financial Enterprises, Inc. ("National Century"), and held at JPMorgan. A similar dispute was litigated in Ohio bankruptcy court following the collapse of National Century, and it reached the Sixth Circuit on appeal. According to JPMorgan, the claims in the Louisiana lawsuit are barred by res judicata because Amedisys's rights *vis-à-vis* JPMorgan were resolved in the Ohio case. The court agrees and grants the motion for summary judgment.

I.     Background

   A.     Facts

In the relevant time frame of 1998 to 2002, Amedisys provided home healthcare nursing services to clients in southern and southeastern United States. Amedisys accumulated considerable accounts

receivable as it provided services and awaited payment on those services. In 1998, Amedisys contracted with NPF VI for the sale of its accounts receivable. This arrangement provided Amedisys with a dependable source of funding for its business operations.

National Century had the same arrangement with numerous healthcare providers. Bank accounts were established with JPMorgan to handle the collection and distribution of funds payable to the healthcare providers in contract with NPF VI.

Under the contract, known as the "Sale and Subservicing Agreement," Amedisys would send a list of itsreceivables on a weekly basis to National Century's servicer, National Premier Financial Services. The servicer would determine which receivables were eligible for purchase and would calculate a purchase price based on the net value of the receivables minus program and administrative fees, among other adjustments. The servicer would then instruct JPMorgan to pay the purchase price to Amedisys. NPF VI acquired ownership of the receivables once the purchase price was paid. See Sale and Subservicing Agreement, § 2.2(c).

Amedisys notified payors that payments were to be made to lockbox accounts at JPMorgan. These lockboxes were swept daily into a collection account held by NPF VI. Amedisys and NPF VI recognized that certain amounts swept into the collection account could relate to receivables other than the ones purchased by NPF VI. Under the Agreement, Amedisys remained the owner of such receivables. See Sale and Subservicing Agreement, § 6.1. That said, National Century routinely purchased all of Amedisys's eligible receivables.

The parties operated according to the terms of the Agreement from December 1998 until April 2002. Starting in April, Amedisys and NPF VI altered their agreement as follows: Amedisys made requests for specific sums of money each week, usually requesting less than it was otherwise entitled to under the Agreement's method for calculating a purchase price. This practice apparently arose from

2

Amedisys's efforts to reduce a significant debt it owed to National Century. By the end of September 2002, Amedisys had lowered its debt balance to about $1.6 million.

Amedisys made no funding requests during the first three weeks of October 2002. On October 22, Amedisys requested a $2.8 million payment, which National Century paid. On October 29, 2002, the servicer posted that National Century owed $3.3 million to Amedisys. Amedisys made a funding request of $3.3 million, but only $38,000 was paid.

At this point, National Century was on the verge of collapse. An accounting by National Century showed that collections from Amedisys's lockbox accounts exceeded payments by $7.3 million. National Century and Amedisys attempted to reconcile the matter by offsetting the $7.3 million credit against a separate debt of $6 million that Amedisys owed National Century on a capital note. National Century instructed JPMorgan to wire $1.3 million to Amedisys, but JPMorgan did not honor the transfer request because an event of default had been declared with a National Century note program.

Amedisys contends that on November 7, 2002, National Century instructed JPMorgan to send the full $7.3 million to Amedisys, but JPMorgan refused.

### B.   Procedural History

On November 8, 2002, Amedisys filed a complaint against National Century and JPMorgan in this court. The claims against JPMorgan were based on theories of fiduciary duty and third-party beneficiary. Amedisys also asked for an injunction for the return of the $7.3 million, which this court denied. Shortly thereafter, National Century filed for bankruptcy and the suit was referred to bankruptcy court.

On February 21, 2003, Amedisys filed a complaint against JPMorgan in state court in Louisiana, where Amedisys has its base of operations. The complaint contained claims that were either identical to or similar in nature to the ones asserted in the Ohio complaint. After the complaint was removed

to federal court, the Ohio bankruptcy court issued a bankruptcy stay order prohibiting Amedisys from prosecuting the Louisiana suit. The Judicial Panel on Multidistrict Litigation later consolidated the Louisiana action with other suits relating to National Century's fraud and transferred the litigation to this court for pretrial proceedings.

The Ohio complaint against National Century and JPMorgan moved forward in bankruptcy court. The central issue was whether the $7.3 million belonged to the bankruptcy estate or were identifiable proceeds belonging to Amedisys. On a motion for summary judgment, the bankruptcy court concluded that Amedisys had sold the receivables and the funds belonged to the bankruptcy estate. The court also granted summary judgment to JPMorgan on the breach of fiduciary duty and third-party beneficiary theories that Amedisys had asserted.

After this court affirmed the bankruptcy court's decision, Amedisys appealed to the Sixth Circuit. On May 18, 2010, the Sixth Circuit issued a decision affirming in part and reversing in part. The court held that there was a genuine issue of material fact over whether Amedisys, as against National Century, retained ownership of the receivables. However, the court affirmed the grant of summary judgment to JPMorgan. It specifically rejected Amedisys's claims that Amedisys was an intended third-party beneficiary of the Master Indenture between NPF VI and JPMorgan and that JPMorgan owed a fiduciary duty to Amedisys. See In re National Century Fin. Enterprises, Inc., No. 08-4216, 2010 WL 1976639, at *7 (6th Cir. May 18, 2010) ("Amedisys cannot be an intended beneficiary under the Master Indenture, and JPMorgan owes it no fiduciary duties."). The court further rejected Amedisys's claim based on an implied escrow agency relationship. See id., at *8 ("Amedisys has not established a genuine question of material fact as to the existence of an implied escrow contract, as there is no evidence of a meeting of the minds whereby JPMorgan intended to serve as escrow agent.").

The Louisiana action is now before this court on JPMorgan's motion for summary judgment, in which it argues that the claims are precluded.

## II.     Summary Judgment Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Longaberger Co. v. Kolt, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also Longaberger, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 702 (6th Cir. 2008) (quoting Anderson, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Daugherty, 544 F.3d at 702; Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the

5

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; see Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009).

**III.     Discussion**

Under the doctrine of res judicata, or claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." New Hampshire v. Maine, 532 U.S. 742, 748 (2001). The doctrine serves the "dual purpose" of protecting litigants from multiple lawsuits on the transaction and of "promoting judicial economy by preventing needless litigation." Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979); see also Arizona v. California, 530 U.S. 392, 412 (2000). It further promotes the finality of judgments and protects against inconsistent results. Wilkins v. Jakeway, 183 F.3d 528, 535 (6th Cir. 1999).

The requirements for establishing res judicata are: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. Wilkins, 183 F.3d at 532.

In the Ohio lawsuit, Amedisys requested the court to declare the parties' rights and obligations under the Sale and Subservicing Agreement between Amedisys and NPF VI, and under the Master

Indenture between National Century and JP Morgan. Amedisys alleged that JPMorgan had acted wrongfully in not transferring funds from NPF VI's account to Amedisys when National Century instructed it to do so. Amedisys asserted three legal theories as to JPMorgan: (1) Amedisys was a third-party beneficiary to the Master Indenture; (2) JPMorgan owed fiduciary duties to Amedisys under the Indenture and the Sale Agreement; and (3) the Indenture created an implied escrow relationship whereby JPMorgan was an escrow agent for Amedisys. Those claims were asserted under causes of action for declaratory judgment and escrow.[1]

In the Louisiana complaint, Amedisys alleges the same set of facts, events, and documents (the Indenture and the Sale Agreement), as were alleged in the Ohio complaint. And it brings claims against JPMorgan for breach of a third-party beneficiary contract and breach of fiduciary duty in connection with JPMorgan's refusal to transfer the funds to Amedisys. These claims are barred by res judicata, as the Sixth Circuit has ruled, "Amedisys cannot be an intended beneficiary under the Master Indenture, and JPMorgan owes it no fiduciary duties." See In re National Century Fin. Enterprises, Inc., 2010 WL 1976639, at *7.

The claim for breach of a third-party beneficiary contract is alternately labeled under Louisiana law as a "stipulation pour autrui," which is a contractual provision that benefits a third party and gives the third party a cause of action against the promisor for specific performance. See La. Civ. Code Ann. art. 1978. To establish such a claim, a party must demonstrate a clear expression of intent to benefit the third party. See Stall v. State Farm Fire and Cas. Co., 995 So. 2d 670, 674 (La. Ct. App. 2008). Because a claim under Ohio law requires the same showing of an intent to benefit a third party, see Hill

---

[1] Amedisys asserted claims for express, constructive, and implied trusts against National Century. The Sixth Circuit remanded these claims for trial, finding a genuine issue about ownership as between Amedisys and National Century. Though JPMorgan is named as a defendant on these claims, it is clear that JPMorgan has never asserted an ownership interest in the funds; the bankruptcy estate is the real party in interest.

v. Sonitrol of Southwestern Ohio, Inc., 36 Ohio St.3d 36, 40 (Ohio 1988), the Sixth Circuit's holding in the Ohio case has the same preclusive effect against the "stipulation pour autrui" claim. See Sanders Confectionery Prods., Inc. v. Heller Fin., Inc., 973 F.2d 474, 484 (6th Cir. 1992) ("Identity of causes of action means an identity of the facts creating the right of action and of the evidence necessary to sustain each action.") (internal quotation marks omitted).

The Louisiana complaint asserts additional claims that were not brought against JPMorgan in the Ohio case. Amedisys brings a claim for fraud, alleging that JPMorgan misrepresented that the servicer's inaction was the reason why the funds could not be transferred. In its claim for detrimental reliance, Amedisys alleges that it justifiably relied on JPMorgan's promise to National Century in the Indenture to comply with instructions to wire funds. Amedisys also brings claims for conversion and unjust enrichment based on JPMorgan's refusal to transfer the funds over to Amedisys. Finally, Amedisys asserts a claim under Louisiana's Unfair Trade Practice Act on the grounds that JPMorgan's failure to turn over the funds constituted an "unfair" and "oppressive" practice under the Act.

Res judicata extends to claims that could have been brought in the prior action. The inquiry centers on whether a subsequent claim "aris[es] out of the transaction or occurrence that was the subject matter" of the prior action. Apseloff v. Family Dollar Stores, Inc., 236 Fed.Appx. 185, 187 (6th Cir. 2007). What constitutes a "transaction" is "determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Id. at 188 n.4 (quoting Restatement (Second) of Judgments § 24).

The court finds that Amedisys could have brought the additional Louisiana claims in the Ohio suit. The claims arise from the same occurrence – JPMorgan's refusal to transfer the funds – on which the Ohio claims against JPMorgan were based. The new claims, though labeled differently, are based

on the same premise as the Ohio claims that the governing documents imposed on JPMorgan some duty that ran to Amedisys. All of the facts and legal theories on which the new claims are based were available to Amedisys when it brought the Ohio action.

It is this type of claim splitting that res judicata is intended to prevent. As the Sixth Circuit noted in a similar situation,

> Plaintiff's counsel quite vigorously argued in oral arguments that he did not intend to engage in claim splitting . . . . Although we do not question the veracity of counsel's intent, the fact remains that, by bringing two different suits which present two different theories of the case arising from the same factual situation, counsel has engaged in the precise behavior the doctrine res judicata seeks to discourage. See generally Restatement (Second) of Judgments § 24, 25 cmt. a, d (explaining that res judicata extinguishes all claims arising out of the same transaction of series of transactions. As such, a plaintiff is pressured to present all material relevant to the claim in one action, including any and all theories of the case even where those theories are based on different substantive grounds.). This type of duplicity should be avoided at all costs. "Courts apply the doctrine of res judicata to promote the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judicial resources." Sanders Confectionery Products, Inc., v. Heller Financial Inc., 973 F.2d 474, 480 (6th Cir. 1992), cert. denied, 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993).

Wilkins, 183 F.3d at 535.

Amedisys argues that the Ohio case was about getting a declaratory judgment against JPMorgan, whereas the Louisiana case was about monetary damages. But that is no real distinction. Amedisys could have sought monetary damages when it brought the Ohio case because the injuries alleged by the new Louisiana claims had already occurred when Amedisys filed the Ohio action.

Amedisys also argues that the Louisiana claims could not have been brought in the Ohio case because the bankruptcy court would not have had "related to" subject matter jurisdiction. However, the Ohio case was filed in this court, and then referred to bankruptcy court. Amedisys could have included the Louisiana claims in the original Ohio complaint filed in this court. And it is puzzling to hear Amedisys argue that the bankruptcy court could not have heard the Louisiana claims when

9

Amedisys is the party who moved to have the Ohio case – containing the same or similar claims against JPMorgan – referred to the bankruptcy court.

In any event, the Louisiana claims are "related to" the bankruptcy proceeding because, at bottom, they all are premised on the assertion that the $7.3 million rightfully belongs to Amedisys and not the bankruptcy estate. This same issue is at the heart of the bankruptcy proceeding. See Browning v. Levy, 283 F.3d 761, 773 (6th Cir. 2002) ("[A] claim is 'related to' the bankruptcy proceeding if it would have affected the debtor's rights or liabilities."); In re Dow Corning Corp., 86 F.3d 482, 489 (6th Cir. 1996) (holding that a claim is "related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate").

Finally, the Louisiana complaint asserts claims for fraud, conspiracy, and interference with a contract against certain JPMorgan employees for their actions on behalf of JPMorgan in not turning the funds over to Amedisys. These claims are precluded as well because they could have been asserted in the Ohio action and because the employees are privies of JPMorgan. See ABS Industries, Inc. v. Fifth Third Bank, 333 Fed.Appx. 994, 999-1000 (6th Cir. 2009) ("[I]t is well settled that a principal-agent relationship satisfies the privity requirement of res judicata where the claims alleged are within the scope of the agency relationship.").

**IV.  Conclusion**

Accordingly, JPMorgan's motion for summary judgment (doc. 1499) is GRANTED, and judgment shall be entered in JPMorgan's favor in the Louisiana action, with costs awarded to JPMorgan.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: August 26, 2010